## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: Finova Group et al

| | | |
|---|---|---|
| Official Committee of Equity Securities Holders, | ) ) ) | |
| | ) | Civil Action No. 07-480 (JJF) |
| Appellant | ) ) | |
| v. | ) ) | |
| Finova Group Inc. and Finova Capital Corporation, | ) ) ) | Bankruptcy Case No. 01-698 AP 07-70 |
| Appellees. | | |

## MOTION AND OPENING BRIEF OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS IN SUPPORT OF STAY PENDING APPEAL OF THE BANKRUPTCY COURT'S FINAL CLARIFICATION ORDER

William D. Sullivan (No. 2820)
WILLIAM D. SULLIVAN, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

Mark D. Silverschotz, Esq.
James M. Andriola, Esq.
Han J. Ahn, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
Telephone: (212) 278-1000
Facsimile: (212) 278-1733

Attorneys for Appellant, the Official
Committee of Equity Security Holders

August 31, 2007

## Table of Contents

Page

INTRODUCTION ....................................................................................................... 1

THE NATURE AND STAGE OF THE PROCEEDINGS............................................ 1

SUMMARY OF THE ARGUMENT .......................................................................... 2

STATEMENT OF FACTS .......................................................................................... 3

    The Debtors' Bankruptcy Cases, The Indenture And The Use Of Cash ................... 3

    The Debtors File The Clarification Motion .............................................................. 5

    The Equity Committee Attempts To Appeal The First Clarification Order .............. 7

    The Bankruptcy Court Enters The Final Clarification Order .................................... 7

    The Bankruptcy Court Enters The 90-Day Stay Order.............................................. 8

ARGUMENT ............................................................................................................ 10

THIS COURT SHOULD ISSUE A STAY PENDING APPEAL................................ 10

    A.    The Bankruptcy Court Has Already Held That Equity Holders Will Be Irreparably Harmed If A Stay Pending Appeal Is Not Granted..................... 10

    B.    The Issuance Of A Stay Will Not Substantially Injure Other Parties To The Proceeding.............................................................................................. 12

    C.    The Merits of the Equity Committee's Appeal......................................... 14

    D.    The Public Interest Will Be Served By Granting The Requested Stay....... 19

CONCLUSION.......................................................................................................... 20

**Table of Authorities**

Page

**FEDERAL CASES**

*ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
  361 B.R. 337 (S.D.N.Y. 2007).......................................................................12

*In re Allegheny, Health, Educ. & Research Found.*,
  252 B.R. 309 (W.D. Pa. 1999).....................................................................10

*In re Bridgepoint Nurseries, Inc.*,
  190 B.R. 215 (Bankr. D.N.J. 1996)..............................................................18

*Constructors Ass'n of W. Pa. v. Kreps*,
  573 F.2d 811 (3d Cir. 1978)....................................................................10, 19

*In re Country Squire Assoc. of Carle Place, L.P.*,
  203 B.R. 182 (B.A.P. 2d Cir. 1996)..............................................................12

*In re Delaware & Hudson Railway Co.*,
  90 B.R. 90 (Bankr. D. Del. 1988).................................................................11

*In re Ernst*,
  45 B.R. 700 (Bankr. D. Minn. 1985)............................................................17

*First Pa. Bank N.A. v. Intermet Realty P'ship (In re Intermet Realty P'ship)*,
  27 B.R. 938 (Bankr. E.D. Pa. 1983)............................................................12

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
  309 F.3d 76 (2d Cir. 2002)...........................................................................16

*NMSBPCSLDHB L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*,
  Civ. No. 03-235, 2004 U.S. Dist. LEXIS 9109 (D. Del. May 19, 2004), *rev'd on other grounds*, 384 F.3d 108 (3d Cir. 2005)..........................................10

*In re Kaiser Group Int'l, Inc.*,
  307 B.R. 449 (D. Del. 2004).........................................................................14

*Kreiss v. McCown De Leeuw & Co.*,
  131 F. Supp. 2d 428 (S.D.N.Y. 2001)...........................................................17

*In re NVF Co.*,
  309 B.R. 698 (D. Del. 2004).........................................................................17

*N.Y. City Employees' Ret. Sys. v. Sapir (In re Taylor)*,
    243 F.3d 124 (2d Cir. 2001)........................................................................15

*In re Netia Holdings S.A.*,
    278 B.R. 344 (Bankr. S.D.N.Y. 2002).......................................................11

*Republic of Philippines v. Westinghouse Electric Corp.*,
    949 F.2d 653 (3d Cir.1991).........................................................................10

*Rubin v. Pringle (In re Focus Media Inc.)*,
    387 F.3d 1077 (9th Cir. 2004) ...................................................................11

*Sergi v. Everett Sav. Bank (In re Sergi)*,
    233 B.R. 586 (B.A.P. 1st Cir. 1999)...........................................................15

*In re Sugarhouse Realty, Inc.*,
    192 B.R. 355 (E.D. Pa. 1996) ....................................................................15

## STATE CASES

*Associates v. Ronbet Newmark Co.*,
    84 Misc. 2d 259, 375 N.Y.S.2d 255 (Sup. Ct. N.Y. County 1975) .............17

*Grossman Steel & Aluminum Corp. v. Samson Window Corp.*,
    54 N.Y.2d 653, 426 N.E.2d 176, 442 N.Y.S.2d 769 (1981).......................16

*In re Trans World Airlines*,
No. 01-0056, 2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001) ....................12

*In re O'Hanlon's Will*,
    27 N.Y.S.2d 889 (Sur. Ct. Richmond County 1941) ..................................16

*Reape v. New York News, Inc.*,
    122 A.D.2d 29, 504 N.Y.S.2d 469 (2d Dep't 1986), *cert. denied*, 68 N.Y.2d
    610, 501 N.E.2d 600, 508 N.Y.S.2d 1027 (1986).......................................16

*Schuler-Hass Electric Corp. v. Aetna Cas. & Sur. Co.*,
    40 N.Y.2d 883, 357 N.E.2d 1003, 389 N.Y.S.2d 348 (1976)......................16

*William A. White/Tishman East, Inc. v. Banko*,
    171 A.D.2d 401, 566 N.Y.S.2d 628 (1st Dep't 1991)..................................17

## STATUTES

FED. R. Bankr. P. 8005 ................................................................................................ passim

11 U.S.C. § 1141(a) ....................................................................................................... 15

Del. Code Ann. tit. 6, § 1303 ....................................................................................... 17

Del. Code Ann. tit. 8, § 170 ......................................................................................... 17

Del. Code. Ann. tit. 8, § 244 ......................................................................................... 17

## INTRODUCTION

The Appellant, the Official Committee of Equity Security Holders (the "Equity Committee"), on behalf of the shareholders (the "Equity Holders") of Finova Group, Inc., the corporate parent of Finova Capital Corporation (collectively, the "Debtors" or "Reorganized Debtors"), by and through its undersigned counsel, submits this motion, pursuant to Federal Rule of Bankruptcy Procedure 8005, seeking a stay pending final resolution of any appeal of the Order Granting Debtors' Motion Requesting Clarification of Confirmed Chapter 11 Plan of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), dated June 26, 2007 (the "Final Clarification Order") (Bankr. D.I. 220) [App., Ex. H].[1]

## THE NATURE AND STAGE OF THE PROCEEDINGS

On or about July 6, 2007, the Equity Committee filed its notice of appeal of the Final Clarification Order and the First Clarification Order (defined below). (D.I. 1; Bankr. D.I. 226). On or about July 16, 2007, the Debtors filed a notice of cross appeal addressing four separate orders (Bankr. D.I. 231).[2] The Equity Committee and the Reorganized Debtors have filed their respective designations of the record and statements of issues on appeal and cross

---

[1] "Bankr. D.I." refers to the docket of the Bankruptcy Court in case no. 01-00698-PJW and "Bankr. (Case No. 697) D.I." refers to the docket of the Bankruptcy Court in case no. 01-00697-PJW. References to the Appendix of Exhibits submitted in connection with this motion and brief will be made as "App., Ex. ___" or, for a particular page of an Exhibit, "App. at ___, Ex. ___".

[2] The four orders are: (1) the July 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "July 6, 2007 Fee Cap Order") (Bankr. D.I. 225); (2) the February 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "February 6, 2007 Fee Cap Order") (Bankr. D.I.. 205); (3) the December 30, 2005 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93); and (4) the June 16, 2005 Order Directing the Office of the United States Trustee to Appoint an Official Committee of Equity Security Holders for a Limited Purpose and Granting Related Relief (the "Appointment Order") (Bankr. D.I. 48).

appeal (D.I. 2; Bankr. D.I. 233, 239, 242). By a Letter to Counsel from J. Richard Tucker, Esq. dated August 6, 2007, the parties were advised that the Equity Committee's appeal was referred to that gentleman for mediation.[3]

As will be discussed in further detail below, on or about, August 22, 2007, the Bankruptcy Court entered an Order Pursuant to Federal Rule of Bankruptcy Procedure 8005 Granting 90-Day Stay of the Bankruptcy Court's Order Granting Debtor's Motion Requesting Clarification of Confirmed Chapter 11 Plan (the "90-Day Stay Order") (Bankr. D.I. 247) [App., Ex. L]. The 90-Day Stay Order stays "the provisions of paragraph 2 of the Final Clarification Order and all authority granted therein… through and including October 22, 2007." 90-Day Stay Order at ¶ 1 [App. at 392, Ex. L]. The 90-Day Stay Order also states that the "Equity Committee may seek an additional stay from the District Court" and that "this Order shall be deemed to satisfy the requirement of Rule 8005 that a motion for a stay 'must ordinarily be presented to the bankruptcy judge in the first instance.'" *Id.* at ¶ 2 [App. at 393, Ex. L].

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's 90-Day Stay Order should be converted into a stay pending final resolution of any appeal of the Final Clarification Order because:

1.    There has already been a determination by the Bankruptcy Court that in the absence of a stay pending appeal "there is a serious risk of irreparable harm" to the Equity Holders. *See* Transcript of Hearing before the Honorable Peter J. Walsh on July 24, 2007 (the "July 24, 2007 Transcript") (Bankr. D.I. 240) at 47:17-18 [App. at 387, Ex. K]. The harm being

---

[3] The Equity Committee intends to participate in the mediation in good faith, with the intention of successfully resolving all issues. However, in advance of the mediation, the Equity Committee will be filing a motion to dismiss portions of the Debtors' cross-appeal as untimely and/or moot.

that without the stay, the Debtors will disperse the $81 million in Segregated Funds (defined below) that are the subject of the pending appeal before this Court can reach the merits of the Equity Committee's appeal.

        2.      There has already been a determination by the Bankruptcy Court that a stay pending appeal will not cause the "harm" alleged by the Debtors in objecting to the Equity Committee's motion for a stay before that court. *See* July 24, 2007 Transcript at 47:12-48:12 [App. at 387-388, Ex. K]. Moreover, the note holders who will ultimately receive the Segregated Funds if the Final Clarification Order is not reversed, did not even lodge an objection to the Equity Committee's motion for a stay in the Bankruptcy Court. Such an objection would, of course, be illogical since the Segregated Funds reside in an interest bearing account as they have done for many years.

        3.      The Equity Committee can make a sufficiently strong showing that it is likely to succeed on the merits of its appeal.

## STATEMENT OF FACTS

### The Debtors' Bankruptcy Cases, The Indenture And The Use Of Cash

        On March 7, 2001, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By order of the Bankruptcy Court, the Debtors' Chapter 11 cases were jointly administered. On or about June 14, 2001, the Debtor (and related companies) filed their Third Amended and Restated Joint Plan of Reorganization (the "Plan") (Bankr. (Case No. 697) D.I. 553), which the Bankruptcy Court confirmed by order dated August 10, 2001. (Bankr. (Case No. 697) D.I. 100). The Indenture between the Finova Group, Inc. and The Bank of New York, as Trustee, dated as of August 22, 2001 (the "Indenture"), was included in the Plan

Supplement with Respect to Third Amended and Restated Joint Plan of Reorganization (the "Plan Supplement") (Bankr. (Case No. 697) D.I. 745) [App., Ex. A] and, pursuant to the confirmation order, the Plan Supplement was incorporated into and made part of the Plan.

The appeal presently before this Court will focus on the terms set forth in the Plan and the Indenture. The Indenture, at Section 4.06(a), contains "waterfall" provisions which govern the use of cash by the Debtors. The waterfall provisions provide for payment of specific obligations under the Indenture sequentially, such that when the obligations at one level are fully satisfied, the money is then applied to the obligations of the next lower level. It is undisputed that cash has been applied to pay in full the parties favored by treatment in the first four waterfall levels set forth at Indenture Sections 4.06(a)(i)-(iv). The Equity Committee's appeal concerns the fifth waterfall provision, Indenture Section 4.06(a)(v), which states in its entirety:

> FIFTH, until the principal of and Fixed Interest on the Notes are each paid in full, to (A) pay to the Company, when due, principal on the Intercompany Notes in an amount equal to the amount of cash and Cash Equivalents of the Company and its Subsidiaries, after deducting for items (i) through (iv) above, at any date (as determined by the Company) on or after the applicable Reference Date, which amounts the Company shall use together with any other cash or Cash Equivalents the Company has available for such purpose on such date to repay principal of the Notes until the principal and accrued and unpaid Fixed Interest have been paid in full, and, at the Company's option, to make prepayments at any time of principal and accrued and unpaid interest on the Intercompany Notes, which amounts the Company shall use together with any other cash or Cash Equivalents the Company has available for such purpose on such date to prepay all or part of the principal and accrued and unpaid Fixed Interest on the Notes pursuant to Section 3.07, and (B) to make distributions in respect of FINOVA Capital's Equity Interests held by the Company, which amounts the Company shall use together with any other cash the Company has available for such purposes to make Restricted Payments unless either (x) the making of any such Restricted Payment would be an Impermissible Restricted Payment, in which event the Company shall retain such amounts and any such retained amounts shall accumulate and shall be used to make Restricted Payments at such time or from time to time when such Restricted Payments are not Impermissible

4

Restricted Payments, or (y) a Default or Event of Default has occurred and is continuing, in which event the Company shall retain such amounts and any such retained amounts shall accumulate and shall, subject to Article 6 hereof, be used to make such Restricted Payments at such time or from time to time when such Default or Event of Default is no longer continuing; *provided, however*, that each incremental payment of $0.95 pursuant to clause (A) shall require a distribution or retention pursuant to clause (B) of $0.05;                                         [App. at 38-39, Ex. A]

Pursuant to Section 4.06(a)(v)(A), as of the filing of the Clarification Motion (defined below), the Reorganized Debtor had made principal payments in excess of $1.1 billion on the New Senior Notes (term defined in Clarification Motion), and, pursuant to Section 4.06(a)(v)(B), the Reorganized Debtor had retained approximately $65.5 million in a segregated account (the "Segregated Funds").[4]  This conforms with the obligation "that each incremental payment of $0.95 pursuant to clause (A) shall require a distribution or retention pursuant to clause (B) of $0.05."  Indenture at 4.06(a)(v).

### The Debtors File The Clarification Motion

On or about April 1, 2005, the Debtors filed the Motion of the Reorganized Debtor for an Order Under Bankruptcy Code Section 1411 Clarifying Provision of Confirmed Plan (the "Clarification Motion") (Bankr. D.I. 22) [App., Ex. B].  By the Clarification Motion, the Debtors sought an order of the Bankruptcy Court permitting them to cease distributing cash to, or retaining cash on behalf of, the Equity Holders.  *Id.*  The Debtors argued that any distribution to Equity Holders would at that time, and for perpetuity, be an Impermissible Restricted Payment under the Indenture.  *Id.*  Under the Indenture, an "'Impermissible Restricted Payment' means a Restricted Payment that, if made by the [Reorganized Debtor], would render such entity insolvent, would be a fraudulent conveyance by such entity or would not be permitted

---

[4] The current amount of the Segregated Funds is approximately $81.2 million. *See* July 24, 2007 Transcript (Bankr. D.I. 240) 21:1-3.

to be made by such entity under applicable law." [Indenture at p. 5, App. at 17, Ex. A]. Under the Indenture, a "'Restricted Payment' means the declaration or payment of any dividend *or* the making of a distribution on account of the [Reorganized Debtor's] Equity Interests…" Indenture at p. 11 [App. at 21-22, Ex. A] (emphasis added).

By Order dated June 16, 2005 (the "Appointment Order") ( Bankr. D.I. 48), the Bankruptcy Court directed the Office of the United States Trustee to appoint the Equity Committee for the limited purpose of responding to the Clarification Motion. Thereafter, the Equity Committee opposed the Clarification Motion on a number of grounds that will be discussed at length in section C, below. The essence of the Equity Committee's argument is that distributions to Equity Holders pursuant to the Plan were (and are) Plan-based contractual debt obligations and, consequently, are not Impermissible Restricted Payments under the Indenture. On November 29, 2005, the Bankruptcy Court heard argument, and rendered a partial decision respecting the Clarification Motion. *See* Transcript of Hearing before the Honorable Peter J. Walsh on November 29, 2005 at 2:30 p.m. (Bankr. D.I. 80) [App., Ex D].

On February 1, 2006, for the reasons set forth on the record at the hearing on November 29, 2005, and in a Supplemental Letter, the Bankruptcy Court ordered that "the Clarification Motion is hereby APPROVED to the extent that the Debtor is presently and will be forever insolvent" (the "First Clarification Order") (Bankr. D.I. 100). First Clarification Order at p. 2 [App. at 204, Ex. E]. The First Clarification Order goes on to state that "[n]othing in this order shall be construed as a finding that the Debtors presently are or will forever be insolvent." *Id.*

The Equity Committee Attempts To Appeal The First Clarification Order

Because the Equity Committee believed that the Bankruptcy Court had improperly interpreted the relevant provisions of the Plan in granting the relief requested in the Clarification Motion, the Equity Committee moved for leave to appeal the First Clarification Order. (Bankr. D.I. 104). On or about April 18, 2006, this Court declined to address the merits of the Equity Committee's appeal on an interlocutory basis and, accordingly denied the Equity Committee's motion for leave to appeal. (Bankr. D.I. 121, 122).

The Bankruptcy Court Enters The Final Clarification Order

On or about January 8, 2007, the Debtors filed their Request for Entry of Final Order in Clarification Motion Contested Matter (the "Final Order Request") (Bankr. D.I. 196) [App., Ex F]. On or about June 26, 2007, the Bankruptcy Court entered the Final Clarification Order, which finds that "the Debtors presently are and will be forever insolvent" and grants the Clarification Motion "in its entirety and on a Final basis." Final Clarification Order at p. 2 and p. 3, ¶ 1 (Bankr. D.I. 220) [App. at 303-304, Ex. H].

The Final Clarification Order permits Debtors to use the Segregated Funds "for general corporate purposes including, without limitation, payment of amounts due on the New Senior Notes" and authorizes Debtors to cease setting aside 5% of Available Cash (defined in Clarification Motion) for possible distribution to Equity Holders. Final Clarification Order at p. p. 3, ¶ 1 [App. at 304, Ex. H]. In addition, the Debtors have advised that they intend to distribute the Segregated Funds to holders of the New Senior Notes. See Declaration of Richard A. Ross Relating to Appeal Bond dated July 11, 2007 ("Ross Decl. (July 11, 2007)") at ¶ 4a (Bankr. D.I. 229) [App. at 306, Ex. I].

The Bankruptcy Court Enters The 90-Day Stay Order

On or about June 28, 2007, the Equity Committee filed a motion in the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 8005, for a stay pending appeal of the Final Clarification Order. (Bankr. D.I. 222). The Debtors opposed the motion arguing that they, not the Equity Holders, would be harmed if the Bankruptcy Court issued the requested stay. (Bankr. D.I. 228). The purported harm asserted by the Debtors was that the requested stay would prevent the Debtors from winding up their affairs and thereby cause the additional expenses needed to keep up the Debtors' existence. (Bankr. D.I. 228 at ¶ 18). But, the declaration of Richard Ross, the Chief Financial Officer and Treasurer of the Finova Group, Inc., did not actually support this argument. Indeed, Mr. Ross' declaration states "I believe that the 2007 wind-up goal is realizable and, in any event, it is likely that the wind-up can occur early in 2008 *but for any proceedings* on the Clarification Motion." *See* Ross Decl. (July 11, 2007) at ¶ 6 (emphasis added) [App. at 307-308, Ex. I]. In other words, regardless of whether or not a stay is issued, the Debtors cannot wind up their affairs until the appeal of the Clarification Motion is concluded. Thus, the purported harm to Debtors did not flow from the requested stay. Furthermore, in an S.E.C. filing made before the stay motion (a copy of which was annexed to the Ross Decl. (July 11, 2007) at Exh. A), the Debtors said their goal was to wind-up affairs in 2007, but acknowledged that: "the liquidation period may extend beyond 2007 and conservative estimates are up to the *end of 2008*." The Finova Group, Inc., Quarterly Report (Form 10-Q), at 5 (May 9, 2007) (emphasis added) [App. at 318, Ex. J].

A hearing on the stay motion was conducted by the Bankruptcy Court on July 24, 2007. Mr. Ross testified at the hearing. After his testimony, the Bankruptcy Court found that:

8

> If there is a possibility that this ruling could be reversed on appeal, and I
> don't claim to have any expertise in this area, I strongly suspect that the
> company would have to continue SEC compliance because there's a
> potential for equity interest involved, and I assume the equity interest is
> what requires the filing of the – of the periodic reports. So, it may well be
> that even without a stay, this company will not be able to wind up.
> Secondly, we have the Thaxton Life Partners suit [a lawsuit recently
> commenced against the Debtors] which, in my view, would have to be
> resolved in order for this company to terminate all employees and turn off
> the lights and terminate all kinds of D and O insurance.

July 24, 2007 Transcript (Bankr. D.I. 240) at 47:19-48-6 [App. at 387-388, Ex. K]. Contrary to

the lack of harm to the Debtors, as to the Equity Holders, the Court observed that "if I'm wrong

and they're right then I think there is a serious risk of irreparable harm ..." *Id.* at 47:17-18 [App.

at 387, Ex. K].

Based on these findings, at the conclusion of the hearing, the Bankruptcy Court

announced that it would issue a 90-day stay and that any request for a further stay pending

appeal should be directed to this Court. *Id.* at 48:10-20, App. at 388, Ex. K. On or about,

August 22, 2007, the Bankruptcy Court entered an Order Pursuant to Federal Rule of Bankruptcy

Procedure 8005 Granting 90-Day Stay of the Bankruptcy Court's Order Granting Debtor's

Motion Requesting Clarification of Confirmed Chapter 11 Plan (the "90-Day Stay Order")

(Bankr. D.I. 247) [App. Ex. L]. The 90-Day Stay Order stays "the provisions of paragraph 2 of

the Final Clarification Order and all authority granted therein... through and including October

22, 2007." 90-Day Stay Order at ¶ 1 [App. at 392, Ex. L]. The 90-Day Stay Order also states

that the "Equity Committee may seek an additional stay from the District Court" and that "this

Order shall be deemed to satisfy the requirement of Rule 8005 that a motion for a stay 'must

ordinarily be presented to the bankruptcy judge in the first instance.'" *Id.* at ¶ 2 [App. at 393, Ex.

L]. The Equity Committee filed the instant motion since it does not believe this Court will have

an opportunity to decide its appeal on the merits within the 90-day stay period provided by the Bankruptcy Court.

## ARGUMENT

### THIS COURT SHOULD ISSUE A STAY PENDING APPEAL

To demonstrate that a stay pending appeal is justified, the moving party must establish:  (1) a strong showing of likelihood of success on the merits, (2) irreparable harm absent a stay, (3) that issuance of the stay will not substantially injure the other parties to the proceeding, and (4) that a stay is in the public interest.  *See, e.g., Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir.1991).  Furthermore, none of the factors are determinative and courts must balance all of the factors in order to decide whether or not to grant a stay.  *See NMSBPCSLDHB L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, Civ. No. 03-235 KAJ, 2004 U.S. Dist. LEXIS 9109, at *6 (D. Del. May 19, 2004), *rev'd on other grounds*, 384 F.3d 108 (3d Cir. 2005); *In re Allegheny, Health, Educ. & Research Found.*, 252 B.R. 309, 321 (W.D. Pa. 1999).  And, where a factor such as irreparable harm strongly favor the moving party, an injunction might be appropriate "even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required." *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978).

As set forth below, the Equity Committee submits that it has made the requisite showing to warrant a stay pending appeal.

### A.    The Bankruptcy Court Has Already Held That Equity Holders Will Be Irreparably Harmed If A Stay Pending Appeal Is Not Granted

A leading commentator has noted, in an analogous context, that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration

that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *See generally* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (2d ed. 1995) (collecting cases).[5] In this case, there has already been a determination by the Bankruptcy Court that "if I'm wrong and they're right then I think there is a serious risk of irreparable harm…" if a stay pending appeal is not granted. *See* July 24, 2007 Transcript (Bankr. D.I. 240) at 47:17-18.

This determination by the Bankruptcy Court was well-founded (and the Debtors cannot seriously argue to the contrary). First, the Debtors themselves advised the Bankruptcy Court that, in the absence of a stay, they intend to distribute the Segregated Funds to holders of the New Senior Notes. *See* Ross Decl. (July 11, 2007) at ¶ 4a. It is self-evident that once such a distribution is made, it would be difficult for the Equity Committee to reclaim funds from such distributees. *See Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004) (observing that the "specter of irreparable harm" existed where evidence suggested that funds at issue were in danger of being "dissipated"); *In re Netia Holdings S.A.*, 278 B.R. 344, 357 (Bankr. S.D.N.Y. 2002) ("If the funds leave State Street, they will be distributed to diverse parties, and be difficult or impossible to recover. This is of course a concrete example exemplifying the well-established principle that piecemeal distribution of a debtor's estate constitutes irreparable injury.").

Second, the Equity Committee's submissions to the Bankruptcy Court demonstrated that, without a stay, the Equity Committee's appeal will possibly be, and it certainly will be argued by the Debtors to be, equitably moot, as the acts taken by the Debtors in

---

[5] *In re Delaware & Hudson Railway Co.*, 90 B.R. 90, 91 (Bankr. D. Del. 1988) ("the test for the appropriateness of a stay pending appeal is the same as that for a preliminary injunction.").

reliance of the Final Clarification Order may not be reversible, leaving the Equity Committee with no effective remedy on appeal. While the Debtors have argued that such potential mootness does not equal irreparable harm, courts in this Circuit have held that an appellant whose appeal would be rendered moot without a stay has established irreparable injury. *See*, *e.g.*, *First Pa. Bank N.A. v. Intermet Realty P'ship (In re Intermet Realty P'ship)*, 27 B.R. 938, 940 (Bankr. E.D. Pa. 1983) ("If the Order of February 25, 1983, is not stayed, the appeal will be effectively rendered moot…[t]herefore, the Court finds that irreparable harm to the debtor would result if he should be successful on appeal without entry of a stay."). As one court further explained, "the fact is that loss of appellate rights is a 'quintessential form of prejudice.'" *ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (quoting *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)). *But see In re Trans World Airlines*, No. 01-0056 (PJW), 2001 WL 1820325, at *10 (Bankr. D. Del. Mar. 27, 2001).

Based on the foregoing, there can be no dispute that Equity Holders will suffer irreparable harm if a stay pending appeal is not granted.

**B.    The Issuance Of A Stay Will Not Substantially Injure Other Parties To The Proceeding**

As with the first issue, the Bankruptcy Court has already made a determination that *no* other party to this proceeding will be injured if a stay pending appeal is granted. The note holders who will ultimately receive the Segregated Funds if the Final Clarification Order is not reversed, did not even lodge an objection to the Equity Committee's motion for a stay in the Bankruptcy Court. And, such an objection would not make sense since, as the Bankruptcy Court observed, "the $81 million is earning interest isn't it?… [so the] pot [of money] is improving

with every day." *See* July 24, 2007 Transcript (Bankr. D.I. 240) at 43:14-21 [App. at 383, Ex. K].

The Debtors did object to the stay sought by the Equity Committee from the Bankruptcy Court and the gravamen of their opposition was that they, not the Equity Holders, would be harmed if a stay pending appeal was issued. (Bankr. D.I. 228). The purported harm asserted by the Debtors was that the requested stay would prevent the Debtors from winding up their affairs and thereby cause the incursion of additional expenses to keep up the Debtors' existence. (Bankr. D.I. 228 at ¶ 18). The sole support for this argument offered by the Debtors was the conclusory declaration of Richard Ross, the Chief Financial Officer and Treasurer of the Finova Group, Inc.[6]   Mr. Ross's declaration, however, did not actually support the Debtors' argument.   Indeed, Mr. Ross' declaration states "I believe that the 2007 wind-up goal is realizable and, in any event, it is likely that the wind-up can occur early in 2008 *but for any proceedings* on the Clarification Motion." *See* Ross Decl. (July 11, 2007) at ¶ 6 (emphasis added) [App. at 307-308, Ex. I]. In other words, regardless of whether or not a stay is issued, the Debtors cannot wind up their affairs until the appeal of the Clarification Motion is concluded. Thus, the purported harm to Debtors did not flow from the requested stay.

Moreover, in filings with the S.E.C. (all before the Equity Committee sought a stay), the Debtors repeatedly acknowledged that they would not likely wind-up their affairs until the end of 2008. In the Form 10-Q filed on May 9, 2007, the Debtors said their goal was to wind-up affairs in 2007, but stated: "the liquidation period may extend beyond 2007 and conservative estimates are up to the *end of 2008*." The Finova Group, Inc., Quarterly Report

---

[6] It is presumed that the Debtors will oppose the instant motion on the same basis and with a similar declaration from Mr. Ross.

(Form 10-Q), at 5 (May 9, 2007) [App. at 318, Ex. J] (emphasis added). In its Form 10-K filed

on March 22, 2007, Finova Group, Inc. made the following similar representations:

> The timing and amount of distributions to Senior Note holders will depend
> on the timing and amount of proceeds we receive upon the sale of the
> remaining assets, the resolution of claims and other litigation matters, the
> extent to which reserves for current or future liabilities are required and
> the length of time required to settle all of our matters. Our goal is to wind-
> up the affairs of the Company during 2007; however, we cannot control
> the exact timing of resolving legal matters and claims. Accordingly, *the
> liquidation period may extend beyond 2007 and conservative estimates
> are up to 24 months or the end of 2008.*

The Finova Group, Inc., Annual Report (Form 10-K), at 1 (Mar. 22, 2007) [App. at 271, Ex. G]
(emphasis added).

After Mr. Ross testified at the hearing on the Equity Committee's motion for a

stay, the Bankruptcy Court found that:

> If there is a possibility that this ruling could be reversed on appeal, and I
> don't claim to have any expertise in this area, I strongly suspect that the
> company would have to continue SEC compliance because there's a
> potential for equity interest involved, and I assume the equity interest is
> what requires the filing of the – of the periodic reports. So, it may well be
> that even without a stay, this company will not be able to wind up.
> Secondly, we have the Thaxton Life Partners suit [a lawsuit recently
> commenced against the Debtors] which, in my view, would have to be
> resolved in order for this company to terminate all employees and turn off
> the lights and terminate all kinds of D and O insurance.

July 24, 2007 Transcript (Bankr. D.I. 240) at 47:19–48:6) [App. at 387-388, Ex. K].

Based on the foregoing, it is beyond dispute that *no* party to this proceeding, other

than the Equity Holders, will be harmed if a stay pending appeal is granted.

## C.    The Merits of the Equity Committee's Appeal

This Court reviews a bankruptcy court's legal determinations *de novo* and its

factual findings for clear error. *In re Kaiser Group Int'l, Inc.*, 307 B.R. 449, 453-54 (D. Del.

2004). "With mixed questions of law and fact, the Court must accept the Bankruptcy Court's

finding of historical or narrative facts unless clearly erroneous, but exercise[s] plenary review of

the trial court's choice and interpretation of legal precepts and its application of those precepts to

the historical facts." *Id.* at 454 (quoting *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d

635, 642 (3d Cir. 1999)) (internal quotation marks omitted).  Here, the Bankruptcy Court's

decision on the Clarification Motion reflects a legal determination and, as such this Court's

review is *de novo.  See N.Y. City Employees' Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 128

(2d Cir. 2001) ("The Bankruptcy Court's interpretation of the text of the Plan, the Confirmation

Order, and the Final Decree are conclusions of law reviewed de novo.").

       For the reasons set forth at length in the Equity Committee's Response to the

Reorganized Debtor's Reply to Objection of First Carolina Investors, Inc. to the Clarification

Motion (the "Equity Committee's Response") (Bankr. D.I. 62, a copy of which is attached hereto

as Exhibit C), the Equity Committee believes it is likely to prevail on the merits on appeal.  The

entirety of the Equity Committee's Response is incorporated herein by reference.  In addition,

the Equity Committee will summarize herein the most glaring errors made by the Bankruptcy

Court:

       1.    In determining to grant the Clarification Motion, the Bankruptcy Court

failed to apply the relevant, well-established principles of New York contract interpretation law.

It is black-letter law that a "confirmed plan of reorganization is a binding contract...[which] is

subject to interpretation pursuant to relevant rules of contract interpretation and construction."

*Sergi v. Everett Sav. Bank (In re Sergi)*, 233 B.R. 586, 589 (B.A.P. 1st Cir. 1999) (citing *In re

Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D. Pa. 1996)); *see also* 11 U.S.C. § 1141(a).

Here, the Plan and Indenture each include provisions stating that New York law is to be applied

in the interpretation and construction of those documents.  *See* Plan at § 13.9 and Indenture at §

12.08.    Under New York law, the terms of a contract generally are afforded their plain and ordinary meaning. *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 85-87 (2d Cir. 2002).    The Indenture clearly provides that "each incremental payment of $0.95 [to the Company to pay principal and interest on the New Senior Notes] *shall require* a distribution [to Equity Security Holders] or retention [on their behalf].    Indenture at § 4.06(a)(v) (emphasis added).    Moreover, the Debtors could not cite to any actual provision or language in the controlling Plan or Indenture that supported the position that the Equity Holders had to forfeit the funds set aside on their behalf.    Despite the foregoing, the Bankruptcy Court adopted a skewed interpretation of the Plan and Indenture, effecting a forfeiture of the funds set aside on behalf of the Equity Holders.

2.    The Bankruptcy Court also failed to apply and/or follow controlling New York law which explains that the Indenture provision at issue did not create a "condition precedent" for payment to the Equity Holders, but rather merely established a time for payment to the Equity Holders. *Grossman Steel & Aluminum Corp. v. Samson Window Corp.*, 54 N.Y.2d 653, 654, 426 N.E.2d 176, 177, 442 N.Y.S.2d 769, 770 (1981) (citing *Schuler-Hass Elec. Corp. v. Aetna Cas. & Sur. Co.*, 40 N.Y.2d 883, 357 N.E.2d 1003, 389 N.Y.S.2d 348 (1976)); *see also In re O'Hanlon's Will*, 27 N.Y.S.2d 889 (Sur. Ct. Richmond County 1941) (holding that will provision did not create a future gift limited by a condition precedent because rights of beneficiaries were vested in the will and time of enjoyment was merely postponed).

3.    In granting the Clarification Motion, the Bankruptcy Court ignored well-established principles pertaining to the interpretation of ambiguous contracts.    Any and all ambiguities in the Plan and Indenture should have been construed against the Debtors as the drafters of those documents. *See Reape v. New York News, Inc.*, 122 A.D.2d 29, 30, 504

N.Y.S.2d 469, 470 (2d Dep't 1986) (holding that "ambiguities in an agreement should be interpreted most strongly against the draftsman"), *cert. denied*, 68 N.Y.2d 610, 501 N.E.2d 600, 508 N.Y.S.2d 1027 (1986); *William A. White/Tishman East, Inc. v. Banko*, 171 A.D.2d 401, 566 N.Y.S.2d 628 (1st Dep't 1991) (same). Further, it is well-settled that "New York courts will not interpret provisions that are ambiguous on their face to effect a forfeiture...." *Kreiss v. McCown De Leeuw & Co.*, 131 F. Supp. 2d 428, 436 (S.D.N.Y. 2001); *see also 220 West 42 Assocs. v. Ronbet Newmark Co.*, 84 Misc. 2d 259, 264, 375 N.Y.S.2d 255, 261 (Sup. Ct. N.Y. County 1975) ("[C]ourts should interpret contracts to avoid [forfeiture]"). In this case, the Bankruptcy Court not only sided with the drafter of an ambiguous contract, but impermissibly effected a forfeiture as a result.

4.    The Bankruptcy Court made a grave error in failing to recognize that the Plan constituted a new contract between the Debtors and, *inter alia*, the Equity Holders, and that the Plan created a new, contractual debt obligation running from the Debtors to the Equity Holders. As stated above, a confirmed plan of reorganization constitutes a 'new contract' among the affected parties by which all are legally bound. *See In re NVF Co.*, 309 B.R. 698, 701 (D. Del. 2004). Furthermore, "[t]he effect of confirmation is to discharge the entire preconfirmation debt, replacing it with a new indebtedness as provided in the confirmed plan." *In re Ernst*, 45 B.R. 700, 702 (Bankr. D. Minn. 1985). In granting the Clarification Motion, the Bankruptcy Court disregarded these important precepts and essentially wiped out the new contractual obligation running in favor of the Equity Holders.

5.    The Bankruptcy Court misapprehended certain Delaware statutes relied upon by the Debtors, including: DEL. CODE ANN. tit. 8; § 170; DEL. CODE. ANN. tit. 8, § 244; and DEL. CODE ANN. tit. 6, § 1303, when it ruled that the disputed payments were "Impermissible

Restricted Payments." For example, the Delaware statute relied on by the Debtors, 8 DEL. CODE ANN. § 170, for the proposition that dividends may only be paid out of "surplus or net profits" has an express exception (applicable to this case) which states: "Nothing in this subsection shall invalidate or otherwise effect a note, debenture or *other obligation* of the corporation paid by it as a dividend on shares of its stock, or *any payment made thereon*, if at the time of such note, debenture or *obligation* was delivered by the corporation, the corporation has either surplus or net profits … from which the dividend could lawfully have been paid." DEL. CODE ANN. tit. 8, § 170 (emphasis added). This carve-out is obviously meant to stop a corporation from reneging on a contractual payment obligation made to a stockholder undertaken while the company was solvent, based on a later assertion of insolvency. In other words, this exception was meant to stop exactly what the Debtors are attempting to do in this case. The Debtors were clearly solvent when the plan was confirmed and they became contractually committed to the Equity Holders to make the disputed payments.

6.    The Bankruptcy Court misread and, erred in relying on, the non-binding language of the Disclosure Statement to interpret the relevant Plan provisions. Simply put, "disclosure statements are not contractual in nature and do not bind the parties." *In re Bridgepoint Nurseries, Inc.*, 190 B.R. 215, 222 (Bankr. D.N.J. 1996) (holding that it is the confirmed plan, not the disclosure statement, which binds the debtor and creditors).

* * * * *

Based on the foregoing, and for the reasons more fully set forth in the Equity Committee's Response, the Equity Committee submits that it has made a sufficiently strong showing that it is likely to succeed on the merits of its appeal. Finally, and as noted above, where a factor such as irreparable harm strongly favors the moving party, as it does the Equity

18

Committee in this case, an injunction might be appropriate "even though [the movant] did not demonstrate as strong a likelihood of ultimate success as would generally be required." *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d at 815. Surely, the Equity Committee has made a sufficient demonstration to satisfy this lower standard.

### D.    The Public Interest Will Be Served By Granting The Requested Stay

Based on the demonstration of irreparable harm to the Equity Holders if a stay is not granted, the lack of any harm to the Debtors if a stay is granted, and the fact that the note holders have not filed any objection to the instant motion, it is submitted that the requested stay will serve the public interest. The Debtors have previously argued that "[w]here the dispute is essentially a private dispute between a corporate debtor and its shareholders, courts have found there is no public interest at issue." (Bankr. D.I. 228 at ¶ 19). If the Debtors are right on this point, then this Court should simply ignore this factor and grant the instant motion based on the remaining factors which weigh heavily in favor of a stay.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Equity Committee respectfully requests that this Court enter an order: (i) staying the effect of the Bankruptcy Court's Clarification Order pending final resolution of any appeal of same; and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated: August 31, 2007
Wilmington, Delaware

**WILLIAM D. SULLIVAN, LLC**

William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

-- and --

**ANDERSON KILL & OLICK, P.C.**
Mark D. Silverschotz, Esq.
James Andriola, Esq.
Han J. Ahn, Esq.
1251 Avenue of the Americas
New York, NY 10020-1182
Tel: (212) 278-1000
Fax: (212) 278-1733

## CERTIFICATE OF SERVICE

I, William D. Sullivan, hereby certify that on the 31st day of August 2007, I caused a copy of the foregoing *Motion and Opening Brief of the Official Committee of Equity Security Holders in Support of Stay Pending Appeal of the Bankruptcy Court's Final Clarification Order* to be served upon the parties listed below in the manner indicated.

**HAND DELIVERY**
Mark D. Collins
Richards Layton & Finger
One Rodney Square
Wilmington, DE  19801

**FIRST CLASS MAIL**
Jonathan M. Landers, Esq.
Paul Guillotte, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166

*August 31, 2007* \_\_\_ \_\_\_
Date

\_\_\_ */s/ William D. Sullivan* \_\_\_\_
William D. Sullivan