# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| THE FINOVA GROUP INC., | ) | Case No. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, | ) | |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) | |
| | ) | |
| Official Committee of Equity Security | ) | |
| Holders, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-480 (JJF) |
| | ) | |
| Finova Group Inc. and | ) | Bankruptcy Case No. 01-698 |
| Finova Capital Corporation, | ) | AP 07-70 |
| | ) | |
| Appellees. | ) | |

## DECLARATION OF RICHARD A. ROSS
## RELATING TO APPEAL BOND (DISTRICT COURT)

Richard A. Ross, for his Declaration, hereby states the foregoing, under Penalty of Perjury:

1.     I am the Senior Vice President, Chief Financial Officer and Treasurer of The

FINOVA Group, Inc., ("FINOVA") and its designated "principal financial officer" for SEC

reporting purposes. I am licensed as a Certified Public Accountant in the State of Arizona. The

facts and opinions in this Declaration are known to me personally, and I would be a competent

witness to such matters.

2.     I have been employed by FINOVA for thirteen years, and for the last six years have

held various positions as a senior financial officer. In that capacity, I have directly supervised the

continued liquidation of the assets of the above-captioned debtors ("Debtors") and the planning for a

complete termination of their business activities. On December 4, 2006, the Bankruptcy Court

entered an order which authorized the implementation of procedures to accomplish the final wind-

down of all business operations of the Debtors and the termination of FINOVA as a legal entity. As of now, substantially all of the assets of the Debtors have been liquidated.

3.    In FINOVA's 10-Q Report dated May 9, 2007, FINOVA stated that its goal was to wind-up all business activities and terminate its existence by the end of 2007, and it had prepared budgets on that assumption. In my Declaration of July 11, 2007, attached as Exhibit A, filed in connection with the Motion of the Equity Committee for a Stay in the Bankruptcy Court, I stated that this continued to be the objective of FINOVA, but that matters other than the Clarification Motion could delay the wind-up including "outstanding litigation and bankruptcy claims." Ross Decl. ¶¶ 3, 7. In Finova's Second quarter 10-Q Report dated August 10, 2007, FINOVA reiterated its goal, but stated that delays in resolving legal matters had "increased the likelihood of the liquidation period extending beyond 2007," accordingly, it had increased reserves for estimated wind-down costs to assume a liquidation in the First Quarter of 2008 (and there was no assurance that the liquidation would be completed in that period and could extend through the end of 2008). FINOVA 10-Q Report, pp. 5-6, 10 (August 10, 2007). A copy of the Second Quarter Report is attached as Exhibit B hereto.

4.    As of today, the situation remains as stated in the Second Quarter 10-Q Report. Aside from this proceeding relating to the Clarification Motion, the major outstanding matter is the resolution of the Thaxton Life Partners matter--a litigation by noteholders of Thaxton Life Partners ("TLP") against the Debtors and others arising from the sale of notes brought in the United States District Court for the District of South Carolina. On motion of the Debtors, the Court directed arbitration of the TLP matter and, at present the arbitration is proceeding; also, the arbitration decision has been appealed. It is impossible to say how long the TLP matter will proceed. It could

2

end abruptly, the arbitration could be completed within months, or the proceedings could take longer. The TLP matter is discussed in somewhat more detail in the Second Quarter Report, p. 11.

5.      Once the TLP matter is resolved, FINOVA can proceed as expeditiously as possible to complete the wind-up process, unless there is a stay of the effect of the Clarification Order which prevents FINOVA from ceasing to set aside 5% of Available Cash for holders of Equity Interests and from applying the funds previously accumulated to the payments of operating expenses and payments on the New Senior Notes. In this regard, FINOVA believes it is important to have the flexibility to cease setting aside the 5% of Available Cash and to use the funds presently held. And, as noted in my Declaration of July 11, 2007, there are built-in delays in making distributions of such funds to the holders of New Senior Notes.

6.      In my view, the issue here is who should bear the risk of any delay and inability to wind up FINOVA as soon as the wind-up is complete, and who should bear any losses that result from a stay. FINOVA's view is that (a) the Indenture clearly establishes the right of the holders of the New Senior Notes to all remaining assets of FINOVA and does not entitle the holders of Equity Interests to any payments given FINOVA's financial condition and (b) FINOVA is hopelessly insolvent and more than $1 billion in principal on the New Senior Notes will not be paid. Moreover, I have been present in Court several times when Judge Walsh clearly stated that the position of the Committee was unjustified and not credible. For these reasons, I would urge the Court to deny a stay but, if a stay is granted, to require a significant bond in the amount of $25 million. In regard to a bond, FINOVA fully understands that, if a bond is posted and FINOVA prevails on the appeal, it would still have to prove its actual losses to recover on the bond.

3

7.     Since the very beginning of this litigation, FINOVA has taken the position that the 5% Payment should not be made and the funds should be distributed to the holders of New Senior Notes. This has been the position of its Board of Directors, and this position has consistently been stated in 10-Q and 10-K Reports filed with the SEC over a period of almost three years. It is also the position that has been taken in meetings with individual Shareholders as well as noteholders. No one could have been confused or misled by FINOVA's position. With that background, it is particularly unfortunate to see the Equity Committee repeatedly arguing that noteholders somehow don't care about the Clarification Motion because they did not "lodge an objection to the Equity Committee's motion for a stay in the Bankruptcy Court." Committee Brief, p. 12. Of course they did not lodge an objection. They had no reason to object because FINOVA was so clearly taking a position supporting their right to the funds in question. Indeed, I have been in conversations with noteholders that they had not intervened because FINOVA was taking their side in the dispute. Finally, there is no organized group akin to the Equity Committee which represents the noteholders.

8.     This Declaration is submitted under Penalty of Perjury.

_Richard A. Ross_

Richard A. Ross

Dated: September  20 , 2007
        Phoenix, Arizona

100300711_1 DOC

# <u>Exhibit A</u>

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| THE FINOVA GROUP INC , | § | Case Nos. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, | § | |
| | § | Jointly Administered |
| Reorganized Debtor | § | |
| | § | Re: Docket No. 22, 100, 196 |
| | § | |

## DECLARATION OF RICHARD A. ROSS RELATING TO APPEAL BOND

Richard A. Ross, for his Declaration, hereby states the foregoing, under Penalty of Perjury:

1. I am the Senior Vice President, Chief Financial Officer and Treasurer of The FINOVA Group, Inc  ("FINOVA") and its designated "principal financial officer" for SEC reporting purposes. I am licensed as a Certified Public Accountant in the State of Arizona. The facts and opinions in this Declaration are known to me personally, and I would be a competent witness as to such matters

2. I have been employed by FINOVA for thirteen years, and for the last six years have held various positions as a senior financial officer   In that capacity, I have directly supervised the continued liquidation of the assets the above-captioned debtors ("Debtors") and the planning for a complete termination their business activities. As of now, substantially all of the assets of the Debtors have been liquidated

3  On December 4, 2006, this Court entered an order which authorized the implementation of procedures to accomplish the final wind-down of all business operations of the Debtors and the termination of FINOVA as a legal entity. In FINOVA's 10-Q Report, filed

on May 9, 2007 ("FQR"), FINOVA stated that its goal was to wind-up all business activities and terminate its existence by the end of 2007, and it had prepared its budgets on the assumption of a December 2007 wind-up    FQR pp  5, 13   A copy of the FQR is attached hereto as Exhibit A. As of today, this continues to be the corporate objective of FINOVA; however, delays in resolving this matter before the Court may necessitate extending the Liquidation period.

4. I am fully familiar with matters relating to the Clarification Motion and the Order Granting Debtors' Motion Requesting Clarification of Confirmed Chapter 11 Plan, dated June 24, 2007 ("Clarification Order"), and the motion of the Official Committee of Equity Security Holders ("Equity Committee") for a stay of the Clarification Order ("Stay Motion")   In connection with that Stay Motion, I would bring the following facts to the Court's attention:

a. In light of the Clarification Motion and the wind-down schedule, FINOVA anticipates distributing the amount in the Restricted Fund containing 5% of Available Cash to holders of New Senior Notes some time during the Third or Fourth Quarters of this year.

b. From the time the decision is made to distribute funds to holders of New Senior Notes until the actual distribution requires a period of approximately 45 days. Among the steps required are the initial notification of the trustee and confirmation of a date of record; sending formal written notification in accordance with the Indenture to the trustee including a notice of prepayment, an Officers Certificate, legal opinion and the form of notice of partial prepayment the trustee will send to holders of New Senior Notes; filing a Form 8-K with the SEC announcing the prepayment; the trustee sending formal notice to the Noteholders instructing physical holders to surrender their physical notes in order to receive their payment and receive a new note of their remaining balance; and confirmation between the trustee and FINOVA of the total amount due including principal and interest.

      c. If the Stay Motion is granted and FINOVA cannot distribute the funds in the Restricted Fund and must keep setting aside 5% of distributions of Available Cash, it will be unable to wind-up its affairs by the end of 2007, and it will continue to incur operating expenses including employees, administrative costs and supplies, professional costs and rent in 2008 and possibly thereafter. Among other things, FINOVA would have to maintain continuing records, and the administrative staff to make an eventual distribution of funds. Moreover, since FINOVA is an SEC reporting company, it would have to continue as such and would have to comply with various SEC reporting and record keeping requirements. The latter is necessary because, if the Clarification Order is reversed, FINOVA would be required to distribute funds to holders of common stock.

      5. I am advised by counsel that the timing of the appellate process could last well into 2008, or later. During the existence of a stay, the expenses described in paragraph 4(c) would be incurred, and there would be an additional period of approximately 90-120 days for completing the wind-up after a final and unstayed order was entered. FINOVA estimates that the cost of such process would range between $14 and $18 million for the full year of 2008, and additional amounts thereafter. Under these circumstances, I believe that a bond in the amount of $25 million would be necessary to protect FINOVA during the appellate process.

      6. As stated above, it is FINOVA's corporate goal to wind-up by the conclusion of 2007. However, I should note that matters other than the Clarification Motion which could delay the wind-up, including but are not limited to the resolution of outstanding litigation and bankruptcy claims, the withdrawal of doing business in each state, unforeseen new litigation and dissolution of legal entities. See FQR p. 13. Nevertheless, I believe that the 2007 wind-up goal

is realizable and, in any event, it is likely that the wind-up can occur early in 2008 but for any

proceedings on the Clarification Motion

       7. I will be present in Court at the hearing on the Stay Motion, and will be

prepared to testify to the foregoing

       8. The above is submitted under Penalty of Perjury.

Dated: July 11, 2008

Phoenix, Arizona

                        _Richard A. Ross_
                             Richard A. Ross

# Exhibit A



# FORM 10-Q

## FINOVA GROUP INC - FNV

**Filed: May 09, 2007 (period: March 31, 2007)**

Quarterly report which provides a continuing view of a company's financial position

# Table of Contents

## PART I

FINANCIAL INFORMATION
Item 1.    Financial Statements

## PART I

FINANCIAL INFORMATION
Item 1.    Financial Statements
Item 2.    Management s Discussion and Analysis of Financial Condition and Results of Operations
Item 3.    Quantitative and Qualitative Disclosure About Market Risk
Item 4.    Controls and Procedures

## PART II

OTHER INFORMATION
Item 1.    Legal Proceedings
Item 1A.  Risk Factors
Item 6.    Exhibits
Signatures
EXHIBIT INDEX
EX-31.1 (CERTIFICATION OF CEO PURSUANT TO SECTION 302)

EX-31.2 (CERTIFICATION OF CFO PURSUANT TO SECTION 302)

EX-32.1 (CERTIFICATION OF CEO PURSUANT TO SECTION 906)

EX-32.2 (CERTIFICATION OF CFO PURSUANT TO SECTION 906)

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington D.C. 20549

## FORM 10-Q

☑ QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended March 31, 2007

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from            to

Commission file number 001-11011

# THE FINOVA GROUP INC.
(Exact name of registrant as specified in its charter)

| Delaware | 86-0695381 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I R S employer identification no.) |

8320 North Hayden Road, Suite C112
Scottsdale, AZ    85258
(Address of principal executive offices)    (Zip code)

Registrant's telephone number, including area code: 480-624-4988

N/A
(Former name, former address and former fiscal year. If changed since last report)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days

Yes ☑    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act (Check one):

Large accelerated filer ☐    Accelerated filer ☐    Non-accelerated filer ☑

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act)

Yes ☐    No ☑

APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS DURING THE PRECEDING FIVE YEARS:

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by the court

Yes ☑    No ☐

APPLICABLE ONLY TO CORPORATE ISSUERS:

As of May 8, 2007, approximately 122.041 000 shares of Common Stock ($0 01 par value) were outstanding

Table of Contents

## THE FINOVA GROUP INC
### TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| **PART I   FINANCIAL INFORMATION** | | |
| Item 1 | Financial Statements | |
|  | Consolidated Statements of Net Assets in Liquidation (liquidation basis) at March 31, 2007 (unaudited) and December 31, 2006 | 1 |
|  | Consolidated Statement of Changes in Net Assets in Liquidation (liquidation basis) (unaudited) for the Three Months Ended March 31, 2007 | 2 |
|  | Condensed Statement of Consolidated Operations (going concern basis) (unaudited) for the Three Months Ended March 31, 2006 | 3 |
|  | Condensed Statement of Consolidated Cash Flows (going concern basis) (unaudited) for the Three Months Ended March 31, 2006 | 4 |
|  | Notes to Interim Condensed Consolidated Financial Statements (unaudited) | 5 |
| Item 2 | Management's Discussion and Analysis of Financial Condition and Results of Operations Special Note Regarding Forward-Looking Statements | 12 |
| Item 3 | Quantitative and Qualitative Disclosure about Market Risk | 20 |
| Item 4 | Controls and Procedures | 20 |
| **PART II   OTHER INFORMATION** | | |
| Item 1 | Legal Proceedings | 21 |
| Item 1A | Risk Factors | 21 |
| Item 6 | Exhibits | 21 |
| Signatures | | 22 |

Source: FINOVA GROUP INC  10-Q  May 09  2007

Table of Contents
PART I   FINANCIAL INFORMATION

Item 1    Financial Statements

THE FINOVA GROUP INC.

CONSOLIDATED STATEMENTS OF NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS)
(Dollars in thousands)

| | March 31, 2007 (Unaudited) | December 31, 2006 (Audited) |
|---|---|---|
| **ASSETS** | | |
| Cash and cash equivalents | $ 235,562 | $ 177,311 |
| Restricted cash—impermissible restricted payments | 78,104 | 78,104 |
| Liquidating Portfolio: | | |
| Net realizable value supported by underlying loan or direct financing agreements | 88,152 | 105,829 |
| Net realizable value supported by underlying operating leases and other owned assets | 21,504 | 68,624 |
| Investments | 9,463 | 11,091 |
| Total Liquidating Portfolio | 119,119 | 185,544 |
| Other assets and deposits | 2,046 | 2,877 |
| Total Assets | $ 434,831 | $ 443,836 |
| | | |
| **LIABILITIES (excluding Senior Notes)** | | |
| Interest payable on the Senior Notes | $ 42,046 | $ 14,222 |
| Accounts payable and other liabilities | 10,328 | 14,727 |
| Reserve for estimated costs during the liquidation period | 18,772 | 24,259 |
| Total Liabilities (excluding Senior Notes) | 71,146 | 53,208 |
| Net Assets Available for Settlement of Senior Notes | 363,685 | 390,628 |
| Senior Notes with outstanding principal of $1.5 billion, at estimated settlement amount | 363,685 | 390,628 |
| Net Assets in Liquidation | $  — | $  — |

*See notes to interim condensed consolidated financial statements*

1

Source: FINOVA GROUP INC  10-Q  May 09, 2007

Table of Contents

<div align="center">

THE FINOVA GROUP INC

CONSOLIDATED STATEMENT OF CHANGES IN NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS)

FOR THE THREE MONTHS ENDED MARCH 31, 2007
(Dollars in thousands)
(Unaudited)

</div>

| | |
|---|---:|
| Net Assets in Liquidation at December 31, 2006 | $   — |
| Changes in net assets in liquidation from January 1, 2007 through March 31, 2007: | |
|   Change in estimated net realizable value of assets | (1,810) |
|   Interest earned on investment of cash reserves and other operating activity | 3,416 |
|   Increase in estimated costs during the liquidation period | (724) |
|   Interest accruing on the Senior Notes | (27,825) |
|   Reduction in the estimated settlement of the Senior Notes | 26,943 |
| Net Change in Net Assets in Liquidation from January 1, 2007 through March 31, 2007 | $   — |
| Net Assets in Liquidation at March 31, 2007 | $   — |

<div align="center">

*See notes to interim condensed consolidated financial statements*

2

</div>

Source: FINOVA GROUP INC  10-Q  May 09  2007

Table of Contents

THE FINOVA GROUP INC.

CONDENSED STATEMENT OF CONSOLIDATED OPERATIONS (GOING CONCERN BASIS)

FOR THE THREE MONTHS ENDED MARCH 31, 2006
(Dollars in thousands, except per share data)
(Unaudited)

| | |
|---|---:|
| **Revenues:** | |
| Interest income | $    3,714 |
| Rental income | 1,481 |
| Operating lease income | 8,389 |
| Fees and other income | 5,322 |
| **Total Revenues** | 18,906 |
| Interest expense | (38,976) |
| Operating lease depreciation | (1,658) |
| **Interest Margin** | (21,728) |
| **Other Revenues and (Expenses):** | |
| Reversal of provision for credit losses | 21,103 |
| Net gain on financial assets | 28,783 |
| Portfolio expenses | (5,484) |
| General and administrative expenses | (7,329) |
| **Total Other Revenues and (Expenses)** | 37,073 |
| Income before income taxes | 15.345 |
| Income tax expense | — |
| **Net Income** | $    15,345 |
| Basic/diluted earnings per share | $    0.13 |
| Weighted average shares outstanding | 122,041,000 |

*See notes to interim condensed consolidated financial statements*

3

Source: FINOVA GROUP INC  10-Q, May 09  2007

Table of Contents

THE FINOVA GROUP INC

CONDENSED STATEMENT OF CONSOLIDATED CASH FLOWS (GOING CONCERN BASIS)

FOR THE THREE MONTHS ENDED MARCH 31, 2006
(Dollars in thousands)
(Unaudited)

| | |
|---|---:|
| **Operating Activities:** | |
| Net income | $ 15,345 |
| Adjustments to reconcile net income to net cash used by operating activities: | |
| Reversal of provision for credit losses | (21,103) |
| Net cash gain on disposal of financial assets | (27,820) |
| Net non-cash gain on financial assets | (963) |
| Depreciation and amortization | 1,849 |
| Deferred income taxes, net | (126) |
| Fresh-start accretion—assets | (289) |
| Fresh-start discount amortization—Senior Notes | 8,028 |
| Change in assets and liabilities: | |
| Decrease in other assets | 435 |
| Decrease in accounts payable and accrued expenses | (9,748) |
| Increase in interest payable | 30,036 |
| **Net Cash Used by Operating Activities** | (4,356) |
| **Investing Activities:** | |
| Proceeds from disposals of leases and other owned assets | 26,431 |
| Proceeds from sales of investments | 1,809 |
| Proceeds from sales of loans and financing leases | 34,078 |
| Collections and prepayments from financial assets | 32,658 |
| Fundings under existing customer commitments | (3,636) |
| Deposit of impermissible restricted payments into restricted cash account | (3,125) |
| Recoveries of loans previously written off | 1,503 |
| **Net Cash Provided by Investing Activities** | 89,718 |
| **Financing Activities:** | |
| Principal prepayments of Senior Notes | (59,359) |
| **Net Cash Used by Financing Activities** | (59,359) |
| **Increase in Cash and Cash Equivalents** | 26,003 |
| **Cash and Cash Equivalents, beginning of year** | 212,317 |
| **Cash and Cash Equivalents, end of period** | $238,320 |

*See notes to interim condensed consolidated financial statements*

4

Source: FINOVA GROUP INC  10-Q  May 09  2007

Table of Contents

THE FINOVA GROUP INC.

NOTES TO INTERIM CONDENSED CONSOLIDATED FINANCIAL STATEMENTS

MARCH 31, 2007
(Dollars in thousands in tables)
(Unaudited)

A.    Nature of Operations and Plan of Liquidation

The accompanying financial statements and notes hereto should be read in conjunction with the consolidated financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 31, 2006. Capitalized terms not defined herein are used as defined in the Form 10-K.

The notes to the financial statements relate to The FINOVA Group Inc. and its subsidiaries (collectively "FINOVA" or the "Company"), including FINOVA Capital Corporation and its subsidiaries ("FINOVA Capital"). FINOVA is a financial services holding company. Through its principal operating subsidiary FINOVA Capital, the Company provided a broad range of financing and capital markets products, primarily to mid-size businesses. Throughout this document, "we," "us," and "our" also refer to The FINOVA Group Inc. and its subsidiaries.

Since emergence from chapter 11 bankruptcy proceedings in August 2001, our business activities have been limited to maximizing the value of our portfolio through the orderly collection of our assets. These activities have included collection efforts pursuant to underlying contractual terms, negotiation of prepayments and sales of assets or collateral. We have sold substantial portions of our asset portfolios and are considering future sales of our remaining assets if buyers can be found at acceptable prices; however, there can be no assurance that we will be successful in efforts to sell additional assets. We are currently offering to sell our remaining assets both by portfolio and individual asset. We are prohibited by the Indenture governing our 7 5% Senior Secured Notes (the "Senior Notes") from engaging in any new lending activities or other business, except to honor existing customer commitments and in certain instances, to restructure financing relationships to maximize value. Any funds generated in excess of cash reserves permitted by our debt agreements have been used to reduce obligations to our creditors.

Because substantially all of our assets (except for a few assets that could not be pledged because those assets already secured other obligations) are pledged to secure obligations under the promissory notes of FINOVA Capital issued to us in the aggregate principal amount of the Senior Notes (the "Intercompany Notes"), our ability to obtain additional or alternate financing is severely restricted. Accordingly, we intend to rely on internally generated cash flows from the liquidation of assets as our only meaningful source of liquidity.

Plan of Liquidation

On November 1, 2006, our Board of Directors (the "Board") approved the Plan of Complete Liquidation and Dissolution (the "Plan of Liquidation") and the filing of a motion (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On December 4, 2006, the Bankruptcy Court granted our Motion and approved (i) the previously announced settlement of various litigations associated with The Thaxton Group, Inc. (the "Thaxton Settlement"), (ii) the ongoing sale of our remaining assets, the orderly windup of our operations and our future dissolution, (iii) our sale of all or substantially all of our assets without stockholder approval and our future dissolution without stockholder approval at such time as our Board deems to be appropriate and (iv) channeling to the Bankruptcy Court any claims against us that the holders of our Senior Notes or the indenture trustee for the Senior Notes may have arising from or in any way related to our joint chapter 11 plan, the ongoing liquidation of FINOVA, the senior secured notes, or the windup of our operations.

Our goal is to wind-up the affairs of the Company during 2007; however, we cannot control the exact timing of resolving legal matters and claims. Accordingly, the liquidation period may extend beyond 2007 and conservative estimates are up to the end of 2008. The reserve for estimated costs reflected in our Statement of Net Assets in Liquidation assumes a liquidation period through the end of 2007.

As a result of the aforementioned approvals, we took steps to initiate our complete liquidation and as such, the information provided in this Report on Form 10-Q reflects our adoption of the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. Historical information

5

Table of Contents

for periods prior to December 5, 2006 is presented on a going concern basis of accounting. Under the liquidation basis of accounting we are required to value all assets at their estimated net realizable value, while liabilities are reported at their estimated net settlement amount. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions or our actual dissolution.

We will continue to operate as a public company throughout the liquidation period under a Management Services Agreement with Leucadia National Corporation ("Leucadia") that expires in 2011. Pursuant to that agreement, Leucadia has designated its employees to act as Chairman of the Board (Ian M. Cumming), President (Joseph S. Steinberg) and Chief Executive Officer (Thomas E. Mara). We continue to maintain adequate cash reserves to pay all operating expenses as they come due in accordance with the Indenture.

### B.    Significant Accounting Policies

The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires us to use estimates and assumptions that affect reported amounts of assets and liabilities. These estimates are subject to known and unknown risks, uncertainties and other factors that could materially impact the amounts reported and disclosed in the financial statements. Significant estimates include anticipated amounts and timing of future cash flows used in the calculation of net realizable value, reserve for future costs and settlement amounts. Actual results could differ from those estimated.

*Consolidation of Interim Reporting*

The interim consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles. All intercompany balances have been eliminated in consolidation. The interim consolidated financial information is unaudited. In the opinion of management, all adjustments consisting of normal recurring items necessary to present fairly our net assets in liquidation as of March 31, 2007 and the changes in net assets presented herein have been included in our consolidated financial statements.

For a complete listing of our significant accounting policies, see Note B "Significant Accounting Policies" in our Annual Report on Form 10-K for the year ended December 31, 2006. The policies related to the liquidation basis of accounting were the only policies presented herein. With the adoption of the liquidation basis of accounting, all anticipated improvements or deterioration in the portfolio are fully reflected in our financial statements as facts and assumptions change.

*Liquidation Basis of Accounting*

With the approval of our Plan of Liquidation by the Bankruptcy Court, our complete liquidation is considered to be imminent and as such, we adopted the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. A Statement of Net Assets in Liquidation and a Statement of Changes in Net Assets in Liquidation are the principal financial statements presented under the liquidation basis of accounting. Under the liquidation basis of accounting, assets are stated at their estimated net realizable value, which is the non–discounted amount of cash, or its equivalent, into which an asset is expected to be converted in the due course of business less direct costs, while liabilities are reported at their estimated net settlement amount, which is the non–discounted amounts of cash, or its equivalent, expected to be paid to liquidate an obligation in the due course of business, including direct costs. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions to be made. The valuation of assets at their net realizable value and liabilities at their anticipated settlement amount represent estimates, based on present facts and circumstances, of the net realizable value of the assets and the costs associated with carrying out the Plan of Liquidation based on the assumptions set forth below. The actual values and costs associated with carrying out the Plan of Liquidation are expected to differ from amounts reflected in the accompanying financial statements because of the plan's inherent uncertainty. These differences may be material. In particular, the estimates of our costs will vary with the length of time necessary to complete the Plan of Liquidation. Accordingly, it is not possible to predict with certainty the timing or aggregate amount which will ultimately be distributed to note holders and no

6

Table of Contents

assurance can be given that the distributions will equal or exceed the estimate presented in the accompanying Statement of Net Assets in Liquidation or the price at which our Senior Notes have traded or are expected to trade in the future

The following are the significant assumptions utilized by management in assessing the value of our liquidating portfolio and the expected settlement amount of liabilities included in the Statement of Net Assets in Liquidation at March 31, 2007 and December 31, 2006

Net Realizable Value Supported by Underlying Loan or Direct Financing Agreements. All loans and direct financing leases were adjusted to their estimated net realizable values which represent all future undiscounted cash flows expected to be collected from each of these transactions including sales and settlement proceeds, principal collections scheduled rental payments and interest Anticipated cash collections were partially offset by any known direct costs and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected. The majority of the estimated net realizable values were determined primarily based on signed contracts, settlement agreements or letters of intent to sell The net realizable values for the remainder of the loans and direct financing leases were based upon estimated cash flows on a transaction–by–transaction basis Cash flow estimates are based on current information and numerous assumptions concerning future general economic conditions, specific market segments, the financial condition of our customers and collateral Changes in facts and assumptions have resulted in, and may in the future result in, significant positive or negative changes to estimated cash flows and therefore net realizable values

Net Realizable Value Supported by Underlying Operating Leases and Other Owned Assets All owned assets (operating leases and off–lease assets) were adjusted to their estimated net realizable values which represent all future undiscounted cash flows expected to be collected from each of these transactions including sales proceeds and scheduled rental payments Anticipated cash collections were partially offset by any known direct costs such as maintenance and make ready costs for certain aircraft and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected The majority of the estimated net realizable values were determined primarily based on signed contracts or letters of intent to sell The net realizable values for the remainder of the owned assets were based upon estimated cash flows on a transaction–by–transaction basis Cash flow estimates are based on current information and numerous assumptions concerning future general economic conditions, specific market segments, lessee performance and residual value assumptions for leases Changes in facts and assumptions have resulted in, and may in the future result in, significant positive or negative changes to estimated cash flows and therefore, net realizable values

Investments All investments are reported at either their fair value or estimated net realizable values, based on published information, quotes by registered securities brokers or signed contracts Investments for which market information is not readily available were valued based on estimated future cash flows that may be realized from the investment if any

Reserve for Estimated Costs during the Liquidation Period. Under the liquidation basis of accounting, we are required to estimate and accrue for costs associated with implementing and completing the Plan of Liquidation The reserve for estimated costs includes four primary areas of accruals including people costs (payroll, benefits and severance), Leucadia management fees, professional services and litigation costs and corporate expenses (insurance, directors' fees and entity related expenses) These amounts can vary significantly due to, among other things, the timing of assets sales the timing and amounts associated with discharging known and contingent liabilities and claims the costs associated with cessation of our operations including an estimate of costs subsequent to that date (which would include reserve contingencies for the appropriate statutory periods) and the costs of retaining knowledgeable personnel and others to oversee the liquidation As a result, we have accrued the projected costs including corporate overhead and specific liquidation costs of severance and performance bonuses, professional fees and various other wind–up costs expected to be incurred during the projected period to complete the liquidation and dissolution. These expense accruals will be periodically reviewed for adequacy and adjusted from time to time as projections and assumptions change Changes to the accruals will be recorded as adjustments to net assets in liquidation in future periods

C    Effects of the Liquidation Basis of Accounting

During the three months ended March 31, 2007, the estimated net realizable value of our liquidating portfolio decreased a net $1 8 million primarily due to revised purchase prices on certain committed aircraft following their revaluation based upon updated aircraft specifications and usage reports and a slight decline in the estimated net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset Additionally, during the three months ended March 31, 2007, we accrued $27 8 million of additional interest on the Senior Notes and earned interest income on cash investments and

7

Source: FINOVA GROUP INC 10-Q May 09 2007

Table of Contents

other operating activity of $3 4 million  As a result of the adoption of the liquidation basis of accounting and valuation of our liquidating portfolio at its estimated net realizable value, income is no longer being recognized on our portfolio  All cash received on the portfolio is applied against its estimated net realizable value which took into consideration all expected interest and rental payments  Any cash received in excess of an individual asset's estimated net realizable value is shown as a change in net assets in the period of collection

Under the liquidation basis of accounting, we are also required to establish and maintain a reserve for all future general and administrative expenses and other costs expected to be incurred during the liquidation period (estimated to be the end of 2007)  The following is a summary of and changes to the reserve for estimated costs during the liquidation period:

| | December 31, 2006 | Adjustments and Payments | March 31, 2007 |
|---|---|---|---|
| People costs (payroll, benefits and severance) | $    4,144 | $    (1,318) | $    2,826 |
| Leucadia management fees | 8,000 | (2,000) | 6,000 |
| Professional services and litigation costs | 10,431 | (2,003) | 8,428 |
| General corporate expenses | 1,684 | (166) | 1,518 |
| Total reserve for estimated costs during the liquidation period | $  24,259 | $    (5,487) | $ 18,772 |

During the three months ended March 31, 2007, the reserve declined to $18 8 million due to the payment of expenses, partially offset by an increase caused by retaining certain employees for a slightly longer period of time than previously estimated. The staff retention is directly related to aircraft sales sliding into the second quarter and additional time consumed by the equity committee's review of our solvency (for further details. see Note G  "Litigation and Claims")  both of which have caused delays to the overall liquidation process (including the dissolution of entities and resolution of claims)

Due to the fact that we do not have sufficient assets to fully satisfy all obligations to our creditors  any change to the estimated net realizable value of our assets and liabilities results in a corresponding adjustment to the estimated settlement amount of the Senior Notes  During the three months ended March 31, 2007, the estimated settlement amount of the Senior Notes was reduced by $26 9 million to a balance of $363 7 million; however, we currently estimate the Senior Note holders will receive total liquidation distributions (total principal and interest) of approximately $405 7 million, which is a $0 9 million increase over our year-end estimate

**D     Liquidating Portfolio**

As a result of the adoption of the liquidation basis of accounting, most of the prior disclosures related to total financial assets are no longer applicable  Our liquidating portfolio is now recorded at its estimated net realizable value, which incorporates all future cash flows, including earnings expected to be collected

Since our total financial assets were primarily concentrated in specialized industries. we were subject to both general economic risk and the additional risk of economic downturns within individual sectors of the economy, particularly those impacting the aviation industry  We also completed multiple financial transactions with individual borrowers and their affiliates, resulting in a greater total exposure to those borrowers beyond the typical transaction size and increased concentration risk to economic events affecting the industries (including aviation) of those borrowers and their affiliates

At March 31. 2007. the carrying value on a liquidation basis of our top 10 aggregate exposures to borrowers and their affiliates totaled approximately $109 4 million and represented 98 5% of our liquidating portfolio (excluding the severance and bonus trusts of $8 1 million), as compared to our top 10 exposures (on a liquidation basis) at December 31  2006 of $148 9 million, which represented 84 8% of our liquidating portfolio (excluding the severance and bonus trusts of $10.1 million)  The top 10 exposures at March 31. 2007 were primarily concentrated in aviation assets and the loan to The Thaxton Group, which alone made up 75 3% of the net realizable value expected from our liquidating portfolio  We subsequently received $83 7 million on April 16, 2007 in full and final settlement of the Thaxton loan  As of the date of this report. all of our top 10 exposures have either been liquidated; are under binding definitive agreements or letters of intent to sell; or are subject to a negotiated settlement

8

Source: FINOVA GROUP INC. 10-Q  May 09  2007

Table of Contents
At March 31, 2007, our transportation portfolio consisted of the following aircraft:

| Aircraft Type | Number of Aircraft | Passenger | Cargo | Approximate Average Age (in years) |
|---|---|---|---|---|
| McDonnell Douglas DC10 | 1 | | 1 | 32 |
| McDonnell Douglas MD-80 Series | 7 | 7 | | 23 |
| Regional jets, corporate aircraft and turbo props | 7 | 7 | | 24 |
| Total | 15 | 14 | 1 | 24 |

At March 31, 2007, five aircraft were operated by domestic carriers, while 10 aircraft were operated by foreign carriers. In addition to the aircraft, our transportation portfolio also includes two aircraft engines, a small number of miscellaneous parts and some unsecured aviation notes and claims with a total carrying value on a liquidation basis of approximately $1.0 million as of March 31, 2007. As of the date of this report, we had 15 aircraft with a total carrying value on a liquidation basis of approximately $24.7 million. All of these assets have either been liquidated subsequent to March 31, 2007 or are subject to a definitive agreement to sell. Due to the fact that these aircraft are operating throughout the world, additional time will be necessary to close the sales. It is to our advantage to close these transactions when the aircraft are in tax friendly jurisdictions to minimize transfer taxes. No assurance can be given that all of these commitments will result in actual sales or the timing of such sales, but the remaining aircraft are targeted to close during the second quarter of 2007.

Our non-aviation portfolio, in addition to the Thaxton loan, at March 31, 2007 was comprised of assets with a net realizable value of approximately $9.7 million, including our $8.1 million investment in two grantor trusts to secure severance and bonus obligations to our employees. These assets are held primarily for the benefit of our employees, but are recorded as investments due to our retained interest in any excess assets. Substantially all of the other non-aviation assets are in the process of being liquidated.

The estimated net realizable value of our portfolio included, among other transactions, a number of customer judgments and claims, non-marketable private equity securities and certain obligations owed to us by companies that are in liquidation. In many of these instances, we did not attribute any net realizable value to these assets due to our inability to predict the collection of any cash flows from the transactions with even a remote level of confidence. Most of these transactions were previously included in due diligence materials in an attempt to sell the assets, but were excluded on multiple occasions by prospective buyers because of costs of collection and potential liability concerns of the buyers. We continue to monitor these accounts for changes in facts and circumstances that would allow us to attribute value to these assets. As a result, there is the possibility that some net realizable value will be attributed to these assets in the future. An increase in the estimated net realizable value of these assets, if any, will be reflected as a change in net assets in liquidation in future filings. Additionally, we continue to occasionally receive small amounts of proceeds typically from trustees for assets that in certain cases were written off years ago. These cash flows are reflected as a change in net assets in liquidation as they are received.

E    Debt

A summary of our total debt outstanding on a liquidation basis was as follows:

| | March 31, 2007 | December 31, 2006 |
|---|---|---|
| Senior Notes: | | |
| Principal | $ 1,483,975 | $ 1,483,975 |
| Senior Notes principal estimated to not be settled or repaid | (1,120,290) | (1,093,347) |
| Senior Notes | $ 363,685 | $ 390,628 |

During the first quarter of 2007, we made no principal prepayments on the Senior Notes. In April 2007, we announced a partial prepayment of $59.4 million that will be paid on May 15, 2007. Following this prepayment, cumulative prepayments will total $1.54 billion or approximately 52% of the face amount ($2.97 billion) of the Senior Notes. Additionally, bonds with a face amount of $900 thousand and outstanding principal balance of $450 thousand reverted back to us under the sunset provisions of the Indenture and on April 5, 2007 the trustee cancelled these bonds, reducing the March 31, 2007, principal amount by

9

Table of Contents

$450 thousand. Based on the valuation of our assets at their estimated net realizable value and liabilities at estimated settlement amount, we currently estimate the Senior Note holders will receive additional liquidation distributions (total principal and interest) of approximately $405.7 million, which is considerably less than the total principal and interest due of approximately $1.5 billion. The estimated settlement amount was determined solely based on the net assets available for settlement of the Senior Notes and is subject to change due to changes in the estimated net realizable value of our net assets. We clearly do not have sufficient assets to fully repay the Senior Note obligation.

While the Senior Notes have a first priority security interest in substantially all of our remaining assets, the Indenture requires us to first use any cash and cash equivalents to pay or fund operating expenses, taxes and reasonable reserves for commitments and general corporate purposes. In accordance with the terms of the Indenture, we are required to use any excess cash as defined in the Indenture, to make semi-annual interest and principal payments on the Senior Notes. Additionally, the Indenture permits voluntary prepayments at our option, which we have previously elected to make from time to time; however, due to the uncertainty of cash requirements associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to Thaxton, discussed below in Note G "Litigation and Claims", we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments.

The timing and amount of distributions to Senior Note holders will depend on the timing and amount of proceeds we receive upon the sale of our remaining assets, the resolution of claims and other litigation matters, the extent to which reserves for current or future liabilities are required and the length of time required to settle all of our matters. Our goal is to wind-up the affairs of the Company during 2007; however, we cannot control the exact timing of resolving legal matters and claims. Accordingly, the liquidation period may extend beyond 2007 and conservative estimates are up to the end of 2008.

Stockholders should not expect any payments or distributions. The Indenture contemplates that as principal payments are made on the Senior Notes, our stockholders would receive a distribution equal to 5.263% (i.e., 5%/95%) of each principal prepayment. Ninety-five percent (95%) of the remaining available cash after establishment of cash reserves as defined in the Indenture will be used to make semi-annual prepayments of principal on the Senior Notes and five percent (5%) is identified for distributions to and/or repurchases of stock from common stockholders. However, the Indenture prohibits us from making distributions to and/or repurchases from stockholders if the payments would render the Company insolvent, would be a fraudulent conveyance or would not be permitted to be made under applicable law. Any such distribution and/or repurchase would be considered an impermissible restricted payment under the Indenture. Based upon the fact that the Senior Notes will not be fully repaid, we are required to retain impermissible restricted payments until such time, if ever, that we are no longer restricted from making a distribution to our stockholders or until it is necessary to use the cash to satisfy our debt obligations.

In conjunction with the prepayments of Senior Notes noted above, we will have retained a total of $81.2 million as of May 15, 2007. Retained amounts are being segregated and reflected as restricted cash in our financial statements, pending their final disposition. We anticipate that the retained amounts will eventually be paid to our creditors, not our stockholders. If the funds were to be paid to our stockholders, affiliates of Berkadia (jointly owned by Leucadia and Berkshire Hathaway), which owns 50% of our common stock, would receive half of the retained amounts. Berkadia has advised us that it does not believe that stockholders are entitled to the retained amounts since we cannot fully satisfy our creditor obligations.

As previously reported, we filed a motion in the United States Bankruptcy Court for the District of Delaware seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors. For a further discussion of the motion and its status, see Note G "Litigation and Claims."

F    Income Taxes

Our federal net operating loss carryforwards of $1.3 billion have remained relatively unchanged since year end. No income tax expense or benefit was recorded during the three months ended March 31, 2007 and 2006. Any income or loss has been entirely offset by a decrease or increase in valuation allowances against deferred tax assets, which were previously established due to concern regarding our ability to utilize income tax benefits generated from losses in prior periods. We do not expect to be able to utilize all the deferred tax assets due to uncertainty about the amount of future earnings, a variety of loss or other tax attribute carryover limitations in the various jurisdictions in which we file tax returns and uncertainty regarding the timing of the reversal of deferred tax liabilities.

10

Table of Contents
G  Litigation and Claims

*Legal Proceedings*

We are party either as plaintiff or defendant to various actions, proceedings and pending claims, including legal actions, some of which involve claims for compensatory, punitive or other damages in significant amounts  Litigation often results from our attempts to enforce our lending agreements against borrowers and other parties to those transactions  Litigation is subject to many uncertainties  It is possible that some of the legal actions, proceedings or claims could be decided against us  Other than the matters described below, we believe that any resulting liability from our legal proceedings should not materially affect our net assets in liquidation or cash flows  The following matters could have a material adverse impact on our net assets in liquidation or cash flows

Historically  it was our policy to accrue for loss contingencies  including litigation  only when the losses were probable and estimable  The determination of when losses became probable and estimable was inherently subjective and required significant judgment  Under the liquidation basis of accounting, liabilities for loss contingencies and claims are reported at their estimated net settlement amount, which is the non-discounted amount of cash expected to be paid to liquidate or settle an obligation in the due course of business

If any legal proceedings result in a significant adverse judgment against us  it is unlikely that we would be able to satisfy that liability due to our financial condition  As previously noted, due to our financial condition  we do not expect that we can satisfy all of our secured debt obligations at maturity  Attempts to collect on those judgments could lead to future reorganization proceedings of either a voluntary or involuntary nature

*Litigation Related to Loans to The Thaxton Group Inc  and Related Companies*

Our prior periodic filings with the Securities and Exchange Commission have disclosed ongoing litigation against FINOVA Capital with respect to The Thaxton Group Inc  ("TGI") and several related entities (collectively  the "Thaxton Entities")

Pursuant to an order of the Thaxton Entities bankruptcy court dated September 11, 2006, we transferred all of the cash received from the Thaxton Entities since commencement of the Thaxton Entities chapter 11 proceedings in October 2003, together with interest earned thereon (an aggregate of approximately $97 2 million)  to a trust account to be held by Thaxton under order of the bankruptcy court

On September 12, 2006  we reached a preliminary settlement (the  Settlement ) to resolve all outstanding claims in the ongoing litigation between us, the Thaxton Entities  the holders of subordinated notes issued by the Thaxton Entities (the "Noteholders"), and the Official Committee of Unsecured Creditors of the Thaxton Entities  This Settlement will settle all of the actions involving us and the Thaxton Entities  in particular the actions pending in the United States District Court for the District of South Carolina  Anderson Division (the "District Court")  including the previously described new Thaxton action commenced in the District Court in June 2006  as well as claims in the Thaxton Entities chapter 11 proceedings (collectively  the "Thaxton Litigation")

The principal terms of the Settlement were approved by our Board of Directors on September 11, 2006 and the bankruptcy court for the FINOVA Capital and Thaxton Entities bankruptcies in December 2006  The Thaxton Plan of Reorganization was approved by the bankruptcy court on April 3, 2007, and became effective on April 16, 2007  On April 16, 2007, we received $83 7 million, representing all amounts we transferred into the trust on September 11, 2006 – i e  all amounts paid by the Thaxton Entities to us since commencement of the Thaxton Entities chapter 11 proceedings in October 2003 (together with interest earned thereon), minus $16 million, plus interest actually earned thereon from August 16  2006  which will be retained by the Thaxton Entities  In addition  we received complete releases from all Thaxton parties for all matters related to the Thaxton Entities and the summary judgment order of the District Court was vacated

*Thaxton Life Partners Litigation*

On February 14, 2007  a group of noteholders of Thaxton Life Partners, Inc  ( TLP ) filed suit against the Company and FINOVA Capital (the  TLP Action ), unrelated to the Thaxton Entities litigation noted above  The TLP Action purports to be a class action filed on behalf of approximately 150 TLP note holders with claims related to approximately $20 million in TLP

11

Table of Contents
notes  The TLP Action alleges that, in connection with TLP's sale of its notes, the Company, FINOVA Capital, and several other defendants participated in a civil conspiracy, violated the South Carolina Unfair Trade Practices Act, violated the civil RICO statute, and were unjustly enriched  In its various counts, the TLP Action seeks actual, treble  and/or punitive damages

The TLP Action is currently pending in the United States District Court for the District of South Carolina (the "South Carolina District Court")  We believe that, under the terms of the TLP notes, the TLP Action must move forward in arbitration  The Company and FINOVA Capital have filed a motion with the South Carolina District Court seeking an order compelling such arbitration  No order has yet been issued with respect to this issue  We also believe that all claims against both us and FINOVA Capital are without merit  The Company and FINOVA Capital intend to vigorously defend against the TLP note holders' claims asserted against them  If  however, the TLP Action results in a significant adverse final determination against us or FINOVA Capital, which is not anticipated, it is unlikely that the Company or FINOVA Capital would be able to satisfy that liability due to our financial condition  As previously disclosed, due to our financial condition, we do not expect that we can satisfy all of our secured debt obligations at maturity  Attempts to collect on any such judgment could lead to future reorganization proceedings of either a voluntary or involuntary nature

*Motion Regarding Distributions to Stockholders*

As discussed more fully in Note E  "Debt", the Indenture contemplates that as principal payments are made on the Senior Notes  our stockholders would receive a distribution equal to 5 263% of each principal prepayment  However, the Indenture prohibits distribution of those amounts due to our financial condition  Those amounts are held in a restricted account, and will total $81 2 million as of May 15, 2007  Because we will not be able to repay the Senior Notes in full, on April 1, 2005, we filed a motion in the United States Bankruptcy Court for the District of Delaware seeking an order (1) to cease directing funds into the restricted account and (2) to allow us to use the funds in the restricted account to satisfy our obligations to creditors

On February 1, 2006, the Bankruptcy Court issued its order approving our April 1, 2005 motion to the extent that we will be forever insolvent  The Bankruptcy Court did not find that we are presently or will be forever insolvent  As a result, we will continue to direct funds into the restricted account until such time that we are deemed to be forever insolvent

On December 22, 2006, the reconstituted equity committee filed a motion with the Bankruptcy Court seeking among other things, appointment of a financial expert to review the issue of our solvency, and up to $100,000 to accomplish this task  Over our objection, the Bankruptcy Court granted the equity committee's motion, ordering that the evaluation be completed within sixty (60) days of an order being entered approving the motion  As expected  the financial expert concluded that FINOVA is insolvent  The parties will seek a final order of the bankruptcy court declaring FINOVA's insolvency  Once issued, the equity committee may then appeal the underlying ruling of the bankruptcy court should they so desire

Item 2.    Management's Discussion and Analysis of Financial Condition and Results of Operations

The following section should be read in conjunction with our Annual Report on Form 10-K for the year ended December 31, 2006 and the Special Note Regarding Forward-Looking Statements included herein  Capitalized terms not defined herein are used as defined in the Form 10-K  The following discussion relates to The FINOVA Group Inc  and its subsidiaries (collectively "FINOVA" or the "Company"), including its principal operating subsidiary, FINOVA Capital Corporation and its subsidiaries ("FINOVA Capital")

OVERVIEW

During the first quarter of 2007, we continued to make significant progress in the orderly collection and liquidation of our assets  Our liquidating portfolio declined by approximately 36% since year-end 2006  reducing the net realizable value of our remaining assets to just over $119 million at March 31, 2007  As we previously mentioned, it has become increasingly more difficult for us to offset the incremental costs of collecting our assets in an orderly fashion and as a result, to maximize the value of our remaining assets  we initiated efforts to accelerate the liquidation process  The vast majority of the remaining assets are expected to be liquidated during the second quarter of 2007

Plan of Liquidation  On November 1, 2006, our Board of Directors (the "Board") approved the Plan of Complete Liquidation and Dissolution (the "Plan of Liquidation") and the filing of a motion (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court")  On December 4, 2006, the Bankruptcy Court granted our Motion and approved (i) the previously announced settlement of various litigations associated with The Thaxton Group, Inc  (the "Thaxton

12

Table of Contents

Settlement"), (ii) the ongoing sale of our remaining assets, the orderly windup of our operations and our future dissolution, (iii) our sale of all or substantially all of our assets without stockholder approval and our future dissolution without stockholder approval at such time as our Board deems to be appropriate and (iv) channeling to the Bankruptcy Court any claims against us that the holders of our Senior Notes or the indenture trustee for the Senior Notes may have arising from or in any way related to our joint chapter 11 plan, the ongoing liquidation of FINOVA, the senior secured notes, or the windup of our operations

As a result of the aforementioned approvals, we took steps to initiate our complete liquidation and as such, the information provided in this Report on Form 10-Q reflects our adoption of the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. Historical information for periods prior to December 5, 2006 is presented on a going concern basis of accounting. Under the liquidation basis of accounting, we are required to value all assets at their estimated net realizable value, while liabilities are reported at their estimated net settlement amount. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions or our actual dissolution

The timing and amount of distributions to Senior Note holders will depend on the timing and amount of proceeds we receive upon the sale of the remaining assets, the resolution of claims and other litigation matters. Our goal is to wind-up the affairs of the Company during 2007; however, we cannot control the exact timing of resolving legal matters and claims. Accordingly, the liquidation period may extend beyond 2007 and conservative estimates are up to the end of 2008. The reserve for estimated costs ($18.8 million) reflected in our Statement of Net Assets in Liquidation assumes a liquidation period through the end of 2007

We continue to retain sufficient cash reserves to fund our expenses, including the costs associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to Thaxton. As a result, we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures and claims, which could limit our ability to make and the timing of future voluntary principal prepayments

Anticipated Shortfall. In April 2007, we announced a partial prepayment of $59.4 million that will be paid on May 15, 2007. Following this prepayment cumulative prepayments will total $1.54 billion or approximately 52% of the face amount ($2.97 billion) of the Senior Notes. Based on the revaluation of our assets at their estimated net realizable value and liabilities at estimated net settlement amount, we currently estimate the Senior Note holders will receive additional liquidation distributions (total principal and interest) of approximately $405.7 million, which is considerably less than the total principal and interest due of approximately $1.5 billion. We clearly do not have sufficient assets to fully repay the Senior Note obligation. In order to eliminate the shortfall, the remaining assets (excluding cash and cash equivalents), which have already been marked up from their historical going concern basis, would have to increase in value by more than ten times their already marked up value. We do not believe there is any chance of this occurring

No Stockholder Payments Anticipated. While the Indenture contemplated we would make payments to our stockholders as the Senior Notes were repaid, we have not made those payments. Distributions to stockholders are prohibited due to our financial condition. Based on our liquidation basis financial statements, we will not be able to repay more than $1.1 billion of the Senior Notes. As a result, stockholders should not expect any payments or return on their common stock. Funds related to the restricted distributions are currently being held in a segregated account, pending their final disposition. We anticipate that those funds will eventually be paid to our creditors, not to our stockholders. If the funds were to be paid to our stockholders, affiliates of Berkadia (which are owned by Berkshire Hathaway and Leucadia) as owner of 50% of our stock would receive half of those payments

As discussed in Note G "Litigation and Claims," we filed a motion in the United States Bankruptcy Court for the District of Delaware, seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors

13

Table of Contents

No Restructuring Plan Contemplated  On numerous occasions, we have been asked whether there is some plan to save the Company and our net operating loss carryforwards ("NOL")  As we have noted for some time, the Board remains willing to consider legitimate proposals presented by note holders or others, but we are not formulating a restructuring plan intended to enable us to emerge as a healthy company

Many obstacles exist to creation of a viable restructuring plan  A restructuring presumes a sensible business plan emerging from that process  In light of our dwindling asset base  the composition of our remaining assets and the competitive environment, we believe it would be difficult, if not futile, in these circumstances to develop a business model that can produce returns to the creditors and/or new investors greater than that expected from the present course  Absent that, or a substantial new investment in FINOVA, we believe it would be difficult to obtain the requisite approval to restructure the present debt obligations  The task becomes more difficult as the portfolio continues to shrink  We caution investors to carefully evaluate applicable tax regulations, which restrict the ability to transfer or use NOLs in a variety of circumstances  Our financial statements do not anticipate using the NOLs for those and other reasons

HIGH INVESTMENT RISK OF SECURITIES  As previously stated, we will not be able to fully repay the Senior Notes or make any distributions to our stockholders, absent a court order in connection with the motion referred to above. Consequently, investing in our Senior Notes and common stock involves a high level of risk

CRITICAL ACCOUNTING POLICIES

Our consolidated financial statements continue to be prepared in accordance with U S  generally accepted accounting principles. The preparation of these financial statements requires us to use estimates and assumptions that affect reported amounts of assets and liabilities  These estimates are subject to known and unknown risks, uncertainties and other factors that could materially impact the amounts reported and disclosed in the financial statements. See Item 1A  "Risk Factors" and "Special Note Regarding Forward-Looking Statements" in our Annual Report on Form 10-K for the year ended December 31, 2006 for more information on these risks and uncertainties  We believe the following to be among the most critical judgment areas in the application of our accounting policies

*Liquidation Basis of Accounting*

With the approval of our Plan of Liquidation by the Bankruptcy Court  our complete liquidation is considered to be imminent and as such, we adopted the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States  A Statement of Net Assets in Liquidation and a Statement of Changes in Net Assets in Liquidation are the principal financial statements presented under the liquidation basis of accounting  Under the liquidation basis of accounting  assets are stated at their estimated net realizable value, which is the non-discounted amount of cash  or its equivalent, into which an asset is expected to be converted in the due course of business less direct costs  while liabilities are reported at their estimated net settlement amount, which is the non-discounted amounts of cash  or its equivalent, expected to be paid to liquidate an obligation in the due course of business, including direct costs  Additionally  under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense)  These estimates will be periodically reviewed and adjusted as appropriate  There can be no assurance that these estimated values will be realized  Such amounts should not be taken as an indication of the timing or amount of future distributions to be made  The valuation of assets at their net realizable value and liabilities at their anticipated settlement amount represent estimates, based on present facts and circumstances  of the net realizable value of the assets and the costs associated with carrying out the Plan of Liquidation based on the assumptions set forth below  The actual values and costs associated with carrying out the Plan of Liquidation are expected to differ from amounts reflected in the accompanying financial statements because of the plan's inherent uncertainty. These differences may be material  In particular, the estimates of our costs will vary with the length of time necessary to complete the Plan of Liquidation. Accordingly, it is not possible to predict with certainty the timing or aggregate amount which will ultimately be distributed to note holders and no assurance can be given that the distributions will equal or exceed the estimate presented in the accompanying Statement of Net Assets in Liquidation or the price at which our Senior Notes have traded or are expected to trade in the future

The following are the significant assumptions utilized by management in assessing the value of our liquidating portfolio and the expected settlement amount of liabilities included in the Statement of Net Assets in Liquidation at March 31, 2007 and December 31, 2006

14

Source: FINOVA GROUP INC  10-Q  May 09  2007

Table of Contents

Net Realizable Value Supported by Underlying Loan or Direct Financing Agreements. All loans and direct financing leases were adjusted to their estimated net realizable values. which represent all future undiscounted cash flows expected to be collected from each of these transactions including sales and settlement proceeds, principal collections. scheduled rental payments and interest  Anticipated cash collections were partially offset by any known direct costs and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected. The majority of the estimated net realizable values were determined primarily based on signed contracts, settlement agreements or letters of intent to sell  The net realizable values for the remainder of the loans and direct financing leases were based upon estimated cash flows on a transaction–by–transaction basis  Cash flow estimates are based on current information and numerous assumptions concerning future general economic conditions. specific market segments, the financial condition of our customers and collateral  Changes in facts and assumptions have resulted in  and may in the future result in. significant positive or negative changes to estimated cash flows and therefore. net realizable values

Net Realizable Value Supported by Underlying Operating Leases and Other Owned Assets. All owned assets (operating leases and off–lease assets) were adjusted to their estimated net realizable values  which represent all future undiscounted cash flows expected to be collected from each of these transactions including sales proceeds and scheduled rental payments  Anticipated cash collections were partially offset by any known direct costs such as maintenance and make ready costs for certain aircraft and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected  The majority of the estimated net realizable values were determined primarily based on signed contracts or letters of intent to sell  The net realizable values for the remainder of the owned assets were based upon estimated cash flows on a transaction–by–transaction basis  Cash flow estimates are based on current information and numerous assumptions concerning future general economic conditions. specific market segments, lessee performance and residual value assumptions for leases  Changes in facts and assumptions have resulted in, and may in the future result in  significant positive or negative changes to estimated cash flows and therefore. net realizable values

Investments  All investments are reported at either their fair value or estimated net realizable values, based on published information, quotes by registered securities brokers or signed contracts  Investments for which market information is not readily available were valued based on estimated future cash flows that may be realized from the investment. if any

Reserve for Estimated Costs during the Liquidation Period. Under the liquidation basis of accounting, we are required to estimate and accrue for costs associated with implementing and completing the Plan of Liquidation  The reserve for estimated costs includes four primary areas of accruals including people costs (payroll  benefits and severance), Leucadia management fees  professional services and litigation costs and corporate expenses (insurance, directors' fees and entity related expenses)  These amounts can vary significantly due to. among other things, the timing of assets sales  the timing and amounts associated with discharging known and contingent liabilities and claims, the costs associated with cessation of our operations including an estimate of costs subsequent to that date (which would include reserve contingencies for the appropriate statutory periods) and the costs of retaining knowledgeable personnel and others to oversee the liquidation  As a result  we have accrued the projected costs including corporate overhead and specific liquidation costs of severance and performance bonuses. professional fees and various other wind–up costs expected to be incurred during the projected period to complete the liquidation and dissolution. These expense accruals will be periodically reviewed for adequacy and adjusted from time to time as projections and assumptions change  Changes to the accruals will be recorded as adjustments to net assets in liquidation in future periods

With the adoption of the liquidation basis of accounting  all anticipated improvements or deterioration in the portfolio are fully reflected in our financial statements as facts and assumptions change

15

Table of Contents
CHANGES IN NET ASSETS AND RESULTS OF OPERATIONS

The following table summarizes the changes in net assets in liquidation for the three months ended March 31, 2007 (dollars in thousands):

| | |
|---|---:|
| Net Assets in Liquidation at December 31, 2006 | $ — |
| Changes in net assets in liquidation for the three months ended March 31, 2007: | |
|   Change in estimated net realizable value of assets | (1,810) |
|   Interest earned on investment of cash reserves and other operating activity | 3,416 |
|   Increase in estimated costs during the liquidation period | (724) |
|   Interest accruing on the Senior Notes | (27,825) |
|   Reduction in the estimated settlement of the Senior Notes | 26,943 |
| Net change in value of assets and liabilities | — |
| Net Assets in Liquidation at March 31, 2007 | $ — |

Changes in Net Assets in Liquidation for the three months ended March 31, 2007

During the three months ended March 31, 2007, the estimated net realizable value of our liquidating portfolio decreased a net $1.8 million primarily due to revised purchase prices on certain committed aircraft following their revaluation based upon updated aircraft specifications and usage reports and a slight decline in the estimated net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset

During the three months ended March 31, 2007, we accrued $27.8 million of additional interest on the Senior Notes and earned interest income on cash investments and other operating activity of $3.4 million. As a result of the adoption of the liquidation basis of accounting and valuation of our liquidating portfolio at its estimated net realizable value, income is no longer being recognized on the portfolio. All cash received on the portfolio is applied against its estimated net realizable value, which took into consideration all expected interest and rental payments. Any cash received in excess of an individual asset's estimated net realizable value is shown as a change in net assets in the period of collection

Additionally, as previously discussed, we established a reserve for estimated costs during the liquidation period (estimated to be the end of 2007) and all future expenditures for operating expenses are charged directly against the reserve. During the three months ended March 31, 2007, the reserve declined to $18.8 million due to the payment of expenses, partially offset by an increase caused by retaining certain employees for a slightly longer period of time than previously estimated. The staff retention is directly related to aircraft sales sliding into the second quarter and additional time consumed by the equity committee's review of our solvency (for further details see Note G "Litigation and Claims"), both of which have caused delays to the overall liquidation process (including the dissolution of entities and resolution of claims)

Due to the fact that we do not have sufficient assets to fully satisfy all obligations to our creditors, any change to the estimated net realizable value of our assets and liabilities results in a corresponding adjustment to the estimated settlement amount of the Senior Notes. During the three months ended March 31, 2007, the estimated settlement amount of the Senior Notes was reduced by $26.9 million to a balance of $363.7 million; however, we currently estimate the Senior Notes holders will receive total liquidation distributions (total principal and interest) of approximately $405.7 million, which is a $0.9 million increase over our year-end estimate

Results of Operations for the three months ended March 31, 2007

During the three months ended March 31, 2006, we generated net income (on a going concern basis) of $15.3 million. In general, the net income was primarily attributable to asset realization in excess of recorded carrying amounts, partially offset by a negative interest margin and normal operating expenses. Under the going concern basis, asset realization in excess of recorded carrying amounts was primarily reflected in the financial statements as reversals of excess reserve for credit losses, net gains from sales of financial assets and the recognition of suspended income upon the payoff of assets

16

Source: FINOVA GROUP INC  10-Q  May 09 2007

<u>Table of Contents</u>
During 2006, the aircraft–finance market continued to display a high level of activity and in certain instances improved aircraft values. As a result, our transportation portfolio continued to generate cash in excess of recorded carrying amounts, which resulted in $23 5 million of the $28 8 million net gains we recognized during the first quarter of 2006 Additionally, results for the first quarter of 2006 were enhanced by a revaluation of our non–aviation assets in conjunction with their classification as held for sale and subsequent sale, which resulted in $14 7 million of our $21 1 million reversal of provision for credit losses

Our asset realization in excess of recorded carrying amounts was partially offset by a $21 7 million negative interest margin, which is primarily due to our portfolio containing a lower level of earning assets ($104 7 million at March 31, 2006) than the principal amount of outstanding debt ($1 6 billion at March 31 2006) and a high aggregate cost of funds (aggregate effective rate of 13 6% for the first quarter of 2006)

FINANCIAL CONDITION, LIQUIDITY AND CAPITAL RESOURCES

Because substantially all of our assets (except for a few assets that could not be pledged because those assets already secured other obligations) are pledged to secure obligations under the Intercompany Notes securing the Senior Notes, our ability to obtain additional or alternate financing is severely restricted. Berkadia has no obligation to lend additional sums to or to further invest in FINOVA Accordingly, we intend to rely on internally generated cash flows from the liquidation of assets as our only meaningful source of liquidity

The terms of the Indenture prohibit us from using available funds (after certain permitted uses) for any purpose other than to satisfy our obligations to creditors and to make limited payments to stockholders in certain circumstances. Under the terms of the Indenture, we are permitted to establish a cash reserve in an amount not to exceed certain defined criteria. Due to our limited sources of liquidity, the estimation of cash reserves is critical to our overall liquidity. Cash reserve estimations are subject to known and unknown risks, uncertainties, and other factors that could materially impact the amounts determined. Failure to adequately estimate a cash reserve in one period could result in insufficient liquidity to meet obligations in that period, or in a subsequent period, if actual cash requirements exceed the cash reserve estimates Historically cash reserves typically equaled anticipated cash flows to cover operating costs, tax payments, fundings under existing customer commitments, interest payments and any other necessary cash flows expected to occur during the next six month period. We have the discretion to and have from time to time adjusted our cash reserve methodology As we continue to liquidate assets, our incoming cash flows will diminish and the estimation of cash reserves will become increasingly more critical to ensure we retain sufficient funds to meet obligations (including, but not limited to, interest payments on the Senior Notes, settlement of known and unknown claims and normal operating expenses) as they become due throughout the liquidation process

In accordance with the terms of the Indenture, we are required to use any excess cash, as defined in the Indenture, to make semi–annual interest and principal payments on the Senior Notes Additionally, the Indenture permits voluntary prepayments at our option, which we have previously elected to make from time to time; however, due to the uncertainty of cash requirements associated with the wind–up of our affairs, resolution of outstanding bankruptcy claims and matters related to Thaxton, discussed in Note G "Litigation and Claims" we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments

The timing and amount of distributions to Senior Note holders will depend on the timing and amount of proceeds we receive upon the sale of our remaining assets, the resolution of claims and other litigation matters, the extent to which reserves for current or future liabilities are required and the length of time required to settle all of our matters Our goal is to wind–up the affairs of the Company during 2007; however, we cannot control the exact timing of resolving legal matters and claims Accordingly, the liquidation period may extend beyond 2007 and conservative estimates are up to the end of 2008. The reserve for estimated costs ($18 8 million) reflected in our Statement of Net Assets in Liquidation assumes a liquidation period through the end of 2007

During the first quarter of 2007, we made no principal prepayments on the Senior Notes In April 2007, we announced a partial prepayment of $59 4 million that will be paid on May 15, 2007. Following this prepayment, cumulative prepayments will total $1 54 billion or approximately 52% of the face amount ($2 97 billion) of the Senior Notes Based on the valuation of our assets at their estimated net realizable value and liabilities at estimated settlement amount, we currently estimate the Senior Note holders will receive estimated liquidation distributions (total principal and interest) of approximately $405 7 million, which is considerably less than the total principal and interest due of approximately $1 5 billion The estimated settlement amount was determined solely based on the net assets available for settlement of the Senior Notes and is subject to change due to changes in the estimated net realizable value of our net assets We clearly do not have sufficient assets to fully repay the Senior Note obligation

17

Table of Contents
The Senior Notes have a first priority security interest in substantially all of our remaining assets; however, as noted above, the Indenture requires us to first use any cash and cash equivalents to pay or to fund operating expenses, taxes and reasonable reserves for commitments and general corporate purposes

Stockholders should not expect any payments or distributions  The Indenture contemplates that as principal payments are made on the Senior Notes, our stockholders would receive a distribution equal to 5.263% of each principal prepayment  However. the Indenture prohibits us from making distributions to and/or repurchases from stockholders if the payments would render the Company insolvent, would be a fraudulent conveyance or would not be permitted to be made under applicable law  Any such distribution and/or repurchase would be considered an impermissible restricted payment under the Indenture  Based upon the fact that the Senior Notes will not be fully repaid, we are required to retain impermissible restricted payments until such time, if ever, that we are no longer restricted from making a distribution to our stockholders or until it is necessary to use the cash to satisfy our debt obligations

In conjunction with the prepayments of Senior Notes noted above. we will have retained a total of $81.2 million as of May 15, 2007  Retained amounts are being segregated and reflected as restricted cash in our financial statements. pending their final disposition  We anticipate that the retained amounts will eventually be paid to our creditors. not our stockholders  If the funds were to be paid to our stockholders  affiliates of Berkadia (jointly owned by Leucadia and Berkshire Hathaway)  which owns 50% of our common stock, would receive half of the retained amounts  Berkadia has advised us that it does not believe that stockholders are entitled to the retained amounts since we cannot fully satisfy our creditor obligations

As previously reported. we filed a motion in the United States Bankruptcy Court for the District of Delaware seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors  For a further discussion of the motion and its status. see Note G  "Litigation and Claims "

Based on our financial condition and imminent liquidation, there will not be sufficient funds available to fully repay the outstanding principal on the Senior Notes or make any 5% distribution to common stockholders, absent a court order in connection with the motion referred to above  As a result, there will not be a return to our stockholders. Consequently, investing in the Senior Notes and common stock involves a high level of risk

*Obligations and Commitments*

For a detailed listing of our significant contractual obligations and contingent commitments. refer to our Annual Report on Form 10-K for the year ended December 31, 2006  There have not been any material changes during the three months ended March 31  2007  except for the payment of our quarterly management fees to Leucadia

*Collection of the Portfolio*

As noted previously, our current business activities have been limited to maximizing the value of our portfolio through the orderly collection of assets. These activities include collection efforts pursuant to underlying contractual terms  negotiation of prepayments  sales of assets or collateral  We have sold substantial portions of asset portfolios and are considering future sales of our remaining assets if buyers can be found at acceptable prices; however, there can be no assurance that we will be successful in efforts to sell additional assets  We are currently offering to sell our remaining assets both by portfolio and individual asset  Due to restrictions contained in the Indenture as well as our general inability to access capital in the public and private markets  our only viable source of cash flow is from the collection of our portfolio

18

Table of Contents
The following table presents the activity in our liquidating portfolio for the three months ended March 31, 2007:

| | |
|---|---:|
| Liquidating Portfolio at December 31, 2006 | $185,544 |
| Cash activity: | |
| Collections and proceeds | (64,442) |
| Non-cash activity: | |
| Change in estimated net realizable value of assets | (1,983) |
| Liquidating Portfolio at March 31, 2007 | $119,119 |

Our liquidating portfolio declined to $119.1 million at March 31, 2007, down from $185.5 million at December 31, 2006. During the first quarter of 2007, our cash activity was comprised of customer collections (including recoveries) and proceeds received from the sale of assets, while non-cash activity resulted in a decrease to the estimated net realizable value of certain assets. The decrease in value of these assets was primarily due to revised purchase prices on certain committed aircraft following their revaluation based upon updated aircraft specifications and usage reports and a slight decline in the estimated net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset.

The remaining portfolio as of March 31, 2007 is primarily comprised of aviation assets and the loan to The Thaxton Group. Refer to Note G "Litigation and Claims" for a further discussion of the settlement of the Thaxton litigation.

As of the date of this report, we had 15 aircraft with a total carrying value on a liquidation basis of approximately $24.7 million. All of these assets have either been liquidated subsequent to March 31, 2007 or are subject to a definitive agreement to sell. Due to the fact that these aircraft are operating throughout the world, additional time will be necessary to close the sales. It is to our advantage to close these transactions when the aircraft are in tax friendly jurisdictions to minimize transfer taxes. No assurance can be given that all of these commitments will result in actual sales or the timing of such sales, but the remaining aircraft are targeted to close during the second quarter of 2007. In addition to the aircraft, our transportation portfolio also includes two aircraft engines, a small number of miscellaneous parts and some unsecured aviation notes and claims with a total carrying value on a liquidation basis of approximately $1.0 million as of March 31, 2007.

Our non-aviation portfolio, in addition to the Thaxton loan, at March 31, 2007 was comprised of assets with a net realizable value of approximately $9.7 million, including our $8.1 million investment in two grantor trusts to secure severance and bonus obligations to our employees. These assets are held primarily for the benefit of our employees, but are recorded as investments due to our retained interest in any excess assets. Substantially all of the other non-aviation assets are in the process of being liquidated.

The estimated net realizable value of our portfolio included, among other transactions, a number of customer judgments and claims, non-marketable private equity securities and certain obligations owed to us by companies that are in liquidation. In many of these instances, we did not attribute any net realizable value to these assets due to our inability to predict the collection of any cash flows from the transactions with even a remote level of confidence. Most of these transactions were previously included in due diligence materials in an attempt to sell the assets, but were excluded on multiple occasions by prospective buyers because of costs of collection and potential liability concerns of the buyers. We continue to monitor these accounts for changes in facts and circumstances that would allow us to attribute value to these assets. As a result, there is the possibility that some net realizable value will be attributed to these assets in the future. An increase in the estimated net realizable value of these assets, if any, will be reflected as a change in net assets in liquidation in future filings. Additionally, we continue to occasionally receive small amounts of proceeds typically from trustees for assets that in certain cases were written off years ago. These cash flows are reflected as a change in net assets in liquidation as they are received.

As we continue to liquidate assets, our incoming cash flows will diminish and the estimation of cash reserves will become increasingly more critical to ensure we retain sufficient funds to meet obligations (including, but not limited to, interest payments on the Senior Notes, settlement of known and unknown claims and normal operating expenses) as they become due throughout the liquidation process. Due to the uncertainty of cash requirements associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to Thaxton, discussed in Note G "Litigation and Claims," we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments.

19

Table of Contents

Our goal is to wind-up the affairs of the Company during 2007; however we cannot control the exact timing of resolving legal matters and claims Accordingly, the liquidation period may extend beyond 2007 and conservative estimates are up to the end of 2008 We will continue to operate as a public company throughout the liquidation period under a Management Services Agreement with Leucadia that expires in 2011

## SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

Certain statements in this report are "forward-looking," in that they do not discuss historical fact, but instead reflect future expectations, projections, intentions, or other items. Forward-looking statements are made pursuant to the safe-harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements include assumptions estimates and valuations implicit in the financial statements and related notes, as well as matters discussed throughout this report including, but not limited to projections, our Plan of Liquidation, sections captioned Item 2 "Management's Discussion and Analysis of Financial Condition and Results of Operations" and Item 3 "Quantitative and Qualitative Disclosure About Market Risk " They are also made in documents incorporated in this report by reference, or in which this report may be incorporated

Forward-looking statements are inherently subject to risks and uncertainties, many of which cannot be predicted or quantified When used in this report the words "estimate," "expects," "anticipates," "believes," "plans " "intends" and similar expressions are intended to identify forward-looking statements that involve known and unknown risks and uncertainties. The risks uncertainties and other factors that could cause our actual results or performance to differ materially from those contemplated by the forward-looking statements include, but are not limited to, the following: whether we can assure Senior Note holders of the timing or amount of their liquidating distributions; whether potential purchasers of our assets may try to take advantage of our liquidation process and offer less-than-optimal prices for our assets; the increasing difficulty in offsetting costs of collecting the remaining portfolio in view of our decreasing asset pool; our Board may abandon the Plan of Liquidation; whether new securities lawsuits will be filed against us; our ability to sell the remaining assets; the impact of general economic conditions and the performance of our borrowers; the instability and uncertainty in the airline industry. which could adversely affect the value of our aircraft portfolio, lease rates and demand; our reliance on third parties for information that may not be accurate; our increasing exposure to concentrations of credit risk; current and future legal and administrative claims and proceedings against us that may result in increased costs and diversion of management's attention; current and future obligations to creditors; our ability to meet obligations is impacted by cash reserve estimations; cash investments are subject to credit exposure and interest rate fluctuations; our ability to retain our employees; our ability to utilize tax attributes; and our ability to be exempt from the registration requirements of the Investment Company Act of 1940 For additional information, see Part I, Item 1A Risk Factors in our Annual Report on Form 10-K for the year ended December 31 2006

Undue reliance should not be placed on these forward-looking statements, which are applicable only as of the date of this Report We do not intend to update forward-looking information to reflect actual results or changes in assumptions or other factors that could affect those statements We cannot predict the risk from reliance on forward-looking statements in light of the many factors that could affect their accuracy

**Item 3.    Quantitative and Qualitative Disclosure About Market Risk**

There were no material changes from the information provided in our Annual Report on Form 10-K for the year ended December 31, 2006

**Item 4.    Controls and Procedures**

(a)    Our management evaluated, with the participation of our principal executive and principal financial officers, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act")), as of March 31. 2007 Based on their evaluation, our principal executive and principal financial officers concluded that our disclosure controls and procedures were effective as of March 31, 2007

20

Source: FINOVA GROUP INC 10-Q May 09 2007

Table of Contents

(b)  There has been no change in our internal controls over financial reporting (as defined in Rules 13a–15(f) and 15d–15(f) under the Exchange Act) that occurred during our fiscal quarter ended March 31, 2007 that has materially affected or is reasonably likely to materially affect, our internal control over financial reporting.

As a result of Section 404 of the Sarbanes–Oxley Act of 2002 and the rules issued there under, we are scheduled to include in our Annual Report on Form 10–K for the year ending December 31, 2007 a report on management's assessment of the effectiveness of our internal controls over financial reporting. Our independent registered public accountants will not be required to attest to and report on management's assessment until the end of 2008.

The process of complying with these requirements includes a comprehensive evaluation and documentation of our internal controls over financial reporting. In this regard, management is prepared to dedicate internal resources and adopt a detailed plan to (i) document our internal controls over financial reporting, (ii) assess the adequacy of our internal controls over financial reporting, (iii) take steps to improve control processes where appropriate and (iv) validate through testing that controls are functioning as documented. There can be no assurance that deficiencies or weaknesses in the design or operation of internal controls over financial reporting will not be found and, if found, that we will have sufficient time to remediate any such deficiencies or weaknesses and perform testing procedures before the end of 2007.

We believe that any system of internal accounting controls, no matter how well designed and operated, can provide only reasonable (and not absolute) assurance that all of our objectives will be met, including the detection of fraud. Furthermore, no evaluation of internal accounting controls can provide absolute assurance that all control issues and instances of fraud, if any, have been detected.

We continue to reduce our workforce, consolidate operations and outsource certain functions. Accordingly, responsibility for administration, management and review of many of our assets has transitioned among our remaining personnel. In conjunction with further reductions in personnel and the relocation of our corporate office, we have transitioned most of our accounting and business support applications to manual processes supported by a system of manual internal controls and spreadsheets. Management has supervised these transitions and has implemented procedures we believe provide effective disclosure and internal controls over financial reporting. We are assessing the efficacy of these procedures and will continue to do so in subsequent periods.

PART II   OTHER INFORMATION

Item 1.   Legal Proceedings

See Part I, Item 1, Note G "Litigation and Claims" for a discussion of certain legal proceedings.

Item 1A   Risk Factors

There were no material changes from the information provided in our Annual Report on Form 10–K for the year ended December 31, 2006.

Item 6.   Exhibits

31 1   Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes–Oxley Act of 2002
31 2   Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes–Oxley Act of 2002
32 1   Certification of Chief Executive Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes–Oxley Act of 2002.
32 2   Certification of Chief Financial Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes–Oxley Act of 2002

21

Table of Contents

**THE FINOVA GROUP INC.**

Signatures

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized

THE FINOVA GROUP INC
(Registrant)

Date: May 9  2007

By:  /s/ Richard A. Ross
Richard A  Ross, Senior Vice President – Chief Financial Officer &
Treasurer
(principal financial officer)

22

Source: FINOVA GROUP INC, 10-Q  May 09  2007

**Table of Contents**

**EXHIBIT INDEX**

| Exhibit Number | Description |
| --- | --- |
| 31 1 | Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes–Oxley Act of 2002 |
| 31 2 | Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes–Oxley Act of 2002 |
| 32 1 | Certification of Chief Executive Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes–Oxley Act of 2002 |
| 32 2 | Certification of Chief Financial Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes–Oxley Act of 2002 |

Source: FINOVA GROUP INC. 10–Q, May 09. 2007

Exhibit 31.1

## CERTIFICATIONS

I, Thomas E. Mara, certify that:

1    I have reviewed this quarterly report on Form 10-Q of The FINOVA Group Inc.:

2    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

Date: May 9, 2007               By: /s/ Thomas E. Mara
                          Thomas E. Mara
                          Chief Executive Officer

Exhibit 31.2

## CERTIFICATIONS

I, Richard A. Ross, certify that:

1    I have reviewed this quarterly report on Form 10-Q of The FINOVA Group Inc.:

2    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

    a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

    c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

Date: May 9, 2007

By: _/s/ Richard A. Ross_____
       Richard A. Ross
       Chief Financial Officer
       (principal financial officer)

Exhibit 32 1

**CERTIFICATION**

**PURSUANT TO 18 U.S.C. SECTION 1350,
AS ADOPTED BY SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Thomas E Mara, as Chief Executive Officer of The FINOVA Group Inc (the "Company") certify, pursuant to 18 U S C ss 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1) the accompanying Form 10-Q report for the quarterly period ended March 31, 2007 as filed with the U.S. Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company

Date: May 9, 2007                                            By:  /s/ Thomas E. Mara
                                                                  Thomas E Mara
                                                                  Chief Executive Officer

Source: FINOVA GROUP INC, 10-Q, May 09, 2007

Exhibit 32.2

# CERTIFICATION

### PURSUANT TO 18 U.S.C. SECTION 1350,
### AS ADOPTED BY SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

I, Richard A. Ross, as Chief Financial Officer of The FINOVA Group Inc. (the "Company") certify, pursuant to 18 U.S.C. ss. 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1) the accompanying Form 10-Q report for the quarterly period ended March 31, 2007 as filed with the U.S. Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: May 9, 2007

By: /s/ Richard A. Ross
    Richard A. Ross
    Chief Financial Officer
    (principal financial officer)

Created by 10KWizard    www.10KWizard.com

# Exhibit B



# FORM 10-Q

## FINOVA GROUP INC - FNV

Exhibit:

**Filed: August 10, 2007 (period: June 30, 2007)**

Quarterly report which provides a continuing view of a company's financial position

## PART I

**Item 1.**    Financial Statements

## PART I

FINANCIAL INFORMATION
**Item 1.**    Financial Statements
**Item 2.**    Management s Discussion and Analysis of Financial Condition and Results of Operations
**Item 3.**    Quantitative and Qualitative Disclosure About Market Risk
**Item 4.**    Controls and Procedures

## PART II

OTHER INFORMATION
**Item 1.**    Legal Proceedings
**Item 1A.** Risk Factors
**Item 6.**    Exhibits
Signatures
EXHIBIT INDEX
EX-31.1 (CERTIFICATION OF CHIEF EXECUTIVE OFFICER)

EX-31.2 (CERTIFICATION OF CHIEF FINANCIAL OFFICER)

EX-32.1 (CERTIFICATION OF CHIEF EXECUTIVE OFFICER)

EX-32.2 (CERTIFICATION OF CHIEF FINANCIAL OFFICER)

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington D.C. 20549

---

# FORM 10-Q

---

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended June 30, 2007

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from _____ to _____

Commission file number 001-11011

---

# THE FINOVA GROUP INC.
(Exact name of registrant as specified in its charter)

---

| | |
|---|---|
| **Delaware**<br>(State or other jurisdiction of<br>incorporation or organization) | **86-0695381**<br>(I.R.S. employer<br>identification no.) |
| **8320 North Hayden Road, Suite C112**<br>**Scottsdale, AZ**<br>(Address of principal executive offices) | **85258**<br>(Zip code) |

Registrant's telephone number, including area code: 480-624-4988

N/A
(Former name, former address and former fiscal year, if changed since last report)

---

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months, (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days

Yes ☒    No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer  See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act  (Check one):

Large accelerated filer ☐         Accelerated filer ☐         Non-accelerated filer ☒

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act)

Yes ☐    No ☒

### APPLICABLE ONLY TO ISSUERS INVOLVED IN BANKRUPTCY PROCEEDINGS DURING THE PRECEDING FIVE YEARS:

Indicate by check mark whether the registrant has filed all documents and reports required to be filed by Sections 12, 13 or 15(d) of the Securities Exchange Act of 1934 subsequent to the distribution of securities under a plan confirmed by the court

Yes ☒    No ☐

### APPLICABLE ONLY TO CORPORATE ISSUERS:

As of August 8, 2007, approximately 122,041,000 shares of Common Stock ($0 01 par value) were outstanding

Source: FINOVA GROUP INC, 10-Q, August 10, 2007

Source: FINOVA GROUP INC, 10-Q. August 10. 2007

**THE FINOVA GROUP INC.**

**TABLE OF CONTENTS**

|  |  | Page No. |
|---|---|---|
| **PART I FINANCIAL INFORMATION** | | |
| Item 1 | Financial Statements | |
| | Consolidated Statements of Net Assets in Liquidation (liquidation basis) at June 30, 2007 (unaudited) and December 31, 2006 | 1 |
| | Consolidated Statement of Changes in Net Assets in Liquidation (liquidation basis) (unaudited) for the Three and Six Months Ended June 30, 2007 | 2 |
| | Condensed Statement of Consolidated Operations (going concern basis) (unaudited) for the Three and Six Months Ended June 30, 2006 | 3 |
| | Condensed Statement of Consolidated Cash Flows (going concern basis) (unaudited) for the Six Months Ended June 30, 2006 | 4 |
| | Notes to Interim Condensed Consolidated Financial Statements (unaudited) | 5 |
| Item 2 | Management's Discussion and Analysis of Financial Condition and Results of Operations | 12 |
| | Special Note Regarding Forward-Looking Statements | 20 |
| Item 3 | Quantitative and Qualitative Disclosure about Market Risk | 21 |
| Item 4 | Controls and Procedures | 21 |
| **PART II OTHER INFORMATION** | | |
| Item 1 | Legal Proceedings | 22 |
| Item 1A | Risk Factors | 22 |
| Item 6 | Exhibits | 22 |
| Signatures | | 23 |

PART I FINANCIAL INFORMATION

Item 1. Financial Statements

THE FINOVA GROUP INC.
CONSOLIDATED STATEMENTS OF NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS)
(Dollars in thousands)

|  | June 30, 2007 (Unaudited) | December 31, 2006 (Audited) |
|---|---|---|
| ASSETS |  |  |
| Cash and cash equivalents | $ 227,820 | $ 177,311 |
| Restricted cash - impermissible restricted payments | 81,228 | 78,104 |
| Liquidating Portfolio: |  |  |
| Net realizable value supported by underlying loan or direct financing agreements | 506 | 105,829 |
| Net realizable value supported by underlying operating leases and other owned assets | — | 68,624 |
| Investments | 6,200 | 11,091 |
| Total Liquidating Portfolio | 6,706 | 185,544 |
| Other assets and deposits | 1,621 | 2,877 |
| Total Assets | $ 317,375 | $ 443,836 |
| LIABILITIES (excluding Senior Notes) |  |  |
| Interest payable on the Senior Notes | $ 13,648 | $ 14,222 |
| Accounts payable and other liabilities | 7,196 | 14,727 |
| Reserve for estimated costs during the liquidation period | 16,497 | 24,259 |
| Total Liabilities (excluding Senior Notes) | 37,341 | 53,208 |
| Net Assets Available for Settlement of Senior Notes | 280,034 | 390,628 |
|  |  |  |
| Senior Notes with outstanding principal of $1.4 billion and $1.5 billion, respectively, at estimated settlement amount | 280,034 | 390,628 |
| Net Assets in Liquidation | $ — | $ — |

*See notes to interim condensed consolidated financial statements*

1

THE FINOVA GROUP INC.
CONSOLIDATED STATEMENT OF CHANGES IN NET ASSETS IN LIQUIDATION (LIQUIDATION BASIS)
FOR THE THREE AND SIX MONTHS ENDED JUNE 30, 2007
(Dollars in thousands)
(Unaudited)

| | Three Months Ended June 30, 2007 | Six Months Ended June 30, 2007 |
|---|---|---|
| Net Assets in Liquidation, beginning of period | $  — | $  — |
| Changes in net assets in liquidation: | | |
| Change in estimated net realizable value of assets and other liabilities | 983 | (827) |
| Interest earned on investment of cash reserves and other operating activity | 4,794 | 8,210 |
| Increase in estimated costs during the liquidation period | (2,834) | (3,558) |
| Interest accruing on the Senior Notes | (27,234) | (55,059) |
| Reduction in the estimated settlement of the Senior Notes | 24,291 | 51,234 |
| Net Change in Net Assets in Liquidation | $  — | $  — |
| Net Assets in Liquidation at June 30, 2007 | $  — | $  — |

*See notes to interim condensed consolidated financial statements*

2

Source: FINOVA GROUP INC. 10-Q, August 10, 2007

THE FINOVA GROUP INC.
CONDENSED STATEMENT OF CONSOLIDATED OPERATIONS (GOING CONCERN BASIS)
FOR THE THREE AND SIX MONTHS ENDED JUNE 30, 2006
(Dollars in thousands, except per share data)
(Unaudited)

| | Three Months Ended June 30, 2006 | Six Months Ended June 30, 2006 |
|---|---|---|
| **Revenues:** | | |
| Interest income | $        944 | $      4,658 |
| Rental income | 1,405 | 2,886 |
| Operating lease income | 6,431 | 14,820 |
| Fees and other income | 4,113 | 9,435 |
| **Total Revenues** | 12,893 | 31,799 |
| Interest expense | (37,492) | (76,468) |
| Operating lease depreciation | (1,523) | (3,181) |
| **Interest Margin** | (26,122) | (47,850) |
| **Other Revenues and (Expenses):** | | |
| Reversal of provision for credit losses | 1,326 | 22,429 |
| Net gain on financial assets | 28,275 | 57,058 |
| Portfolio expenses | (4,188) | (9,672) |
| General and administrative expenses | (8,884) | (16,213) |
| **Total Other Revenues and (Expenses)** | 16,529 | 53,602 |
| (Loss) income before income taxes | (9,593) | 5,752 |
| Income tax expense | — | — |
| **Net (Loss) Income** | $     (9,593) | $      5,752 |
| Basic/diluted (loss) earnings per share | $      (0.08) | $        0.05 |
| Weighted average shares outstanding | 122,041,000 | 122,041,000 |

*See notes to interim condensed consolidated financial statements*

3

Source: FINOVA GROUP INC. 10-Q. August 10. 2007

THE FINOVA GROUP INC.
CONDENSED STATEMENT OF CONSOLIDATED CASH FLOWS (GOING CONCERN BASIS)
FOR THE SIX MONTHS ENDED JUNE 30, 2006
(Dollars in thousands)
(Unaudited)

| | |
|---|---:|
| **Operating Activities:** | |
| Net income | $ 5,752 |
| Adjustments to reconcile net income to net cash used by operating activities: | |
| Reversal of provision for credit losses | (22,429) |
| Net cash gain on disposal of financial assets | (52,315) |
| Net non-cash gain on financial assets | (4,743) |
| Depreciation and amortization | 3,944 |
| Deferred income taxes, net | (114) |
| Fresh-start accretion - assets | (579) |
| Fresh-start discount amortization - Senior Notes | 15,702 |
| Change in assets and liabilities: | |
| Decrease in other assets | 979 |
| Decrease in accounts payable and accrued expenses | (15,600) |
| Decrease in interest payable | (1,709) |
| **Net Cash Used by Operating Activities** | (71,112) |
| **Investing Activities:** | |
| Proceeds from disposals of leases and other owned assets | 53,470 |
| Proceeds from sales of investments | 4,932 |
| Proceeds from sales of loans and financing leases | 99,959 |
| Collections and prepayments from financial assets | 52,585 |
| Fundings under existing customer commitments | (5,194) |
| Deposit of impermissible restricted payments into restricted cash account | (9,373) |
| Recoveries of loans previously written off | 3,497 |
| **Net Cash Provided by Investing Activities** | 199,876 |
| **Financing Activities:** | |
| Principal prepayments of Senior Notes | (178,077) |
| **Net Cash Used by Financing Activities** | (178,077) |
| **Decrease in Cash and Cash Equivalents** | (49,313) |
| Cash and Cash Equivalents, beginning of year | 212,317 |
| Cash and Cash Equivalents, end of period | $ 163,004 |

*See notes to interim condensed consolidated financial statements*

4

Source: FINOVA GROUP INC. 10-Q. August 10. 2007

THE FINOVA GROUP INC.
NOTES TO INTERIM CONDENSED CONSOLIDATED FINANCIAL STATEMENTS
JUNE 30, 2007
(Dollars in thousands in tables)
(Unaudited)

## A. Nature of Operations and Plan of Liquidation

The accompanying financial statements and notes hereto should be read in conjunction with the consolidated financial statements and notes thereto included in the Company's Annual Report on Form 10-K for the year ended December 31, 2006 (the "2006 Form 10-K"). Capitalized terms not defined herein are used as defined in the 2006 Form 10-K.

The notes to the financial statements relate to The FINOVA Group Inc. and its subsidiaries (collectively "FINOVA" or the "Company"), including FINOVA Capital Corporation and its subsidiaries ("FINOVA Capital"). FINOVA is a financial services holding company. Through its principal operating subsidiary, FINOVA Capital, the Company provided a broad range of financing and capital markets products, primarily to mid-size businesses. Throughout this document, "we," "us" and "our" also refer to The FINOVA Group Inc. and its subsidiaries.

Since emergence from chapter 11 bankruptcy proceedings in August 2001, our business activities have been limited to maximizing the value of our portfolio through the orderly collection of our assets. These activities included collection efforts pursuant to underlying contractual terms, negotiation of prepayments and sales of assets or collateral. We have substantially completed the liquidation of our portfolio and our focus has shifted to the continued wind down of our operations and future dissolution of our entities. We are prohibited by the Indenture governing our 7.5% Senior Secured Notes (the "Senior Notes") from engaging in any new lending activities or other business. Any funds generated in excess of cash reserves permitted by our debt agreements have been used to reduce obligations to our creditors.

Because substantially all of our assets (including cash reserves) are pledged to secure obligations under the promissory notes of FINOVA Capital issued to us in the aggregate principal amount of the Senior Notes (the "Intercompany Notes"), our ability to obtain additional or alternate financing is severely restricted. As a result of this and the substantial liquidation of our portfolio, our only meaningful source of liquidity is cash reserves held by the Company.

## Plan of Liquidation

On November 1, 2006, our Board of Directors (the "Board") approved the Plan of Complete Liquidation and Dissolution (the "Plan of Liquidation") and the filing of a motion (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On December 4, 2006, the Bankruptcy Court granted our Motion and approved (i) the previously announced settlement of various litigations associated with The Thaxton Group, Inc. (the "Thaxton Settlement"), (ii) the ongoing sale of our remaining assets, the orderly wind down of our operations and our future dissolution, (iii) our sale of all or substantially all of our assets without stockholder approval and our future dissolution without stockholder approval at such time as our Board deems to be appropriate and (iv) channeling to the Bankruptcy Court any claims against us that the holders of our Senior Notes or the indenture trustee for the Senior Notes may have arising from or in any way related to our joint chapter 11 plan, the ongoing liquidation of FINOVA, the senior secured notes, or the wind down of our operations.

As a result of the aforementioned approvals, we took steps to initiate our complete liquidation and as such, the information provided in this Report on Form 10-Q reflects our adoption of the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. Historical information for periods prior to December 5, 2006 is presented on a going concern basis of accounting. Under the liquidation basis of accounting, we are required to value all assets at their estimated net realizable value, while liabilities are reported at their estimated net settlement amount. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions or our actual dissolution.

5

Source: FINOVA GROUP INC, 10-Q, August 10, 2007

Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims  We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008  There can be no assurance we will complete our liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008  We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs  Refer below to Note G  "Litigation and Claims" for the status of our outstanding legal matters

We will continue to operate as a public company throughout the liquidation period under a Management Services Agreement with Leucadia National Corporation ("Leucadia") that expires in 2011  Pursuant to that agreement, Leucadia has designated its employees to act as Chairman of the Board (Ian M  Cumming), President (Joseph S  Steinberg) and Chief Executive Officer (Thomas E  Mara)  In accordance with the Indenture, we continue to maintain cash reserves that we believe are adequate to pay our operating expenses as they come due

### B. Significant Accounting Policies

The preparation of financial statements in conformity with U S  generally accepted accounting principles requires us to use estimates and assumptions that affect reported amounts of assets and liabilities  These estimates are subject to known and unknown risks, uncertainties and other factors that could materially impact the amounts reported and disclosed in the financial statements  Significant estimates include anticipated amounts and timing of future cash flows used in the calculation of net realizable value, reserve for future costs and settlement amounts  Actual results could differ from those estimated

#### Consolidation of Interim Reporting

The interim consolidated financial statements have been prepared in accordance with U S  generally accepted accounting principles  The interim consolidated financial information is unaudited  In the opinion of management, all adjustments consisting of normal recurring items necessary to present fairly our net assets in liquidation as of June 30, 2007 and the changes in net assets presented herein have been included in our consolidated financial statements

For a complete listing of our significant accounting policies, see Note B  "Significant Accounting Policies" in our 2006 Form 10-K  The policies related to the liquidation basis of accounting were the only policies presented herein  With the adoption of the liquidation basis of accounting, all anticipated improvements or deterioration in the portfolio are fully reflected in our financial statements as facts and assumptions change

#### Liquidation Basis of Accounting

With the approval of our Plan of Liquidation by the Bankruptcy Court, our complete liquidation is considered to be imminent and as such, we adopted the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States  A Statement of Net Assets in Liquidation and a Statement of Changes in Net Assets in Liquidation are the principal financial statements presented under the liquidation basis of accounting  Under the liquidation basis of accounting, assets are stated at their estimated net realizable value, which is the non-discounted amount of cash, or its equivalent, into which an asset is expected to be converted in the due course of business less direct costs, while liabilities are reported at their estimated net settlement amount, which is the non-discounted amounts of cash, or its equivalent, expected to be paid to liquidate an obligation in the due course of business, including direct costs  Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense)  These estimates will be periodically reviewed and adjusted as appropriate  There can be no assurance that these estimated values will be realized  Such amounts should not be taken as an indication of the timing or amount of future distributions to be made  The valuation of assets at their net realizable value and liabilities at their anticipated settlement amount represent estimates, based on present facts and circumstances, of the net realizable value of the assets and the costs associated with carrying out the Plan of Liquidation based on the assumptions set forth below  The actual values and costs associated with carrying out the Plan of Liquidation are expected to differ from amounts reflected in the accompanying financial statements because of the plan's inherent uncertainty  These differences may be material  In particular, the estimates of our costs will vary with the length of time necessary to complete the Plan of Liquidation  Accordingly, it is not possible to predict with certainty

6

the timing or aggregate amount which will ultimately be distributed to note holders and no assurance can be given that the distributions will equal or exceed the estimate presented in the accompanying Statement of Net Assets in Liquidation or the price at which our Senior Notes have traded or are expected to trade in the future

The following are the significant assumptions utilized by management in assessing the value of our liquidating portfolio and the expected settlement amount of liabilities included in the Statement of Net Assets in Liquidation at June 30, 2007 and December 31, 2006

**Net Realizable Value Supported by Underlying Loan or Direct Financing Agreements** All loans and direct financing leases were adjusted to their estimated net realizable values, which represented all future undiscounted cash flows expected to be collected from each of these transactions including sales and settlement proceeds, principal collections, scheduled rental payments and interest Anticipated cash collections were partially offset by any known direct costs and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected As of June 30, 2007, substantially all loans and direct financing leases had been liquidated

**Net Realizable Value Supported by Underlying Operating Leases and Other Owned Assets.** All owned assets (operating leases and off-lease assets) were adjusted to their estimated net realizable values, which represented all future undiscounted cash flows expected to be collected from each of these transactions including sales proceeds and scheduled rental payments Anticipated cash collections were partially offset by any known direct costs such as maintenance and make ready costs for certain aircraft and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected As of June 30, 2007, all operating leases and other owned assets had been liquidated

**Investments** All investments are reported at either their fair value or estimated net realizable values, based on published information, quotes by registered securities brokers or signed contracts Investments for which market information is not readily available were valued based on estimated future cash flows that may be realized from the investment, if any

**Reserve for Estimated Costs during the Liquidation Period.** Under the liquidation basis of accounting, we are required to estimate and accrue for costs associated with implementing and completing the Plan of Liquidation The reserve for estimated costs includes four primary areas of accruals including people costs (payroll, benefits and severance), Leucadia management fees, professional services and litigation costs and corporate expenses (insurance, directors' fees and entity related expenses) These amounts can vary significantly due to, among other things, the timing of asset sales, the timing and amounts associated with discharging known and contingent liabilities and claims, the costs associated with cessation of our operations including an estimate of costs subsequent to that date (which would include reserve contingencies for the appropriate statutory periods) and the costs of retaining knowledgeable personnel and others to oversee the liquidation As a result, we have accrued the projected costs including corporate overhead and specific liquidation costs of severance and performance bonuses, professional fees and various other wind-up costs expected to be incurred during the projected period to complete the liquidation and dissolution These expense accruals will be periodically reviewed for adequacy and adjusted from time to time as projections and assumptions change Changes to the accruals will be recorded as adjustments to net assets in liquidation in future periods

## C. Effects of the Liquidation Basis of Accounting

During the six months ended June 30, 2007, the estimated net realizable value of our assets and liabilities decreased a net $0 8 million primarily due to revised purchase prices on certain aircraft following their revaluation based upon updated aircraft specifications and usage reports and a slight decline in the net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset, partially offset by an increase in interest accruing on sales transactions due to delays in the final closure of the deals, a slight increase in the purchase price of other aviation assets and the settlement of certain claims for lower than previously anticipated amounts Additionally, during the six months ended June 30, 2007, we accrued $55.1 million of additional interest on the Senior Notes and earned interest income on cash investments and other operating activity of $8 2 million As a result of the adoption of the liquidation basis of accounting and valuation of our liquidating portfolio at its estimated net realizable value, income is no longer being recognized on our portfolio All cash received on the portfolio is applied against its estimated net realizable value, which took into consideration all expected interest and rental payments Any cash received in excess of an individual asset's estimated net realizable value is shown as a change in net assets in the period of collection Amounts received during 2007 were not considered to be significant

7

Under the liquidation basis of accounting, we are also required to establish and maintain a reserve for all future general and administrative expenses and other costs expected to be incurred during the liquidation period  The following is a summary of and changes to the reserve for estimated costs during the liquidation period:

| | December 31, 2006 | Net Adjustments and Payments | June 30, 2007 |
|---|---|---|---|
| People costs (payroll, benefits and severance) | $    4,144 | $      (876) | $   3,268 |
| Leucadia management fees | 8,000 | (2,000) | 6,000 |
| Professional services and litigation costs | 10,431 | (3,906) | 6,525 |
| General corporate expenses | 1,684 | (980) | 704 |
| Total reserve for estimated costs during the liquidation period | $   24,259 | $   (7,762) | $16,497 |

During the six months ended June 30, 2007, the reserve declined to $16 5 million due to the payment of expenses ($11 3 million) and a reduction in our estimate as a result of certain actual expenses being lower than originally anticipated, partially offset by a net increase caused by the extension of the estimated liquidation period through the first quarter of 2008. Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims  We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result. we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008  There can be no assurance we will complete our liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008  We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs  Refer below to Note G  "Litigation and Claims" for the status of our outstanding legal matters

Due to the fact that we do not have sufficient assets to fully satisfy all obligations to our creditors, any change to the estimated net realizable value of our assets and liabilities results in a corresponding adjustment to the estimated settlement amount of the Senior Notes  During the six months ended June 30, 2007, the estimated settlement amount of the Senior Notes was reduced by $51 2 million to a balance of $280 0 million; however, we currently estimate the Senior Note holders will receive total liquidation distributions (principal and interest) of approximately $408 7 million, including amounts already distributed during 2007, which is a $3 8 million increase over our year-end estimate

### D. Liquidating Portfolio

As a result of the adoption of the liquidation basis of accounting, most of the prior disclosures related to total financial assets are no longer applicable  Our liquidating portfolio is now recorded at its estimated net realizable value, which incorporates all future cash flows, including earnings expected to be collected

The following table presents the activity in our liquidating portfolio for the six months ended June 30, 2007:

| | |
|---|---|
| **Liquidating Portfolio at December 31, 2006** | $ 185,544 |
| **Cash Activity:** | |
| Collections and proceeds | (177,509) |
| **Non-Cash Activity:** | |
| Change in estimated net realizable value of assets | (1,329) |
| **Liquidating Portfolio at June 30, 2007** | $    6,706 |

As of June 30, 2007, we have substantially completed the liquidation of our portfolio  During the second quarter of 2007, we received $83 7 million in full and final settlement of the Thaxton loan and sold the remainder of our aviation assets for amounts that approximated their previously reported estimated net realizable values

8

Source: FINOVA GROUP INC. 10-Q. August 10. 2007

The remaining portfolio value is comprised of a few small financing transactions that are expected to be collected in their normal course before year-end and investments with a net realizable value of approximately $6 2 million, which includes our remaining $5 7 million investment in two grantor trusts to secure severance and bonus obligations to our employees. These assets are held primarily for the benefit of our employees, but are recorded as investments due to our retained interest in any excess assets As of June 30, 2007, the obligation to current and former employees is estimated to be $3 9 million, resulting in estimated excess assets of approximately $1 8 million that will revert to the Company upon discharge of all obligations

The remaining portfolio also includes, among other transactions, a number of customer judgments and claims, a few non-marketable private equity securities and certain obligations owed to us by companies that are themselves in liquidation In the majority of these instances, we did not attribute any net realizable value to these assets due to our inability to predict the collection of any cash flows from the transactions with even a remote level of confidence Most of these transactions were previously included in due diligence materials in an attempt to sell the assets, but were excluded on multiple occasions by prospective buyers because of costs of collection and potential liability concerns of the buyers We continue to monitor these accounts for changes in facts and circumstances that would allow us to attribute value to these assets or events that resolve their ultimate disposition As a result, there is the possibility that some net realizable value will be attributed to these assets in the future An increase in the estimated net realizable value of these assets, if any, will be reflected as a change in net assets in liquidation in future filings Additionally, we continue to occasionally receive small amounts of proceeds typically from trustees for assets that in certain cases were written off years ago These cash flows are typically immaterial and are reflected as a change in net assets in liquidation as they are received

**E Debt**

A summary of our total debt outstanding on a liquidation basis was as follows:

| | June 30, 2007 | December 31, 2006 |
|---|---|---|
| Senior Notes: | | |
| Principal | $ 1,424,166 | $ 1,483,975 |
| Principal of Senior Notes estimated to not be settled or repaid | (1,144,132) | (1,093,347) |
| Senior Notes | $ 280,034 | $ 390,628 |

During the second quarter of 2007, we made a partial principal prepayment on the Senior Notes of $59 4 million, which reduced the outstanding principal to $1 4 billion Cumulative prepayments through the second quarter of 2007 totaled $1 54 billion, which represents approximately 52% of the principal being repaid Based on the valuation of our assets at their estimated net realizable value and liabilities at estimated settlement amount, we currently estimate the Senior Note holders will receive additional liquidation distributions (principal and interest) of approximately $293 7 million, which is considerably less than the total principal and interest due of approximately $1 4 billion These estimated distributions ($293 7 million) taken together with $115 0 million of principal and interest already distributed during 2007 increase the total liquidation distributions (principal and interest) to approximately $408.7 million, which is a $3 8 million increase over our year-end estimate The estimated settlement amount was determined solely based on the net assets available for settlement of the Senior Notes and is subject to change due to changes in the estimated net realizable value of our net assets We clearly do not have sufficient assets to fully repay the Senior Note obligation

While, the Senior Notes have a first priority security interest in substantially all of our remaining assets, the Indenture requires us to first use any cash and cash equivalents to pay or fund operating expenses, taxes and reasonable reserves for commitments and general corporate purposes In accordance with the terms of the Indenture, we are required to use any excess cash as defined in the Indenture, to make semi-annual interest and principal payments on the Senior Notes Additionally, the Indenture permits voluntary prepayments at our option, which we have previously elected to make from time to time; however, due to the uncertainty of cash requirements associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to the TLP Action, discussed below in Note G "Litigation and Claims", we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments

The timing and amount of distributions to Senior Note holders will depend on the timing and amount of proceeds we receive upon the sale of our remaining assets, the resolution of claims and other litigation matters, the extent to which reserves for current or future

liabilities are required and the length of time required to settle all of our matters. Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims. We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008. There can be no assurance we will complete our liquidation in this time period. and the resolution of the various legal claims and matters may extend through the end of 2008. We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs. Refer below to Note G "Litigation and Claims" for the status of our outstanding legal matters and a discussion of the equity committee's appeal of the Bankruptcy Court's order that authorizes us to use the funds in the restricted cash account for general corporate purposes, including payment to Senior Note holders

Stockholders should not expect any payments or distributions. The Indenture contemplates that as principal payments are made on the Senior Notes, our stockholders would receive a distribution equal to 5.263% (i.e., 5%/95%) of each principal prepayment. Ninety-five percent (95%) of the remaining available cash after establishment of cash reserves as defined in the Indenture will be used to make semi-annual prepayments of principal on the Senior Notes and five percent (5%) is identified for distributions to and/or repurchases of stock from common stockholders. However, the Indenture prohibits us from making distributions to and/or repurchases from stockholders if the payments would render the Company insolvent. would be a fraudulent conveyance or would not be permitted to be made under applicable law. Any such distribution and/or repurchase would be considered an impermissible restricted payment under the Indenture

In conjunction with the prepayments of Senior Notes noted above, we retained a total of $81.2 million as of June 30, 2007. Retained amounts are being segregated and reflected as restricted cash in our financial statements, pending their final disposition. We anticipate that the retained amounts will eventually be paid to our creditors, **not** our stockholders. If the funds were to be paid to our stockholders, affiliates of Berkadia (jointly owned by Leucadia and Berkshire Hathaway). which owns 50% of our common stock, would receive half of the retained amounts. Berkadia has advised us that it does not believe that stockholders are entitled to the retained amounts since we cannot fully satisfy our creditor obligations

As previously reported, we filed a motion in the Bankruptcy Court seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors. On June 26, 2007, the Bankruptcy Court entered a final order granting our motion in its entirety; however, the equity committee is appealing the final order. For a further discussion of the motion and its status, see Note G "Litigation and Claims "

### F. Income Taxes

We had federal net operating loss carryforwards of $1.5 billion as of June 30, 2007 and $1.3 billion as of December 31, 2006. No income tax expense or benefit was recorded during the six months ended June 30, 2007 and 2006. Any income or loss has been entirely offset by a decrease or increase in valuation allowances against deferred tax assets, which were previously established due to concern regarding our ability to utilize income tax benefits generated from losses in prior periods. We do not expect to be able to utilize all the deferred tax assets due to uncertainty about the amount of future earnings, a variety of loss or other tax attribute carryover limitations in the various jurisdictions in which we file tax returns and uncertainty regarding the timing of the reversal of deferred tax liabilities

### G. Litigation and Claims

*Legal Proceedings*

We are party either as plaintiff or defendant to various actions, proceedings and pending claims, including legal actions, some of which involve claims for compensatory, punitive or other damages in significant amounts. Litigation often results from our attempts to enforce our lending agreements against borrowers and other parties to those transactions. Litigation is subject to many uncertainties. It is possible that some of the legal actions. proceedings or claims could be decided against us. Other than the matters described below, we believe that any resulting liability from our legal proceedings should not materially affect our net assets in liquidation or cash flows. The following matters could have a material adverse impact on our net assets in liquidation or cash flows

Historically, it was our policy to accrue for loss contingencies. including litigation, only when the losses were probable and estimable. The determination of when losses became probable and estimable was inherently subjective and required significant judgment

10

Source: FINOVA GROUP INC. 10-Q. August 10. 2007

Under the liquidation basis of accounting, liabilities for loss contingencies and claims are reported at their estimated net settlement amount. which is the non-discounted amount of cash expected to be paid to liquidate or settle an obligation in the due course of business

If any legal proceedings were to result in a significant adverse judgment against us, it is possible that we would not be able to satisfy that liability due to our financial condition. As previously noted, due to our financial condition, we do not expect that we can satisfy all of our secured debt obligations at maturity

### Litigation Related to Loans to The Thaxton Group Inc and Related Companies

Our prior periodic filings with the Securities and Exchange Commission have disclosed ongoing litigation against FINOVA Capital with respect to The Thaxton Group Inc ("TGI") and several related entities (collectively, the "Thaxton Entities")

Pursuant to an order of the Thaxton Entities bankruptcy court dated September 11, 2006, we transferred all of the cash received from the Thaxton Entities since commencement of the Thaxton Entities chapter 11 proceedings in October 2003, together with interest earned thereon (an aggregate of approximately $97 2 million). to a trust account to be held by Thaxton under order of the bankruptcy court

As previously disclosed, on September 12, 2006, we reached a preliminary settlement (the "Settlement") to resolve all outstanding claims in the ongoing litigation between us, the Thaxton Entities, the holders of subordinated notes issued by the Thaxton Entities (the "Noteholders"), and the Official Committee of Unsecured Creditors of the Thaxton Entities This Settlement, which became effective on April 16, 2007, settled all of the actions involving us and the Thaxton Entities, in particular the actions pending in the United States District Court for the District of South Carolina, Anderson Division (the "District Court"), including the previously described new Thaxton action commenced in the District Court in June 2006, as well as claims in the Thaxton Entities chapter 11 proceedings

As part of the settlement, on April 16, 2007, we received $83 7 million, representing all amounts we transferred into the trust on September 11, 2006 – i e all amounts paid by the Thaxton Entities to us since commencement of the Thaxton Entities chapter 11 proceedings in October 2003 (together with interest earned thereon). minus $16 million, plus interest actually earned thereon from August 16, 2006, which will be retained by the Thaxton Entities. In addition, we received complete releases from all Thaxton parties for all matters related to the Thaxton Entities and the prior summary judgment order of the District Court was vacated

### Thaxton Life Partners Litigation

On February 14, 2007, a group of noteholders of Thaxton Life Partners, Inc ("TLP") filed suit against the Company and FINOVA Capital (the "TLP Action"), unrelated to the Thaxton Entities litigation noted above The TLP Action purports to be a class action filed on behalf of approximately 150 TLP note holders with claims related to approximately $20 million in TLP notes The TLP Action alleges that, in connection with TLP's sale of its notes, the Company. FINOVA Capital, and several other defendants participated in a civil conspiracy, violated the South Carolina Unfair Trade Practices Act. violated the civil RICO statute, and were unjustly enriched In its various counts, the TLP Action seeks actual, treble, and/or punitive damages

The TLP Action was filed in the United States District Court for the District of South Carolina (the "South Carolina District Court") We believe that all claims against both us and FINOVA Capital are without merit. and that, under the terms of the TLP notes, the TLP Action must move forward in arbitration Upon motion by the Company and FINOVA Capital to the South Carolina District Court seeking an order compelling such arbitration, the Court granted the relief sought and entered an order dismissing the action on May 30, 2007 On June 19, 2007, the TLP plaintiff's appealed such order to the Fourth Circuit United States Court of Appeals The Company and FINOVA Capital intend to vigorously defend against the TLP note holders' claims asserted against them

11

Source: FINOVA GROUP INC, 10-Q. August 10. 2007

*Motion Regarding Distributions to Stockholders*

As discussed more fully in Note E "Debt", the Indenture contemplates that as principal payments are made on the Senior Notes, our stockholders would receive a distribution equal to 5 263% of each principal prepayment. However, the Indenture prohibits distribution of those amounts due to our financial condition. Those amounts are held in a restricted account, and totaled $81 2 million as of June 30, 2007. Because we will not be able to repay the Senior Notes in full, on April 1, 2005, we filed a motion in the United States Bankruptcy Court for the District of Delaware seeking an order (1) to cease directing funds into the restricted account and (2) to allow us to use the funds in the restricted account to satisfy our obligations to creditors

On December 22, 2006, the reconstituted equity committee filed a motion with the Bankruptcy Court seeking among other things, appointment of a financial expert to review the issue of our solvency, and up to $100,000 to accomplish this task. Over our objection, the Bankruptcy Court granted the equity committee's motion, ordering that the evaluation be completed within sixty (60) days of an order being entered approving the motion. As expected, the financial expert concluded that FINOVA is insolvent. On June 26, 2007, the Bankruptcy Court issued a final order finding, among other things, that FINOVA is presently and will be forever insolvent, and lifted the requirement that FINOVA segregate the funds into a restricted account. The equity committee subsequently filed a motion requesting a stay in the distribution of funds held in the restricted account pending appeal of the final order to the United States District Court for the District of Delaware. The equity committee's appeal was filed on July 6, 2007. The hearing on the stay was heard on July 24, 2007. The Bankruptcy Court granted the equity committee a ninety (90) day stay, which expires October 22, 2007, and directed that all further action related to this matter will be heard in the United States District Court for the District of Delaware

### Item 2. Management's Discussion and Analysis of Financial Condition and Results of Operations

The following section should be read in conjunction with our Annual Report on Form 10-K for the year ended December 31, 2006 (the "2006 Form 10-K") and the Special Note Regarding Forward-Looking Statements included herein. Capitalized terms not defined herein are used as defined in the 2006 Form 10-K. The following discussion relates to The FINOVA Group Inc. and its subsidiaries (collectively "FINOVA" or the "Company"), including its principal operating subsidiary, FINOVA Capital Corporation and its subsidiaries ("FINOVA Capital")

### OVERVIEW

**Plan of Liquidation**. On November 1, 2006, our Board of Directors (the "Board") approved the Plan of Complete Liquidation and Dissolution (the "Plan of Liquidation") and the filing of a motion (the "Motion") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which was approved by the Bankruptcy Court on December 4, 2006. As a result of these approvals, we took steps to initiate our complete liquidation and as such, the information provided in this Report on Form 10-Q reflects our adoption of the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. Under the liquidation basis of accounting, we are required to value all assets at their estimated net realizable value, while liabilities are reported at their estimated net settlement amount. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions or our actual dissolution

During the second quarter of 2007, we substantially completed the liquidation of our asset portfolio. We are now focused on the wind down of our operations, resolution of claims and the future dissolution of our entities. We have begun the process of withdrawing our authorization to conduct business in the states that we no longer have active assets or legal requirements that necessitate our continued authorization to conduct business. The timing and amount of distributions to Senior Note holders will primarily depend on the resolution of claims and other litigation matters, the extent to which reserves for current or future liabilities are required, the length of time required to settle all our matters and, to a lesser extent, the timing and amounts we receive for our remaining assets

Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims. We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008. There can be no assurance we will complete our

12

liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008. We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs. Refer below to Note G, "Litigation and Claims" for the status of our outstanding legal matters.

We continue to retain sufficient cash reserves to fund our expenses, including the costs associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to the TLP Action. As a result, we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures and claims, which could limit our ability to make and the timing of future voluntary principal prepayments.

**Forever Insolvent.** As of June 30, 2007, we have repaid $1.54 billion or approximately 52% of the principal on the Senior Notes. Based on the valuation of our assets at their estimated net realizable value and liabilities at estimated settlement amount, we currently estimate the Senior Note holders will receive additional liquidation distributions (principal and interest) of approximately $293.7 million, which is considerably less than the total principal and interest due of approximately $1.4 billion. We clearly do not have sufficient assets to fully repay the Senior Note obligation. As expected, during the second quarter of 2007, a financial expert appointed by the reconstituted equity committee concluded that FINOVA is insolvent. On June 26, 2007, the Bankruptcy Court issued a final order finding, among other things, that FINOVA is presently and will be forever insolvent.

**No Stockholder Payments Anticipated.** While the Indenture contemplated we would make payments to our stockholders as the Senior Notes were repaid, we have not made those payments. Distributions to stockholders are prohibited due to our financial condition. Based on our liquidation basis financial statements, we will not be able to repay more than $1.1 billion of the Senior Notes. As a result, stockholders should not expect any payments or return on their common stock. Funds related to the restricted distributions are currently being held in a segregated account, pending their final disposition. We anticipate that those funds will eventually be paid to our creditors, not to our stockholders. If the funds were to be paid to our stockholders, affiliates of Berkadia (which are owned by Berkshire Hathaway and Leucadia), as owner of 50% of our stock, would receive half of those payments.

As discussed in Note G, "Litigation and Claims," we filed a motion in the United States Bankruptcy Court for the District of Delaware, seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors. On June 26, 2007, the Bankruptcy Court issued a final order that granted our motion in its entirety. The final order is currently being appealed by the equity committee.

**No Restructuring Plan Contemplated.** On numerous occasions, we have been asked whether there is some plan to save the Company and our net operating loss carryforwards ("NOL") As we have noted for some time, the Board remains willing to consider legitimate proposals presented by note holders or others, but we are not formulating a restructuring plan intended to enable us to emerge as a healthy company.

Many obstacles exist to creation of a viable restructuring plan. A restructuring presumes a sensible business plan emerging from that process. In light of our dwindling asset base and the competitive environment, we believe it would be difficult, if not futile, in these circumstances to develop a business model that can produce returns to the creditors and/or new investors greater than that expected from the present course. Absent that, or a substantial new investment in FINOVA, we believe it would be difficult to obtain the requisite approval to restructure the present debt obligations. The task has become more difficult due to the substantial liquidation of our portfolio and continuation of the wind-up process. We caution investors to carefully evaluate applicable tax regulations, which restrict the ability to transfer or use NOLs in a variety of circumstances. Our financial statements do not anticipate using the NOLs for those and other reasons.

**HIGH INVESTMENT RISK OF SECURITIES. As previously stated, we will not be able to fully repay the Senior Notes or make any distributions to our stockholders, absent a court order in connection with the appeal referred to above. Consequently, investing in our Senior Notes and common stock involves a high level of risk.**

### CRITICAL ACCOUNTING POLICIES

Our consolidated financial statements continue to be prepared in accordance with U.S. generally accepted accounting principles. The preparation of these financial statements requires us to use estimates and assumptions that affect reported amounts of assets and liabilities. These estimates are subject to known and unknown risks, uncertainties and other factors that could materially impact the

13

amounts reported and disclosed in the financial statements. See Item 1A. "Risk Factors" and "Special Note Regarding Forward-Looking Statements" in our 2006 Form 10-K for more information on these risks and uncertainties. We believe the following to be among the most critical judgment areas in the application of our accounting policies

*Liquidation Basis of Accounting*

With the approval of our Plan of Liquidation by the Bankruptcy Court, our complete liquidation is considered to be imminent and as such, we adopted the liquidation basis of accounting effective the close of business on December 4, 2006 in accordance with accounting principles generally accepted in the United States. A Statement of Net Assets in Liquidation and a Statement of Changes in Net Assets in Liquidation are the principal financial statements presented under the liquidation basis of accounting. Under the liquidation basis of accounting, assets are stated at their estimated net realizable value, which is the non-discounted amount of cash, or its equivalent, into which an asset is expected to be converted in the due course of business less direct costs, while liabilities are reported at their estimated net settlement amount, which is the non-discounted amounts of cash, or its equivalent, expected to be paid to liquidate an obligation in the due course of business, including direct costs. Additionally, under the liquidation basis of accounting, we are required to establish a reserve for all future estimated general and administrative expenses and other costs expected to be incurred during the liquidation (exclusive of interest expense). These estimates will be periodically reviewed and adjusted as appropriate. There can be no assurance that these estimated values will be realized. Such amounts should not be taken as an indication of the timing or amount of future distributions to be made. The valuation of assets at their net realizable value and liabilities at their anticipated settlement amount represent estimates, based on present facts and circumstances, of the net realizable value of the assets and the costs associated with carrying out the Plan of Liquidation based on the assumptions set forth below. The actual values and costs associated with carrying out the Plan of Liquidation are expected to differ from amounts reflected in the accompanying financial statements because of the plan's inherent uncertainty. These differences may be material. In particular, the estimates of our costs will vary with the length of time necessary to complete the Plan of Liquidation. Accordingly, it is not possible to predict with certainty the timing or aggregate amount which will ultimately be distributed to note holders and no assurance can be given that the distributions will equal or exceed the estimate presented in the accompanying Statement of Net Assets in Liquidation or the price at which our Senior Notes have traded or are expected to trade in the future

The following are the significant assumptions utilized by management in assessing the value of our liquidating portfolio and the expected settlement amount of liabilities included in the Statement of Net Assets in Liquidation at June 30, 2007 and December 31, 2006

**Net Realizable Value Supported by Underlying Loan or Direct Financing Agreements.** All loans and direct financing leases were adjusted to their estimated net realizable values, which represented all future undiscounted cash flows expected to be collected from each of these transactions including sales and settlement proceeds, principal collections, scheduled rental payments and interest. Anticipated cash collections were partially offset by any known direct costs and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected. As of June 30, 2007, substantially all loans and direct financing leases had been liquidated

**Net Realizable Value Supported by Underlying Operating Leases and Other Owned Assets.** All owned assets (operating leases and off-lease assets) were adjusted to their estimated net realizable values, which represented all future undiscounted cash flows expected to be collected from each of these transactions including sales proceeds and scheduled rental payments. Anticipated cash collections were partially offset by any known direct costs such as maintenance and make ready costs for certain aircraft and liabilities assumed by buyers including aircraft maintenance reserves and security deposits that were previously collected. As of June 30, 2007, all operating leases and other owned assets had been liquidated

**Investments.** All investments are reported at either their fair value or estimated net realizable values, based on published information, quotes by registered securities brokers or signed contracts. Investments for which market information is not readily available were valued based on estimated future cash flows that may be realized from the investment, if any

**Reserve for Estimated Costs during the Liquidation Period.** Under the liquidation basis of accounting, we are required to estimate and accrue for costs associated with implementing and completing the Plan of Liquidation. The reserve for estimated costs includes four primary areas of accruals including people costs (payroll, benefits and severance), Leucadia management fees, professional services and litigation costs and corporate expenses (insurance, directors' fees and entity related expenses). These amounts can vary significantly due to, among other things, the timing of assets sales, the timing and amounts associated with discharging known and

14

contingent liabilities and claims, the costs associated with cessation of our operations including an estimate of costs subsequent to that date (which would include reserve contingencies for the appropriate statutory periods) and the costs of retaining knowledgeable personnel and others to oversee the liquidation. As a result, we have accrued the projected costs including corporate overhead and specific liquidation costs of severance and performance bonuses, professional fees and various other wind-up costs expected to be incurred during the projected period to complete the liquidation and dissolution. These expense accruals will be periodically reviewed for adequacy and adjusted from time to time as projections and assumptions change. Changes to the accruals will be recorded as adjustments to net assets in liquidation in future periods.

With the adoption of the liquidation basis of accounting, all anticipated improvements or deterioration in the portfolio are fully reflected in our financial statements as facts and assumptions change.

## CHANGES IN NET ASSETS AND RESULTS OF OPERATIONS

The following table summarizes the changes in net assets in liquidation for the three and six months ended June 30, 2007 (dollars in thousands):

|  | Three Months Ended June 30, 2007 | Six Months Ended June 30, 2007 |
|---|---|---|
| Net Assets in Liquidation, beginning of period | $  — | $  — |
| **Changes in net assets in liquidation:** |  |  |
| Change in estimated net realizable value of assets and other liabilities | 983 | (827) |
| Interest earned on investment of cash reserves and other operating activity | 4,794 | 8,210 |
| Increase in estimated costs during the liquidation period | (2,834) | (3,558) |
| Interest accruing on the Senior Notes | (27,234) | (55,059) |
| Reduction in the estimated settlement of the Senior Notes | 24,291 | 51,234 |
| **Net Change in Value of Assets and Liabilities** | $  — | $  — |
| **Net Assets in Liquidation at June 30, 2007** | $  — | $  — |

### Changes in Net Assets in Liquidation for the three and six months ended June 30, 2007

During the six months ended June 30, 2007, the estimated net realizable value of our assets and liabilities decreased a net $0 8 million primarily due to revised purchase prices on certain aircraft following their reevaluation based upon updated aircraft specifications and usage reports and a slight decline in the net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset. During the three months ended June 30, 2007, the decrease in assets and liabilities was partially offset by an increase in interest accruing on sales transactions due to delays in the final closure of the deals, a slight increase in the purchase price of other aviation assets and the settlement of certain claims for lower than previously anticipated amounts.

During the three and six months ended June 30, 2007, we accrued $27 2 million and $55 1 million, respectively, of additional interest on the Senior Notes and earned interest income on cash investments and other operating activity of $4 8 million and $8 2 million, respectively. As a result of the adoption of the liquidation basis of accounting and valuation of our liquidating portfolio at its estimated net realizable value, income is no longer being recognized on our portfolio. All cash received on the portfolio is applied against its estimated net realizable value, which took into consideration all expected interest and rental payments. Any cash received in excess of an individual asset's estimated net realizable value is shown as a change in net assets in the period of collection. Amounts received during 2007 were not considered to be significant.

Additionally, as previously discussed, we established a reserve for estimated costs during the liquidation period and all future expenditures for operating expenses are charged directly against the reserve. During the three and six months ended June 30, 2007, the reserve declined to $16 5 million due to the payment of expenses ($11 3 million) and a reduction in our estimate as a result of certain actual expenses being lower than originally anticipated, partially offset by a net increase caused by the extension of the estimated liquidation period through the first quarter of 2008. Our goal has been to wind-up the affairs of the Company during 2007;

15

Source: FINOVA GROUP INC. 10-Q, August 10, 2007

however, we cannot control the timing of resolving legal matters and claims  We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008  There can be no assurance we will complete our liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008  We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs  Refer below to Note G  "Litigation and Claims" for the status of our outstanding legal matters

Due to the fact that we do not have sufficient assets to fully satisfy all obligations to our creditors, any change to the estimated net realizable value of our assets and liabilities results in a corresponding adjustment to the estimated settlement amount of the Senior Notes  During the three and six months ended June 30, 2007, the estimated settlement amount of the Senior Notes was reduced by $24 3 million and $51 2 million, respectively, to a balance of $280 0 million; however, we currently estimate the Senior Note holders will receive total liquidation distributions (principal and interest) of approximately $408 7 million, including amounts already distributed during 2007, which is a $3 8 million increase over our year-end estimate

### Results of Operations for the six months ended June 30, 2006

During the six months ended June 30, 2006, we generated net income (on a going concern basis) of $5 8 million  In general, the net income was primarily attributable to asset realization in excess of recorded carrying amounts, partially offset by a negative interest margin and normal operating expenses  Under the going concern basis, asset realization in excess of recorded carrying amounts was primarily reflected in the financial statements as reversals of excess reserve for credit losses, net gains from sales of financial assets and the recognition of suspended income upon the payoff of assets

During 2006, the aircraft-finance market continued to display a high level of activity and in certain instances improved aircraft values  As a result, our transportation portfolio continued to generate cash in excess of recorded carrying amounts, which resulted in $46 9 million of the $57 1 million net gains we recognized during the first six months of 2006  Additionally, results for the six months ended June 30, 2006 were enhanced by a revaluation of our non-aviation assets in conjunction with their classification as held for sale and subsequent sale, which resulted in $14 7 million of our $22 4 million reversal of provision for credit losses

Our asset realization in excess of recorded carrying amounts was partially offset by a $47 9 million negative interest margin, which is primarily due to our portfolio containing a lower level of earning assets ($57 1 million at June 30, 2006) than the principal amount of outstanding debt ($1 5 billion at June 30, 2006) and a high aggregate cost of funds (aggregate effective rate of 13 7% for the six months ended June 30, 2006)

### Results of Operations for the three months ended June 30, 2006

During the three months ended June 30, 2006, we generated a net loss (on a going concern basis) of $9 6 million  In general, the net loss was primarily attributable to a negative interest margin and normal operating expenses, partially offset by asset realization in excess of recorded carrying amounts

During the three months ended June 30, 2006, we posted a negative interest margin of $26 1 million, which was significantly impacted by a lower level of earning assets ($57 1 million at June 30, 2006) than the principal amount of outstanding debt ($1 5 billion at June 30, 2006) and a high aggregate cost of funds (aggregate effective rate of 13 8% for the three months ended June 30, 2006)

The loss caused by the negative interest margin and normal operating costs ($13 1 million) was partially offset by a high level of activity and in certain instances improved aircraft values displayed by the aircraft-finance market  As a result, our transportation portfolio continued to generate cash in excess of recorded carrying amounts, which resulted in $23 4 million of the $28 3 million net gains we recognized during the three months ended June 30, 2006

### FINANCIAL CONDITION, LIQUIDITY AND CAPITAL RESOURCES

Since emergence from chapter 11 bankruptcy proceedings in August 2001, our business activities have been limited to maximizing the value of our portfolio through the orderly collection of our assets  These activities included collection efforts pursuant to underlying contractual terms, negotiation of prepayments and sales of assets or collateral  We have substantially completed the

16

Source: FINOVA GROUP INC. 10-Q, August 10, 2007

liquidation of our portfolio and our focus has shifted to the continued wind down of our operations and future dissolution of our entities  We are prohibited by the Indenture governing our 7 5% Senior Secured Notes (the "Senior Notes") from engaging in any new lending activities or other business  Any funds generated in excess of cash reserves permitted by our debt agreements have been used to reduce obligations to our creditors

Because substantially all of our assets (including cash reserves) are pledged to secure obligations under the Intercompany Notes securing the Senior Notes, our ability to obtain additional or alternate financing is severely restricted  Berkadia has no obligation to lend additional sums to or to further invest in FINOVA  As a result of these factors and the substantial liquidation of our portfolio, our only meaningful source of liquidity is cash reserves held by the Company

The terms of the Indenture prohibit us from using available funds (after certain permitted uses) for any purpose other than to satisfy our obligations to creditors and to make limited payments to stockholders in certain circumstances  Under the terms of the Indenture, we are permitted to establish a cash reserve in an amount not to exceed certain defined criteria  Due to our limited sources of liquidity, the estimation of cash reserves is critical to our overall liquidity  Cash reserve estimations are subject to known and unknown risks, uncertainties, and other factors that could materially impact the amounts determined  Failure to adequately estimate a cash reserve in one period could result in insufficient liquidity to meet obligations in that period, or in a subsequent period, if actual cash requirements exceed the cash reserve estimates  Historically, cash reserves typically equaled anticipated cash flows to cover operating costs, tax payments, fundings under existing customer commitments, interest payments and any other necessary cash flows expected to occur during the next six month period  We have the discretion to and have from time to time adjusted our cash reserve methodology  Due to the substantial liquidation of our portfolio, our incoming cash flows have significantly diminished and the estimation of cash reserves has become increasingly more critical to ensure we retain sufficient funds to meet obligations (including, but not limited to, interest payments on the Senior Notes, settlement of known and unknown claims and normal operating expenses) as they become due throughout the liquidation process  Generally speaking, our cash reserve methodology has been altered to retain our maximum potential cash requirements  As a result, we are reserving cash for the full amount of claims and litigation even though we anticipate settling or resolving the matters for considerably less  Additionally, our cash reserve methodology assumes a longer liquidation period than our reserve for estimated costs as well as a contingency for unknown matters that may arise as we complete the wind-up process

In accordance with the terms of the Indenture, we are required to use any excess cash, as defined in the Indenture, to make semi-annual interest and principal payments on the Senior Notes  Additionally, the Indenture permits voluntary prepayments at our option, which we have previously elected to make from time to time; however, due to the uncertainty of cash requirements associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to the TLP Action, discussed in Note G "Litigation and Claims," we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments

The timing and amount of distributions to Senior Note holders will depend on the timing and amount of proceeds we receive upon the sale of our remaining assets, the resolution of claims and other litigation matters, the extent to which reserves for current or future liabilities are required and the length of time required to settle all of our matters  Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims  We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008  There can be no assurance we will complete our liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008  We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs  Refer to Note G "Litigation and Claims" for the status of our outstanding legal matters and a discussion of the equity committee's appeal of the Bankruptcy Court's order that authorizes us to use the funds in the restricted cash account for general corporate purposes, including payment to Senior Note holders

During the second quarter of 2007, we made a partial principal prepayment on the Senior Notes of $59 4 million, which reduced the outstanding principal to $1 4 billion  Cumulative prepayments through the second quarter of 2007 totaled $1 54 billion, which represents approximately 52% of the principal being repaid  Based on the valuation of our assets at their estimated net realizable value and liabilities at estimated settlement amount, we currently estimate the Senior Note holders will receive additional liquidation distributions (principal and interest) of approximately $293 7 million, which is considerably less than the total principal and interest due of approximately $1 4 billion  These estimated distributions ($293 7 million) taken together with $115 0 million of principal and interest already distributed during 2007 increase the total liquidation distributions (principal and interest) to approximately $408 7

17

million, which is a $3 8 million increase over our year-end estimate. The estimated settlement amount was determined solely based on the net assets available for settlement of the Senior Notes and is subject to change due to changes in the estimated net realizable value of our net assets. We clearly do not have sufficient assets to fully repay the Senior Note obligation.

The Senior Notes have a first priority security interest in substantially all of our remaining assets; however, as noted above, the Indenture requires us to first use any cash and cash equivalents to pay or to fund operating expenses, taxes and reasonable reserves for commitments and general corporate purposes.

Stockholders should not expect any payments or distributions. The Indenture contemplates that as principal payments are made on the Senior Notes, our stockholders would receive a distribution equal to 5.263% of each principal prepayment. However, the Indenture prohibits us from making distributions to and/or repurchases from stockholders if the payments would render the Company insolvent, would be a fraudulent conveyance or would not be permitted to be made under applicable law. Any such distribution and/or repurchase would be considered an impermissible restricted payment under the Indenture.

In conjunction with the prepayments of Senior Notes noted above, we retained a total of $81 2 million as of June 30, 2007. Retained amounts are being segregated and reflected as restricted cash in our financial statements, pending their final disposition. We anticipate that the retained amounts will eventually be paid to our creditors, **not** our stockholders. If the funds were to be paid to our stockholders, affiliates of Berkadia (jointly owned by Leucadia and Berkshire Hathaway), which owns 50% of our common stock, would receive half of the retained amounts. Berkadia has advised us that it does not believe that stockholders are entitled to the retained amounts since we cannot fully satisfy our creditor obligations.

As previously reported, we filed a motion in the United States Bankruptcy Court for the District of Delaware seeking an order that (1) we no longer need to direct funds into a restricted account, and (2) we may use the funds in the restricted account to satisfy our obligations to creditors. On June 26, 2007, the Bankruptcy Court entered a final order granting our motion in its entirety; however, the equity committee is appealing the final order. For a further discussion of the motion and its status, see Note G "Litigation and Claims."

**Based on our financial condition and imminent liquidation, there will not be sufficient funds available to fully repay the outstanding principal on the Senior Notes or make any 5% distribution to common stockholders, absent a court order in connection with the appeal referred to above. As a result, there will not be a return to our stockholders. Consequently, investing in the Senior Notes and common stock involves a high level of risk.**

### Obligations and Commitments

For a detailed listing of our significant contractual obligations and contingent commitments, refer to our 2006 Form 10-K. There has not been any material changes during the six months ended June 30, 2007, except for the Senior Note prepayments discussed throughout this document and payment of our quarterly management fee to Leucadia.

### Collection of the Portfolio

As noted previously, our business activities have been limited to maximizing the value of our portfolio through the orderly collection of assets. These activities included collection efforts pursuant to underlying contractual terms, negotiation of prepayments and sales of assets or collateral. During 2007, we substantially completed the liquidation of our portfolio.

18

The following table presents the activity in our liquidating portfolio for the six months ended June 30, 2007:

| | |
|---|---:|
| **Liquidating Portfolio at December 31, 2006** | $ 185,544 |
| **Cash Activity:** | |
| Collections and proceeds | (177,509) |
| **Non-Cash Activity:** | |
| Change in estimated net realizable value of assets | (1,329) |
| **Liquidating Portfolio at June 30, 2007** | $ 6,706 |

Our liquidating portfolio declined to $6 7 million at June 30, 2007, down from $185 5 million at December 31, 2006  During 2007, our cash activity was comprised of customer collections (including recoveries) and proceeds received from the sale of assets, while non-cash activity resulted in a net decrease to the estimated net realizable value of certain assets  Cash activity included the collection of $83 7 million in full and final settlement of the Thaxton loan and the sale of the remainder of our aviation assets for amounts that approximated their previously reported estimated net realizable values  The non-cash decrease in value of assets was primarily due to revised purchase prices on certain aircraft following their revaluation based upon updated aircraft specifications and usage reports and a slight decline in the net realizable value of an engine based upon bids obtained through an auction process to liquidate the asset, partially offset by an increase in interest accruing on sales transactions due to delays in the final closure of the deals and a slight increase in the purchase price of other aviation assets

As of June 30, 2007, the remaining portfolio value is comprised of a few small financing transactions that are expected to be collected in their normal course before year-end and investments with a net realizable value of approximately $6 2 million, which includes our remaining $5 7 million investment in two grantor trusts to secure severance and bonus obligations to our employees  These assets are held primarily for the benefit of our employees, but are recorded as investments due to our retained interest in any excess assets  As of June 30, 2007, the obligation to current and former employees is estimated to be $3 9 million, resulting in estimated excess assets of approximately $1 8 million that will revert to the Company upon discharge of all obligations

The remaining portfolio also includes, among other transactions, a number of customer judgments and claims, a few non-marketable private equity securities and certain obligations owed to us by companies that are in liquidation  In the majority of these instances, we did not attribute any net realizable value to these assets due to our inability to predict the collection of any cash flows from the transactions with even a remote level of confidence  Most of these transactions were previously included in due diligence materials in an attempt to sell the assets, but were excluded on multiple occasions by prospective buyers because of costs of collection and potential liability concerns of the buyers  We continue to monitor these accounts for changes in facts and circumstances that would allow us to attribute value to these assets or events that resolve their ultimate disposition  As a result, there is the possibility that some net realizable value will be attributed to these assets in the future  An increase in the estimated net realizable value of these assets, if any, will be reflected as a change in net assets in liquidation in future filings  Additionally, we continue to occasionally receive small amounts of proceeds typically from trustees for assets that in certain cases were written off years ago  These cash flows are typically immaterial and reflected as a change in net assets in liquidation as they are received

### *Liquidation Process*

Due to the substantial liquidation of our portfolio, our incoming cash flows have significantly diminished and the estimation of cash reserves has become increasingly more critical to ensure we retain sufficient funds to meet obligations (including, but not limited to, interest payments on the Senior Notes, settlement of known and unknown claims and normal operating expenses) as they become due throughout the liquidation process  Generally speaking, our cash reserve methodology has been altered to retain our maximum potential cash requirements  Due to the uncertainty of cash requirements associated with the wind-up of our affairs, resolution of outstanding bankruptcy claims and matters related to the TLP Action, discussed in Note G  "Litigation and Claims," we anticipate maintaining a higher cash reserve to cover these potential and uncertain expenditures, which could limit our ability to make future voluntary prepayments

Source: FINOVA GROUP INC, 10-Q, August 10, 2007

Our liquidation process is now focused on the wind down of our operations, resolution of claims and the future dissolution of our entities. We have begun the process of withdrawing our authorization to conduct business in the states that we no longer have active assets or legal requirements that necessitate our continued authorization to conduct business. The estimated time required to withdraw our licenses will vary by state. Many states will only take a month or two to complete, while certain states have a more prolonged process that may take a number of months. Additionally, there are a handful of states such as Arizona and Delaware, among others, where we do not anticipate commencing the withdraw process until all outstanding claims and litigation have been resolved or active assets liquidated. During the second quarter of 2007, we settled all active bankruptcy claims for amounts that were less than previously estimated, resulting in an approximately $0.7 million reduction in our claims accrual. The remaining bankruptcy claims have been predominantly idle since 2001. We anticipate beginning the process of addressing these idle claims during the third quarter of 2007, which may include requesting assistance from the Bankruptcy Court.

Our goal has been to wind-up the affairs of the Company during 2007; however, we cannot control the timing of resolving legal matters and claims. We believe that the delays in resolving legal matters and claims have increased the likelihood of the liquidation period extending beyond 2007, and as a result, we increased the reserve for estimated costs reflected in our Statement of Net Assets in Liquidation to assume a liquidation period through the first quarter of 2008. There can be no assurance we will complete our liquidation in this time period, and the resolution of the various legal claims and matters may extend through the end of 2008. We will continue to evaluate our progress in resolving the outstanding legal matters on at least a quarterly basis and re-evaluate our reserve for estimated costs. Refer below to Note G "Litigation and Claims" for the status of our outstanding legal matters.

In conjunction with the continued wind down of our operations, we reduced our staff to six employees at June 30, 2007 as compared to 32 employees at December 31, 2006. During the third quarter of 2007, we anticipate staffing will be further reduced to four employees. We do not anticipate any further staffing reductions after the third quarter of 2007. The four remaining employees are scheduled to remain through the completion of the liquidation process. The third quarter reductions will include the departure on August 31, 2007 of an executive officer (Philip A. Donnelly, Senior Vice President, General Counsel and Secretary). Legal activity has significantly declined on a day to day basis and we will utilize external counsel to deal with legal issues. We will continue to operate as a public company throughout the liquidation period under a Management Services Agreement with Leucadia that expires in 2011 and retain sufficient cash reserves to fund operating expenses as they come due.

## SPECIAL NOTE REGARDING FORWARD-LOOKING STATEMENTS

Certain statements in this report are "forward-looking," in that they do not discuss historical fact, but instead reflect future expectations, projections, intentions, or other items. Forward-looking statements are made pursuant to the safe-harbor provisions of the Private Securities Litigation Reform Act of 1995. These forward-looking statements include assumptions, estimates and valuations implicit in the financial statements and related notes, as well as matters discussed throughout this report including, but not limited to projections, our Plan of Liquidation, sections captioned Item 2 "Management's Discussion and Analysis of Financial Condition and Results of Operations" and Item 3 "Quantitative and Qualitative Disclosure About Market Risk." They are also made in documents incorporated in this report by reference, or in which this report may be incorporated.

Forward-looking statements are inherently subject to risks and uncertainties, many of which cannot be predicted or quantified. When used in this report, the words "estimate," "expects," "anticipates," "believes," "plans," "intends" and similar expressions are intended to identify forward-looking statements that involve known and unknown risks and uncertainties. The risks, uncertainties and other factors that could cause our actual results or performance to differ materially from those contemplated by the forward-looking statements include, but are not limited to, the following: whether we can assure Senior Note holders of the timing or amount of their liquidating distributions; whether potential purchasers of our assets may try to take advantage of our liquidation process and offer less-than-optimal prices for our assets; the increasing difficulty in offsetting costs of collecting the remaining portfolio in view of our decreasing asset pool; our Board may abandon the Plan of Liquidation; whether new securities lawsuits will be filed against us; our ability to sell the remaining assets; the impact of general economic conditions and the performance of our borrowers; current and future legal and administrative claims and proceedings against us that may result in increased costs and diversion of management's attention; current and future obligations to creditors; our ability to meet obligations is impacted by cash reserve estimations; cash investments are subject to credit exposure and interest rate fluctuations; our ability to retain our employees; our ability to utilize tax

Source: FINOVA GROUP INC, 10-Q, August 10, 2007

attributes; and our ability to be exempt from the registration requirements of the Investment Company Act of 1940 For additional information, see Part I, Item 1A Risk Factors in our 2006 Form 10-K.

Undue reliance should not be placed on these forward-looking statements, which are applicable only as of the date of this Report We do not intend to update forward-looking information to reflect actual results or changes in assumptions or other factors that could affect those statements We cannot predict the risk from reliance on forward-looking statements in light of the many factors that could affect their accuracy

### Item 3 Quantitative and Qualitative Disclosure About Market Risk

There were no material changes from the information provided in our 2006 Form 10-K

### Item 4. Controls and Procedures

(a)    Our management evaluated, with the participation of our principal executive and principal financial officers, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act")), as of June 30, 2007 Based on their evaluation, our principal executive and principal financial officers concluded that our disclosure controls and procedures were effective as of June 30, 2007

(b)    There has been no change in our internal controls over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during our fiscal quarter ended June 30, 2007, that has materially affected or is reasonably likely to materially affect, our internal control over financial reporting

As a result of Section 404 of the Sarbanes-Oxley Act of 2002 and the rules issued thereunder, we are scheduled to include in our Annual Report on Form 10-K for the year ending December 31, 2007 a report on management's assessment of the effectiveness of our internal controls over financial reporting Our independent registered public accountants will not be required to attest to and report on management's assessment until the end of 2008

The process of complying with these requirements includes a comprehensive evaluation and documentation of our internal controls over financial reporting In this regard, management is prepared to dedicate internal resources and adopt a detailed plan to (i) document our internal controls over financial reporting, (ii) assess the adequacy of our internal controls over financial reporting, (iii) take steps to improve control processes where appropriate and (iv) validate through testing that controls are functioning as documented There can be no assurance that deficiencies or weaknesses in the design or operation of internal controls over financial reporting will not be found and, if found, that we will have sufficient time to remediate any such deficiencies or weaknesses and perform testing procedures before the end of 2007

We believe that any system of internal accounting controls, no matter how well designed and operated, can provide only reasonable (and not absolute) assurance that all of our objectives will be met, including the detection of fraud Furthermore, no evaluation of internal accounting controls can provide absolute assurance that all control issues and instances of fraud, if any, have been detected

We continue to reduce our workforce, consolidate operations and outsource certain functions Accordingly, responsibility for administration, management and review of many of our assets has transitioned among our remaining personnel In conjunction with further reductions in personnel and the relocation of our corporate office, we have transitioned most of our accounting and business support applications to manual processes supported by a system of manual internal controls and spreadsheets Management has supervised these transitions and has implemented procedures we believe provide effective disclosure and internal controls over financial reporting We are assessing the efficacy of these procedures and will continue to do so in subsequent periods

21

Source: FINOVA GROUP INC. 10-Q, August 10, 2007

**PART II OTHER INFORMATION**

**Item 1. Legal Proceedings**

See Part I, Item 1, Note G "Litigation and Claims" for a discussion of certain legal proceedings

**Item 1A. Risk Factors**

There were no material changes from the information provided in our Annual Report on Form 10-K for the year ended December 31, 2006

**Item 6. Exhibits**

| | |
|---|---|
| 31 1 | Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31 2 | Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32 1 | Certification of Chief Executive Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 32 2 | Certification of Chief Financial Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

22

Source: FINOVA GROUP INC, 10-Q, August 10, 2007

THE FINOVA GROUP INC.

**Signatures**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized

THE FINOVA GROUP INC.

(Registrant)

Date: August 9, 2007

By: /s/ Richard A. Ross

Richard A. Ross, Senior Vice President – Chief Financial Officer & Treasurer
(principal financial officer)

23

EXHIBIT INDEX

| Exhibit Number | Description |
|---|---|
| 31 1 | Certification of Chief Executive Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31 2 | Certification of Chief Financial Officer pursuant to Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32 1 | Certification of Chief Executive Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |
| 32 2 | Certification of Chief Financial Officer pursuant to 18 U S C 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 |

Exhibit 31.1

## CERTIFICATIONS

I, Thomas E Mara, certify that:

1    I have reviewed this quarterly report on Form 10-Q of The FINOVA Group Inc ;

2    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a)    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

   b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

   d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

   b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

Date: August 6, 2007                          By:  /s/ Thomas E Mara
                                                   Thomas E Mara
                                                   Chief Executive Officer

Exhibit 31.2

## CERTIFICATIONS

I. Richard A  Ross. certify that:

1    I have reviewed this quarterly report on Form 10-Q of The FINOVA Group Inc ;

2    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made. in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

   a)    Designed such disclosure controls and procedures. or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries. is made known to us by others within those entities. particularly during the period in which this report is being prepared;

   b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision. to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

   c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures. as of the end of the period covered by this report based on such evaluation; and

   d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5    The registrant's other certifying officer and I have disclosed. based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record. process, summarize and report financial information; and

   b)    Any fraud. whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting

Date: August 9, 2007                                    By:    /s/ Richard A. Ross
                                                              Richard A  Ross
                                                              Chief Financial Officer
                                                              (principal financial officer)

Source: FINOVA GROUP INC. 10-Q. August 10. 2007

Exhibit 32.1

**CERTIFICATION**
**PURSUANT TO 18 U.S.C. SECTION 1350,**
**AS ADOPTED BY SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Thomas E. Mara, as Chief Executive Officer of The FINOVA Group Inc. (the "Company") certify, pursuant to 18 U.S.C. ss. 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1) the accompanying Form 10-Q report for the quarterly period ended June 30, 2007 as filed with the U.S. Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

Date: August 6, 2007

By:  /s/ Thomas E. Mara
     Thomas E. Mara
     Chief Executive Officer

Exhibit 32 2

**CERTIFICATION**
**PURSUANT TO 18 U.S.C. SECTION 1350,**
**AS ADOPTED BY SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002**

I, Richard A Ross, as Chief Financial Officer of The FINOVA Group Inc (the "Company") certify, pursuant to 18 U S C ss 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to my knowledge:

(1) the accompanying Form 10-Q report for the quarterly period ended June 30, 2007 as filed with the U S Securities and Exchange Commission (the "Report") fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended; and

(2) the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company

Date: August 9, 2007

By:  /s/ Richard A. Ross
      Richard A  Ross
      Chief Financial Officer
      (principal financial officer)

Created by 10K Wizard   www.10KWizard.com

## CERTIFICATE OF SERVICE

I, Jason M. Madron, do hereby certify that on September 20, 2007 a copy of the foregoing **Declaration of Richard A. Ross Relating to Appeal Bond (District Court)** was served on the parties on the attached list and in the manner indicated thereon.

Jason M. Madron (Bar No. 4431)

## *FINOVA Capital Corporation - Service List*
### *Local via Hand Delivery / Non-Local via First Class Mail*

David Buchbinder
George M. Conway
Office of the United States Trustee
844 King St., Suite 2313
Lockbox 35
Wilmington, DE 19801 USA

William D. Sullivan
Elihu E. Allinson
4 East 8th Street, Suite 400
Wilmington, DE 19801


Howard A. Cohen
Reed Smith LLP
1201 N. Market St., Suite 1500
Wilmington, DE 19801

Francis A. Monaco, Jr.
Monzack & Monaco, P.A.
1201 N. Orange Street
P.O. Box 2031
Wilmington, DE 19899-2031


James R. Adams
Department of Justice
Carvel State Building, 6th Floor
820 N. French Street
Wilmington, DE 19801

James Gadsden
Carter Ledyard & Milburn LLP
2 Wall Street
New York, NY 10005


Andrea A. Bernstein
Martin Bienenstock
Bethany J. Cooper
Weil, Gotshal & Manges LLP
767 Fifth Ave.
New York, NY 10153

Charles J. Filardi, Jr.
Pepe & Hazard LLP
30 Jeliff Lane
Southport, CT 06890-1436 USA


RLF1-3203177-1

Claudia King, President
Claudia King & Associates, Inc.
P.O. Box 2742
Carefree, AZ 85377

Gerald K. Kitano, Esq.
Michael M. Hirotsu, Esq.
Law Offices of Gerald K. Kitano
3435 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010

Jonathan M. Landers, Esq.
Paul Guillotte, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Ave.
New York, NY 10166

Rick Lieberman
Senior VP/General Counsel
The Finova Capital Corporation
4800 North Scottsdale Road
Scottsdale, AZ 85251

Mark D. Silverschotz
James Andriola
John L. Scott, Jr.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020

Robert C. Shenfeld
Reed Smith Crosby Heafey LLP
335 S. Grand Ave., Suite 2900
Los Angeles, CA 90017

Robert J. Rohrberger, Esq.
Fox and Fox LLP
70 South Orange Ave.
Livingston, NJ 07039

Bradley J. Stevens
Janet B. Hutchison
Robbins & Green, P.A.
3300 North Central Avenue, Suite 1800
Phoenix, AZ 85012 USA

RLF1-3203177-1