## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FINOVA GROUP, INC., and | ) | Case No. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, | ) | |
| | ) | Jointly Administered |
| Reorganized Debtors. | ) | |
| | ) | |
| THE OFFICIAL COMMITTEE OF EQUITY | ) | |
| SECURITY HOLDERS of FINOVA GROUP, INC. | ) | |
| | ) | |
| Appellant, | ) | Civil No. 07-480 (JJF) and 07-487 (JJF) |
| | ) | |
| v. | ) | Bankruptcy Case No. 01-698 |
| | ) | AP 07-70 |
| THE FINOVA GROUP, INC., and | ) | |
| FINOVA CAPITAL CROPORATION, | ) | |
| | ) | |
| Appellees. | ) | |

### MOTION TO STRIKE

WILLIAM D. SULLIVAN, LLC
William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

-- and --

ANDERSON KILL & OLICK, P.C.
Mark D. Silverschotz, Esq.
James Andriola, Esq.
Han J. Ahn, Esq.
1251 Avenue of the Americas
New York, NY 10020-1182
Tel: (212) 278-1000
Fax: (212) 278-1733

Dated: December 14, 2007
     Wilmington, Delaware

*Attorneys for Appellant,*
*The Official Committee of Equity Security*
*Holders of Finova Group Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................ 1

THE NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

ARGUMENT ............................................................................................................... 3

    A.    The Debtors' Inclusion Of Its "Cross-Appeal" Arguments Was Not Proper .................. 3

    B.    Debtors' Briefing On Their "Cross-Appeal" Was Either Entirely Premature Or Untimely ..................................................................................................................... 4

CONCLUSION ............................................................................................................ 6

## TABLE OF AUTHORITIES

Page

### CASES

*Florida Windstorm Underwriting v. Gajwani.*,
    934 So.2d 501 (Fla. Dist. Ct. App. 2005) ..........................................................................4

*Johnson v. Carpenter*
    718 S.W.2d 434 (Ark 1986)................................................................................................3

*Koutoufaris v. Morris (In re Koutoufaris)*,
    Nos. 95-204, CA. NO 02-278, 96-180, 2002 WL 1585912 (D. Del. July 18, 2002)...........5

### MISCELLANEOUS

4 C.J.S. Appeal & Error § 21 (2007) ........................................................................................3, 4

## INTRODUCTION

The Appellant, the Official Committee of Equity Security Holders (the "Equity Committee"), on behalf of the shareholders (the "Equity Holders") of Finova Group, Inc., the corporate parent of Finova Capital Corporation (collectively, the "Debtors" or "Reorganized Debtors"), by and through its undersigned counsel, submits this motion to strike those portions of Appellee's Response to Appellant's Opening Brief and Opening Brief on Cross-Appeal ("Response Brief") (D.I. 23), which address the Debtors' inaccurately labeled "Cross-Appeal."

## **THE NATURE AND STAGE OF THE PROCEEDINGS**

On or about July 6, 2007, the Equity Committee filed its Notice of Appeal of the First Clarification Order[1] and the Final Clarification Order.[2] The Equity Committee's appeal was assigned Civil Action No. 07-480 (the "Appeal Docket") by this Court. On or about July 16, 2007, the Debtors filed a Notice of Cross Appeal addressing four separate orders (Bankr. D.I. 231).[3] As discussed below, the self-styled "cross-appeal" is in reality an entirely separate appeal and should not have been labeled a "cross-appeal" in the first place. The Debtors' appeal was

---

[1] Order Regarding Debtors' Motion Requesting Clarification of Confirmed Chapter 11 Plan entered by the Bankruptcy Court on February 1, 2006 (Bankr. D.I. 100).

[2] Order Granting Debtors' Motion Requesting Clarification of Confirmed Chapter 11 Plan of the United States Bankruptcy Court for the District of Delaware, dated June 26, 2007 (Bankr. D.I. 220).

[3] The four orders are: (1) the July 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "July 6, 2007 Fee Cap Order") (Bankr. D.I. 225); (2) the February 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "February 6, 2007 Fee Cap Order") (Bankr. D.I.. 205); (3) the December 30, 2005 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93); and (4) the June 16, 2005 Order Directing the Office of the United States Trustee to Appoint an Official Committee of Equity Security Holders for a Limited Purpose and Granting Related Relief (the "Appointment Order") (Bankr. D.I. 48).

assigned its own case number in this Court, Civil Action No. 07-487 (the "Cross-Appeal Docket"). The Debtors had never sought an extension of the 10-day appeal period with respect to the Appointment Order, the December 30, 2005 Fee Cap Order, or the February 6, 2007 Fee Cap Order and therefore, the time in which to appeal said orders had long expired. For these reasons, the Equity Committee filed on the Cross-Appeal Docket, a motion to dismiss the appeals of the Appointment Order, the December 30, 2005 Fee Cap Order, and the February 6, 2007 Fee Cap Order. The Equity Committee's motion to dismiss has been fully briefed and is *sub judice* before this Court.

By a Letter to Counsel dated August 6, 2007, J. Richard Tucker, Esq. advised the parties that he had "been assigned to mediate the Appeal from Judge Walsh's June 26, 2007 and February 1, 2006 Orders in the above-captioned case [i.e., the Final Clarification Order and the First Clarification Order]." *See* Exhibit A, hereto. The letter bears Civil Action No. 07-480 (the number assigned to the Appeal Docket) and the letter makes no mention of the "Cross-Appeal" or the Cross-Appeal Docket.

After mediation of the Equity Committee's appeal proved unsuccessful, on September 26, 2007, the parties submitted a Stipulation regarding (I) Mediation Bypass and (II) the Establishment of Briefing Schedule for Appeal ("Briefing Schedule") (D.I. 8). On October 1, 2007, the Briefing Schedule was made an Order of this Court (D.I. 11). The Briefing Schedule was filed on the Appeal Docket and ***not*** on the Cross-Appeal Docket. The Briefing Schedule states: "(i) Appellant's Brief due on Monday, October 22, 2007; (ii) Appellee's Answering Brief due on Monday, November 19, 2007; [and] (iii) Appellant's Reply Brief due on Monday, December 3, 2007." *See* Briefing Schedule at ¶ 3.

2

As per the Briefing Schedule, the Equity Committee filed the Appellant's Opening Brief ("Opening Brief") (D.I. 17) on October 22, 2007. If the Debtors' were of the mind that the Briefing Schedule applied to their "cross-appeal" then they should have filed an opening brief on the Cross-Appeal Docket on that day as well. They did not. Rather, when they filed the Response Brief on November 21, 2007, they included a section entitled "I. Cross-Appeal – The Court Erred In Reconstituting The Equity Committee And Entering The Fee Cap Orders." *See* Response Brief at p. 35. References to the Debtor's Cross Appeal also appear in the "Statement and Nature of Case" (p. 1), "Summary of Argument" (p. 3), and "Background" (pp. 11-12).

Given the nature of the relief sought by the instant motion and the briefness of the arguments, the Equity Committee will not include herein a Summary of Argument section or a Statement of Facts section.

## ARGUMENT

**A.    The Debtors' Inclusion Of Its "Cross-Appeal" Arguments Was Not Proper**

The Debtors' response includes a section entitled "I. Cross-Appeal – The Court Erred In Reconstituting The Equity Committee And Entering The Fee Cap Orders." *See* Response Brief at p. 35. This section and any arguments concerning the Debtors' "cross-appeal" should not have been included in the Debtors' Response Brief. As demonstrated in the procedural history set forth above, the Equity Committee's appeal is from the First Clarification Order and the Final Clarification Order. And, since the Debtors were not appealing any aspect of those orders, but rather they were appealing from four other orders, their appeal should not have been labeled a "cross-appeal." 4 *C.J.S. Appeal & Error* § 21 (2007) ("[o]rdinarily a cross appeal must relate to the same judgment or controversy."), *see also Johnson v. Carpenter*, 718 S.W.2d

434, 437 (Ark. 1986) (holding that appellee's purported cross appeal was in reality an original appeal separate from what was earlier appealed which therefore was untimely). Specifically, a "cross appeal is not appropriate if it seeks to review an order or judgment that is separate and distinct from the order or judgment under review by the main appeal." 4 *C.J.S. Appeal & Error* § 21, *see also Florida Windstorm Underwriting v. Gajwani*, 934 So. 2d 501, 505 (Fla. Dist. Ct. App. 2005) (holding that cross-appeal was not appropriate because it was separate and distinct from the judgment under review by the main appeal).

**B.    Debtors' Briefing On Their "Cross-Appeal" Was Either Entirely Premature Or Untimely**

This Court's Standing Order dated July 23, 2004 requires that all appeals in bankruptcy cases be referred to mediation and that "[b]riefing shall be deferred during the pendency of mediation unless the Court determines otherwise." As demonstrated in the procedural history above, the Debtors' "cross-appeal" has never, to the Equity Committee's knowledge, been referred to mediation in this case. This is not surprising given that the Equity Committee has filed a motion to dismiss directed to the Debtors' Notice of Cross-Appeal. Given this situation, it makes perfect sense that mediation, as well as briefing on the merits of the appeal, be deferred until the Court has an opportunity to rule on the pending motion to dismiss.

In addition, there has been no order of this Court directing that briefing go forward on the Debtors' Cross-Appeal. It should be noted that the Briefing Schedule was filed only on the Appeal Docket and not on the Cross-Appeal Docket, even though the Cross-Appeal Docket had been established for well-over a month when the Briefing Schedule was filed.

The foregoing demonstrates that the Debtors' briefing of the merits of their appeal was entirely premature. It is anticipated that the Debtors will assert that such briefing was not premature on the grounds that the unsuccessful mediation before Mr. Tucker and the Briefing

Schedule were both somehow applicable to their "cross-appeal." If the Debtors are correct, however, than their appellants' brief was submitted untimely. According to the Briefing Schedule, the "(i) Appellant's Brief [is] due on Monday, October 22, 2007." Since the Debtors did not file their appellant's brief until November 21, 2007 (and only as part of their Response Brief), they failed to meet the requirements of the Briefing Schedule and, therefore, if the Debtor's insist that their "cross-appeal" is governed by the Briefing Schedule, than the Court may, in its discretion, dismiss the appeal. *See, e.g.*, *Koutoufaris v. Morris* (*In re Koutoufaris*), Nos. 95-204, CA. NO 02-278, 96-180, 2002 WL 1585912 (D. Del. July 18, 2002) (dismissing appeal in courts discretion for failure to file timely brief or request extension pursuant to Bankruptcy Rule 8009) (copy attached hereto as Exhibit A).

The foregoing demonstrates that the Debtors' briefing on the merits of their cross-appeal was either premature or untimely. In either event, the Equity Committee submits that the relief sought herein should be granted.

\* \* \* \* \*

Given all of the foregoing, the Equity Committee does not believe that it should be required to respond to the Debtors' arguments on the merits of their "cross-appeal." In any event, out of abundance of caution, annexed hereto as Exhibit B is Cross-Appellee's Response to Cross-Appellant's Opening Brief on Cross-Appeal.

5

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Equity Committee respectfully requests that this Court enter an order: (i) striking those portions of Appellee's Response to Appellant's Opening Brief and Opening Brief on Cross-Appeal (D.I. 23), which address the Debtors' inaccurately labeled "Cross-Appeal;" and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated:  December 14, 2007
       Wilmington, Delaware

**WILLIAM D. SULLIVAN, LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE  19801
Tel:  (302) 428-8191
Fax:  (302) 428-8195
email:  bill@williamdsullivanllc.com

-- and --

**ANDERSON KILL & OLICK, P.C.**
Mark D. Silverschotz, Esq.
James Andriola, Esq.
1251 Avenue of the Americas
New York, NY  10020-1182
Tel:  (212) 278-1000
Fax:  (212) 278-1733

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d                                                                   Page 1

Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

In re Koutoufaris
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re: KOUTOUFARIS, Debtor.
John KOUTOUFARIS, et al., Appellants,
v.
MORRIS, James, Hitchens & Williams et al.,
Appellees.
**Nos. 95-204(JKF), CA.NO. 02-278, 96-180.**

July 18, 2002.

Adversary proceeding was brought alleging legal malpractice. After the bankruptcy court granted summary judgment for defendants, and after the docketing of the plaintiffs' appeal, defendants moved to dismiss. The District Court, Sleet, J., held that appeal would be dismissed for failure to prosecute.

Motion granted.
West Headnotes
**Bankruptcy 51 ☞3778**

51 Bankruptcy
   51XIX Review
      51XIX(B) Review of Bankruptcy Court
         51k3778 k. Dismissal; Hearing. Most Cited Cases
Appeal in adversary proceeding alleging legal malpractice would be dismissed for failure to prosecute where appellants failed to file an opening brief within 15 days of the date the appeal was docketed, despite appellants' claim that their attorney was "indisposed" due to a medical condition; regardless of the attorney's illness, the appellants had an affirmative duty to file their brief or file for an enlargement of time. Bankruptcy Rule 8009(a)(1).

*MEMORANDUM ORDER*

SLEET, J.

## I. INTRODUCTION

**\*1** On October 7, 1996, the appellants, John Koutoufaris, Marlene Koutoufaris, and the Estate of Ernest V. Keith (collectively "the appellants"), filed the above-captioned adversary proceeding alleging legal malpractice.[FN1] The Bankruptcy Court granted summary judgment in favor of Morris, James, Hitchens and Williams ("the appellees") because the appellants suffered no legally cognizable injury and the remaining claims were barred by collateral estoppel. The Clerk of the District Court docketed the appellants' appeal on April 18, 2002.

> FN1. The instant appeal is closely related to another appeal pending before the court captioned *BCI Pancake House v. Morris, James et al.,* C.A. No. 02-97-GMS ("the BCI appeal"). Two of the plaintiffs in the instant case, John and Marlene Koutoufaris, are the sole stockholders, officers, and directors of the appellants in the BCI appeal. Furthermore, counsel for the appellants are the same in both cases, the appellees in both cases are essentially the same, and the claims in both cases relate to the same failed loan transaction.

Presently before the court is the appellee's motion to dismiss for failure to prosecute. For the following reasons, the court will grant this motion.

## II. DISCUSSION

Pursuant to Bankruptcy Rule 8009(a)(1), an appellant must file its opening brief within fifteen days of the date the appeal was docketed. Should the appellant fail to do so, the court has the discretion to dismiss the appeal for failure to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

prosecute. *See Jewelcor, Inc. v. Asia Commercial Co.,* 11 F.3d 394, 397 (3d Cir.1993). The Third Circuit requires only that the district court consider less severe sanctions before dismissing the appeal. *See id.*

In the present case, the Clerk of the District Court docketed the appeal on April 18, 2002. On that date, he also notified the parties that the appeal had been docketed. Thus, under Bankruptcy Rule 8009, the appellants' opening brief was due on May 3, 2002. Notwithstanding that requirement, however, the appellants have never filed their brief. Nor did they file a timely motion for an enlargement of time in which to do so.

Indeed, rather than adhering to the unambiguous Bankruptcy Rule, the appellants instead waited for the appellee's May 23, 2002 motion to dismiss for failure to prosecute before contacting the court. On June 3, 2002, the appellants responded to the pending motion to dismiss by adopting the May 29, 2002 Declaration of Gregory Sioris ("Sioris"), which was filed in the BCI appeal. In that declaration, Sioris states that the attorney of record, Henry Heiman ("Heiman"), was "indisposed" due to a medical condition. Sioris claims that he was unable to prosecute this appeal without Heiman's aid.[FN2] Sioris further states that, had the court entered a scheduling order, he would have moved for an adjournment based on Heiman's condition. In their opposition to the present motion, the appellants also note that John and Marlene Koutoufaris filed a Notice of Conversion to Chapter 7 on May 30, 2002. Based on this conversion, they maintain that any decisions concerning the appeal rest with the Chapter 7 Trustee.

> FN2. However, Sioris fails to address why he, as lead counsel, was unable to contact the court regarding an enlargement of time in which to file the opening brief.

The court dismissed the BCI appeal for failure to prosecute due to Heiman's and Sioris' utter disregard for the court's time and docket management concerns. The court concludes that the same result applies to the present case. Although the

appellants filed a timely opposition to the motion to dismiss, the court finds their failure to comply with Rule 8009 to be inexcusable neglect. Regardless of Heiman's illness, the appellants had the affirmative duty to either file their brief, or to file a motion for enlargement of time. The appellants unilaterally chose to do neither, and in the process, burdened the court with an inactive appeal. Moreover, Sioris' suggestion that he only had a duty to contact the court regarding Heiman's illness if the court had entered a scheduling order clearly runs afoul of Rule 8009's requirements.

**\*2** Additionally, the court is troubled by Heiman's and Sioris' history of failing to prosecute both this appeal and the related BCI appeal. The procedural default at issue here is clearly not an isolated incident. Indeed, as the court noted in its June 3, 2002 order dismissing the BCI appeal, their dilatory tactics were also evident during that proceeding, as well as during the bankruptcy proceedings below.

Finally, the court finds it irrelevant that John and Marlene Koutoufaris have filed a Notice of Conversion to Chapter 7. The appellants have failed to cite to any authority for the proposition that such a notice effectively resets the filing clock for Rule 8009 purposes.[FN3] Nor is the court aware of any such authority.

> FN3. The court notes that the appellants have failed to address how the Koutoufaris' conversion to Chapter 7 would affect their co-appellant, the Estate of Keith, which is not in bankruptcy.

### III. CONCLUSION

It is uncontested that the appellants have failed to adhere to Rule 8009's unambiguous mandate. This fact, coupled with counsel's pattern of disregarding the court's scarce resources and docket management concerns, warrants dismissal.

For these reasons, IT IS HEREBY ORDERED that:

1. The Appellee's motion to dismiss for failure to prosecute (D.I.6) is GRANTED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 1585912 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


D.Del.,2002.
In re Koutoufaris
Not Reported in F.Supp.2d, 2002 WL 1585912
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE FINOVA GROUP, INC., and ) | Case No. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, ) | |
| ) | Jointly Administered |
| Reorganized Debtors. ) | |
| ) | |
| THE OFFICIAL COMMITTEE OF EQUITY ) | |
| SECURITY HOLDERS of FINOVA GROUP, INC.) | |
| ) | |
| Appellant, ) | Civil No. 07-480 (JJF) and 07-487 (JJF) |
| ) | |
| v. ) | Bankruptcy Case No. 01-698 |
| ) | AP 07-70 |
| THE FINOVA GROUP, INC., and ) | |
| FINOVA CAPITAL CROPORATION, ) | |
| ) | |
| Appellees. ) | |

## CROSS-APPELLEE'S RESPONSE TO CROSS-APPELLANT'S
## OPENING BRIEF ON CROSS-APPEAL

WILLIAM D. SULLIVAN, LLC
William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

-- and --

ANDERSON KILL & OLICK, P.C.
Mark D. Silverschotz, Esq.
James Andriola, Esq.
Han J. Ahn, Esq.
1251 Avenue of the Americas
New York, NY 10020-1182
Tel: (212) 278-1000
Fax: (212) 278-1733

Dated: December 14, 2007
Wilmington, Delaware

*Attorneys for Appellant,*
*The Official Committee of Equity Security*
*Holders of Finova Group Inc.*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................... 2

    A.    The Appointment Order Should Be Affirmed ............................................. 2

    B.    The Fee Cap Orders Should Be Affirmed .................................................... 5

CONCLUSION ................................................................................................................ 7

## TABLE OF AUTHORITIES

Page

### CASES

*Exide Techs. v. State of Wisconsin Inv. Bd.*,
No. 02-1572, 02-11125, 02-1610, 2002 WL 32332000 (D. Del. Dec. 23, 2002)................4

*In re Grand Union Co.*,
200 B.R. 101 (D. Del. 1996)....................................................................................5

*In re Kalvar Microfilm, Inc.*,
195 B.R. 599 (Bankr. D. Del. 1996) ..........................................................................4

*In re Mansfield Ferrous Castings Inc.*,
96 B.R. 779 (Bankr. N.D. Ohio 1988) .......................................................................4

*In re Northwestern Corp.*,
344 B.R. 40 (D. Del. 2006)......................................................................................5

*In re Northwestern Corp.*,
No. 03-12872, 2004 WL 1077913 (Bankr. D. Del. May 13, 2004)...................................2

*Williams Commc'ns Group, Inc.*,
281 B.R. 216 (Bankr. S.D.N.Y. 2002) ....................................................................2, 4

### STATUTES

11 U.S.C. § 1102...................................................................................................3

### MISCELLANEOUS

Neil B. Glassman, et al., *Equity Committees: A Consequence of the "Zone of Insolvency*,"
24 AM. BANKR. L.J. 28, 53 n.1 (2006) .......................................................................4

**INTRODUCTION**

The Cross-Appellee, the Official Committee of Equity Security Holders (the

"Equity Committee"), on behalf of the shareholders (the "Equity Holders") of Finova Group,

Inc., the corporate parent of Finova Capital Corporation (collectively, the "Debtors" or

"Reorganized Debtors"), by and through its undersigned counsel, responds to those portions of

Appellee's Response to Appellant's Opening Brief and Opening Brief on Cross Appeal

("Response Brief"), which address the Debtors' appeal from the following four separate orders

of the Bankruptcy Court:

> (i) the June 16, 2005 Order Directing the Office of the United States Trustee to Appoint an Official Committee of Equity Security Holders for a Limited Purpose and Granting Related Relief (the "Appointment Order") (Bankr. D.I. 48)[1];
>
> (ii) the December 30, 2005 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93);
>
> (iii) the February 6, 2007 Order Pursuant to Section 328 of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which Can be Incurred on Behalf of the Equity Committee (the "February 6, 2007 Fee Cap Order") (Bankr. D.I. 205); and
>
> (iv) the July 6, 2007 Order Pursuant to Section 327(e) of the Bankruptcy Code Increasing the Cap Previously Imposed on Fees and Expenses which can be Incurred on Behalf of the Equity Committee (the "July 6, 2007 Fee Cap Order") (Bankr. D.I. 225).

For the reasons set forth in the Equity Committee's motion to strike to which this

brief is an exhibit, the Equity Committee does not believe that it should be required to respond to

---

[1] "Bankr. D.I." refers to the docket of the Bankruptcy Court in case no. 01-00698-PJW and "Bankr. (Case No. 697) D.I." refers to the docket of the Bankruptcy Court in case no. 01-00697-PJW.

the Debtors' arguments on the merits of their inaccurately labeled "cross-appeal." In any event, this brief is submitted out of an abundance of caution.[2]

Furthermore, on September 25, 2007, the Equity Committee filed a Motion to Dismiss Appeal (the "Motion to Dismiss") (07-487 D.I. 5), which seeks to dismiss as untimely the Debtors' appeal from the Appointment Order (Bankr. D.I. 48), the December 30, 2005 Fee Cap Order (Bankr. D.I. 93), and the February 6, 2007 Fee Cap Order (Bankr. D.I. 205). This motion has been fully briefed and submitted to the Court. For the reasons set forth in the Motion to Dismiss, this Court should dismiss the Debtors' appeal from these three orders. A copy of the Motion to Dismiss is annexed hereto as Exhibit 1. The arguments set forth in the Motion to Dismiss are incorporated herein by reference and will not be repeated herein.

## STATEMENT OF FACTS

The facts relevant to the Debtors' "cross-appeal" are set forth in the annexed Motion to Dismiss, are incorporated herein by reference, and will not be repeated herein.

## ARGUMENT

### A.    The Appointment Order Should Be Affirmed

For the reasons set forth in the annexed Motion to Dismiss, the Debtors' appeal of the Appointment Order should be dismissed. If, instead, this Court decides to consider the Debtors' appeal, the Equity Committee respectfully submits that the Appointment Order should be affirmed.

The decision to appoint an equity committee rests within the sound discretion of the bankruptcy court, on a case-by-case basis. *See In re Northwestern Corp.*, No. 03-12872, 2004 WL 1077913, at *1-2 (Bankr. D. Del. May 13, 2004) (copy attached hereto as Exhibit 2)

---

[2] Even though the Debtors' "cross-appeal" has been assigned its own case number, Civil Action No. 07-487 (the "Cross-Appeal Docket"), the Response Brief was not filed on the Cross-Appeal Docket.

(citing *Williams Commc'ns Group, Inc.*, 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002)). The Debtors have not even come close to establishing an abuse of discretion on the part of the Bankruptcy Court in issuing the Appointment Order.

In the Appointment Order, the Bankruptcy Court, "after due deliberation and good and sufficient cause appearing therefor," ordered that: "[p]ursuant to section 105(a) of title 11 of the United States Code, the Office of the United States Trustee for the District of Delaware is hereby directed, pursuant to 11 U.S.C. § 1102, to appoint [the Equity Committee] . . . for the limited purpose of reviewing and, if it deems appropriate, objecting to the [Clarification Motion]." Appointment Order at p. 1 and ¶ 2. Such an order could not have been issued under 11 U.S.C. § 1102 unless the Bankruptcy Court determined that the Equity Committee was "necessary to assure [the] adequate representation of . . . equity security holders" (11 U.S.C. § 1102(a)(2)) with respect to the Clarification Motion. Thus, the Debtors are simply wrong when they assert that "the Bankruptcy Court failed to make any finding that the Equity Committee was necessary to protect the interests of the Shareholders . . ." Response Brief at ¶ 61.

The Debtors argue that the Appointment Order should not have been issued in this case: "[s]ince (i) there was little chance that there would ever be a distribution to Shareholders and (ii) certain Shareholders showing their willingness and ability to bear the expense of litigating the Clarification Motion." Response Brief at ¶ 2. First, for the reasons set forth in its Opening Brief and Reply Brief (07-480 D.I. 17 and 26), the Equity Committee submits that the Segregated Funds can and should be distributed to Equity Holders. In addition, the Debtors completely miss the point as to why the Equity Committee was appointed in the first place. It was necessary to assure that the Equity Holders were adequately represented with respect to the Debtors' request that $81 million in funds be returned to the Debtors (and forfeited by Equity

3

Holders) even though there was no specific language in the applicable Plan and Indenture that would permit the Debtors to do so. Even if, at the end of the day, the clarification proposed by the Debtors is ultimately recognized by the courts, that is not a reason to find that the Bankruptcy Court abused its discretion in issuing the Appointment Order to protect the due process rights of Equity Holders. *See Exide Techs. v. State of Wisconsin Inv. Bd.*, No. 02-1572, 02-11125, 02-1610, 2002 WL 32332000 (D. Del. Dec. 23, 2002) (copy attached hereto as Exhibit 3) (quoting *In re Williams Commc'ns Group, Inc.*, 281 B.R. at 220 ("[t]he statute does not define the term 'adequate representation;' therefore, the bankruptcy court 'retains the discretion to appoint an equity committee based on the facts of each case.'")). Indeed, the Debtors have failed to cite any authority that would support this draconian proposition.[3]

   The Debtors' reliance on their insolvency at the time that the Appointment Order was issued is unavailing. *See* Response Brief at ¶ 60 (citations omitted). While solvency is one factor considered by courts, no one factor is dispositive, and the relative weight of the various factors depends on the circumstances of the particular case. *See Exide Techs.*, 2002 WL 32332000, at *1 (citing *In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 600 (Bankr. D. Del. 1996)). Moreover, courts have rejected insolvency as a barrier to appointment of an equity committee. *See, e.g.*, *In re Mansfield Ferrous Castings Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988) (noting that court considers all factors not just the solvency issue).

---

[3] It should be noted that the Debtors do not cite ***any case*** in which a bankruptcy court was found to have abused its discretion in appointing an equity committee. The Debtors cite the *Exide* case for their argument that the "appointment of an equity committee should be the exception, and not the rule." Response Brief at ¶ 60. In that case, however, the court ***affirmed*** the Bankruptcy Court's decision to appoint an equity committee. *See also* Neil B. Glassman, et al., *Equity Committees: A Consequence of the "Zone of Insolvency*," 24 AM. BANKR. L.J. 28, 53 n.1 (2006) ("Equity committees have been appointed in at least 30 cases in 12 separate jurisdictions across the nation since 2000.").

Second, the Debtors cite no authority for their proposition that a certain shareholders willingness and ability to bear the expense of litigating is a basis upon which to find that the Bankruptcy Court abused its discretion. Moreover, the Debtors made this argument to the Bankruptcy Court in objecting to the motion that lead to the Appointment Order (Bankr. D.I. 39 at ¶ 20). And, on appeal, the Debtor's have offered no basis upon which this Court can find that the Bankruptcy Court abused its discretion in rejecting this argument.

Based on the foregoing, this Court should affirm the Appointment Order.

**B.    The Fee Cap Orders Should Be Affirmed**

For the reasons set forth in the annexed Motion to Dismiss, the Debtors' appeal of the December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order should be dismissed. If, instead, this Court decides to consider the Debtors' appeal from these orders, the Equity Committee respectfully submits that the December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order, as well as the July 6, 2007 Fee Cap Order should be affirmed.

The bankruptcy court's decision regarding awarding of fees is reviewed for abuse of discretion. *See, e.g., In re Northwestern Corp.*, 344 B.R. 40, 42 (D. Del. 2006); *In re Grand Union Co.*, 200 B.R. 101, 106 (D. Del. 1996) (stating that district court has broad discretion to award fees and district court reviews awards by bankruptcy court for abuse of discretion). As with the Appointment Order, the Debtors have not even come close to establishing an abuse of discretion on the part of the Bankruptcy Court in issuing the appealed fee cap orders.

At the outset, the fees at issue need to be put in perspective. The appealed orders have provided the Equity Committee's professionals with a grand total of $388,813. This amount was for services rendered between June 2005 and March 2007, and covers work performed by two law firms and two financial consultants. Moreover, the Segregated Funds that are the subject of the Debtors' Clarification Motion and the Equity Committee's current appeal

are now in excess of $81 million. Thus, the fees provided for under the appealed orders is less than 0.5 % of the funds in dispute. In addition, in their appeal, the Debtors do not even attempt to argue that the Equity Committee's counsel failed to perform the services for which they seek compensation, or that their rates are unreasonable. Under the circumstances, the Debtors cannot possibly demonstrate that the Bankruptcy Court abused its discretion with respect to the appealed fee cap orders.

The Debtors' argument that the Bankruptcy Court somehow abused its discretion in issuing successive fee cap orders after it previously "intimated further increases would not be authorized" (Response Brief at ¶ 63) is nonsensical. Obviously, it was within the Bankruptcy Court's discretion to re-evaluate its earlier position as the case progressed. Debtors other argument that the appealed fee cap orders violated the absolute priority rule is equally lacking in merit. Not surprisingly, the Debtors cite no case law applying the absolute priority rule to the attorney fee context. The Court is also referred to p. 17 of the Appellant's Reply Brief (07-480 D.I. 26) which further demonstrates the lack of merit to the Debtors' invocation of the absolute priority rule in this case.

Based on the foregoing, this Court should affirm the December 30, 2005 Fee Cap Order, February 6, 2007 Fee Cap Order, and the July 6, 2007 Fee Cap Order.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Equity Committee respectfully

requests that this Court enter an order:  (i) affirming the Appointment Order, the December 30,

2005 Fee Cap Order, February 6, 2007 Fee Cap Order, and the July 6, 2007 Fee Cap Order; and

(ii) granting such other and further relief as may be just and proper under the circumstances.


Dated:  December 14, 2007
          Wilmington, Delaware

**WILLIAM D. SULLIVAN, LLC**


*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE  19801
Tel:  (302) 428-8191
Fax:  (302) 428-8195
email:  bill@williamdsullivanllc.com


-- and --

**ANDERSON KILL & OLICK, P.C.**
Mark D. Silverschotz, Esq.
James Andriola, Esq.
1251 Avenue of the Americas
New York, NY  10020-1182
Tel:  (212) 278-1000
Fax:  (212) 278-1733

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: Finova Group et al

| | | |
|---|---|---|
| Finova Group Inc. and Finova Capital Corporation, | ) ) ) | |
| | ) | Civil Action No. 07-487 (JJF) |
| Appellants | ) ) | |
| v. | ) ) | |
| Official Committee of Equity Securities Holders, | ) ) ) | Bankruptcy Case No. 01-698 AP 07-74 |
| Appellee. | | |

## <u>MOTION TO DISMISS APPEAL</u>

William D. Sullivan (No. 2820)
WILLIAM D. SULLIVAN, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195
email: bill@williamdsullivanllc.com

Mark D. Silverschotz, Esq.
James M. Andriola, Esq.
Han J. Ahn, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
Telephone: (212) 278-1000
Facsimile: (212) 278-1733
email: jandriola@andersonkill.com

Attorneys for Appellee, the Official
Committee of Equity Security Holders

September 25, 2007

## TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................... 1

THE NATURE AND STAGE OF THE PROCEEDINGS...................................... 1

SUMMARY OF THE ARGUMENT ....................................................................... 2

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT

THIS COURT SHOULD DISMISS ANY APPEAL OF: (i) THE APPOINTMENT
ORDER; (ii) THE DECEMBER 30, 2005 FEE CAP ORDER; AND (iii) THE
FEBRUARY 6, 2007 FEE CAP ORDER .................................................................. 7

A.  THE APPEAL OF THE APPOINTMENT ORDER IS UNTIMELY ............................. 8

B.  THE APPEALS OF THE FEE CAP ORDERS ARE UNTIMELY ................................ 10

CONCLUSION ......................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page**

### CASES

*In re Allegheny Health, Educ. & Research Found.,*
181 F. App'x 289, 291 (3d Cir. 2006) ...................................................................8

*Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC,*
302 F. Supp. 2d 329 (D. Del. 2004)......................................................................9

*In re Amatex,*
755 F.2d 1034, 1040 (3d Cir. 1985)......................................................................10

*Amer Metrocomm Corp.,*
196 F. App'x 86, 87 (3d Cir. 2006) ...............................................................10, 11

*In re Armstrong World Indus., Inc.,*
No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005) .....................2, 8

*In re Genesis Health Ventures, Inc.,*
No. 00-2692 PJW, CIV A 06-397 JJF, 2007 WL 211209, at *1
(D. Del. Jan. 26, 2007) ..........................................................................................8

*Hylland v. Northwestern Corp. (In re Northwestern Corp.),*
319 B.R. 68, 72 (D. Del. 2005)..............................................................................2

*In re Johns-Manville,*
824 F.2d 176 (2d Cir. 1987).................................................................................10

*In re Marin Motor Oil, Inc.,*
89 F.2d 445 (3d Cir. 1982), cert denied, 459 U.S. 1206...................................10

*Metzker v. Int'l Paper Co.,*
825 F. Supp. 641, 645 (D. Del. 1993)....................................................................9

*Novak v. Teitelbaum, Braverman & Borges, P.C. (In re Novak),*
No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004)...............................2, 11

*In re NVF Co.,*
309 B.R. 698, 701 (Bankr. D. Del. 2004)..............................................................9

*In re Sergi,*
233 B.R. 586, 589 (1st Cir. B.A.P. 1999) .............................................................9

## TABLE OF AUTHORITIES
### (continued)

*In re Spillane*,
884 F.2d 642 (1st Cir. 1989).................................................................................3, 11

*In re Sugarhouse Realty, Inc.*,
192 B.R. 355, 362 (E.D. Pa. 1996) .................................................................................9

*In re Universal Minerals, Inc.*,
755 F.2d 309, 311-12 (3d Cir. 2006) .................................................................................9

*In re Williams*,
357 B.R. 434 (6th Cir. B.A.P. 2007).................................................................................2, 11

## STATUTES

Fed. R. Bankr. P. 2014.................................................................................5, 6

Fed. R. Bankr. P. 8002.................................................................................8

Bankruptcy Rule 3022 .................................................................................3

## INTRODUCTION

The Cross-Appellee, the Official Committee of Equity Security Holders (the

"Equity Committee"), on behalf of the shareholders (the "Equity Holders") of Finova Group,

Inc., the corporate parent of Finova Capital Corporation (collectively, the "Debtors" or

"Reorganized Debtors"), by and through its undersigned counsel, submits this motion to dismiss

as untimely the Debtors' appeal from the following orders of the Bankruptcy Court described in

the Notice of Cross-Appeal filed on July 16, 2007 (D.I. 1; Bankr. D.I. 231):[1]

> (i) the June 16, 2005 Order Directing the Office of the United States
> Trustee to Appoint an Official Committee of Equity Security Holders for a
> Limited Purpose and Granting Related Relief (the "Appointment Order")
> (Bankr. D.I. 48);
>
> (ii) the December 30, 2005 Order Pursuant to Section 328 of the
> Bankruptcy Code Increasing the Cap Previously Imposed on Fees and
> Expenses which Can be Incurred on Behalf of the Equity Committee (the
> "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93); and
>
> (iii) the February 6, 2007 Order Pursuant to Section 328 of the Bankruptcy
> Code Increasing the Cap Previously Imposed on Fees and Expenses which
> Can be Incurred on Behalf of the Equity Committee (the "February 6,
> 2007 Fee Cap Order") (Bankr. D.I. 205).

## THE NATURE AND STAGE OF THE PROCEEDINGS

On or about July 6, 2007, the Equity Committee filed its notice of appeal (Bankr.

D.I. 226) of the Final Clarification Order (defined below) (Bankr. D.I. 220) and the First

Clarification Order (defined below) (Bankr. D.I. 100). On or about July 16, 2007, the Debtors

filed a notice of cross appeal addressing four separate orders (D.I. 1; Bankr. D.I. 231), three of

which are the subject of the instant motion. The Equity Committee and the Debtors have filed

their respective designations of the record and statements of issues on Appeal and Cross Appeal

---

[1] "Bankr. D.I." refers to the docket of the Bankruptcy Court in case no. 01-00698-PJW and "Bankr. (Case
No. 697) D.I." refers to the docket of the Bankruptcy Court in case no. 01-00697-PJW.

(D.I. 2; Bankr. D.I. 233, 239, 242). The Equity Committee has previously filed a motion to convert a 90-day stay issued by the Bankruptcy Court on or about August 22, 2007 (Bankr. D.I. 247) into a stay pending final resolution of any appeal of the Final Clarification Order. (Bankr. D.I. 220).

## SUMMARY OF THE ARGUMENT

The Debtors' appeal of: (i) the Appointment Order; (ii) the December 30, 2005 Fee Cap Order; and (iii) the February 6, 2007 Fee Cap Order should be dismissed as untimely for the following reasons:

1.      The Debtors failed to appeal the Appointment Order (entered on June 16, 2005), the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order within the ten-day appeal period permitted by Bankruptcy Rule 8002(a). Indeed, the notice of appeal for each order was not filed *until July 16, 2007.* In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to Appointment Order, the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order.

2.      In the Third Circuit, an order of the Bankruptcy Court directing the U.S. Trustee to appoint an official committee of equity security holders is appealable immediately and as of a right. *See In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003). Moreover, based on the Third Circuit's flexible, pragmatic approach to finality (*see In re Armstrong World Indus., Inc.*, No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005)) and the relevant factors articulated by this Court in *Hylland v. Northwestern Corp. (In re Northwestern Corp.)*, 319 B.R. 68, 72 (D. Del. 2005), the Appointment Order was a final and appealable order when entered on June 16, 2005.

3.      The December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order were, as orders regarding attorney compensation, each final and appealable orders when

entered. *See In re Williams*, 357 B.R. 434 (6th Cir. B.A.P. 2007); *Novak v. Teitelbaum, Braverman & Borges, P.C. (In re Novak)*, No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004); and *In re Spillane*, 884 F.2d 642 (1st Cir. 1989).

## STATEMENT OF FACTS

### The Debtors' Bankruptcy Cases

On March 7, 2001, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. By order of the Bankruptcy Court, the Debtors' Chapter 11 cases were jointly administered. On or about June 14, 2001, the Debtor (and related companies) filed their Third Amended and Restated Joint Plan of Reorganization (the "Plan") (Bankr. (Case No. 697) D.I. 553), which the Bankruptcy Court confirmed by order dated August 10, 2001. (Bankr. (Case No. 697) D.I. 100).

The Plan became effective on August 21, 2001 (the "Effective Date"). Pursuant to the Plan, the Court retained "exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 cases and the Plan . . . and . . . [t]o hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan." Plan at § 12.1 On each of November 18, 2003, December 29, 2004 and March 22, 2005, the Bankruptcy Court issued orders (together, the "Final Decrees") closing the cases of certain of the Reorganized Debtors. (Bankr. (Case No. 697) D.I. 1935, 2025, and Bankr. D.I. 12). Pursuant to each of the Final Decrees, the Bankruptcy Court retained jurisdiction to hear matters involving "the enforcement of the provisions of the Plan (including all related documents contemplated by the Plan) and the Confirmation Order, and the entry of orders in aid of confirmation and consummation of the Plan, including, but not limited to, orders resolving disputes regarding distributions under the Plan." *See, e.g.*, Final Decree and Order Closing Certain Chapter 11 Cases Pursuant to Section 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule

5009-1 and Granting Related Relief, dated December 29, 2004 (Bankr. (Case No. 697) D.I. 2025).

### The Debtors File The Clarification Motion And The Bankruptcy Court Issues The Appointment Order

On or about April 1, 2005, the Debtors filed the Motion of the Reorganized Debtor for an Order Under Bankruptcy Code Section 1411 Clarifying Provision of Confirmed Plan (the "Clarification Motion") (Bankr. D.I. 22). Subsequently, Eugene Linden, a former member of the Equity Committee, filed a Motion for an Order Which Recognizes the Continued Existence of the Equity Committee, or in the Alternative for the Reappointment of the Equity Committee for the Limited Purpose of Responding to the Debtors' Clarification Motion (the "Appointment Motion") (Bankr. D.I. 33).[2]

By Order dated June 16, 2005 (defined above as the "Appointment Order") (Bankr. D.I. 48), the Bankruptcy Court, over the objection of the Debtors (Bankr. D.I. 39) directed the Office of the United States Trustee to appoint the Equity Committee for the limited purpose of responding to the Clarification Motion. Pursuant to the Appointment Order, the Debtors were "responsible for the satisfaction of the allowed fees and expenses of the Equity Committee and its professionals…; provided, however, that in no event shall the [the Debtors'] liability exceed $100,000 absent further order of the [Bankruptcy] Court." Appointment Order at ¶ 4. The Debtors did not file a notice of appeal concerning the Appointment Order *until July 16, 2007.* (D.I. 1; Bankr. D.I. 231).

After the United States Trustee appointed the members of the Equity Committee on or about July 20, 2005, Anderson Kill and Buchanan Ingersoll[3] were retained to serve as the

---

[2]    Rozann Chernov filed a joinder to the Appointment Motion (Bankr. D.I. 35).

[3]    Buchanon Ingersoll was subsequently replaced by William D. Sullivan, LLC.

Equity Committee's legal professionals. The Equity Committee also retained Residual Based Finance Corp. ("RESIDCO") to serve as its financial and solvency advisors in connection with preparing a valuation analysis of the Debtors' airplane assets. Thereafter, the Equity Committee opposed the Clarification Motion on a number of grounds. (Bankr. D.I. 63).

### The Bankruptcy Court Issues The December 30, 2005 Fee Cap Order

By Order dated August 26, 2005 (Bankr. D.I. 59), the Bankruptcy Court scheduled a hearing on the Clarification Motion for November 29, 2005. Prior to that hearing date, the Equity Committee filed an application with the Bankruptcy Court for an Order, Pursuant to Section 328 of the Bankruptcy Code and Fed. R. Bankr. P. 2014, Increasing the Cap on Fees and Expenses Which can be Incurred on Behalf of the Equity Committee (Bankr. D.I. 69). By Order dated December 30, 2005 (defined above as the "December 30, 2005 Fee Cap Order") (Bankr. D.I. 93), the Bankruptcy Court over the objection of the Debtors (Bankr. D.I. 71), granted the Equity Committee's application and ordered that the aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals were authorized to incur in responding to the Clarification Motion be increased to $200,000. By late January 2006, the Debtors had transmitted funds totaling $200,000 (the full amount permitted under the December 30, 2005 Fee Cap Order) to the Equity Committee's professionals for fees incurred by said professionals in responding to the Clarification Motion. The Debtors did not file a notice of appeal concerning the December 30, 2005 Fee Cap Order *until July 16, 2007*. (D.I. 1; Bankr. D.I. 231). In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to the December 30, 2005 Fee Cap Order.

On February 1, 2006, for the reasons set forth on the record at the hearing on November 29, 2005, and in a Supplemental Letter, the Bankruptcy Court ordered that "the Clarification Motion is hereby APPROVED to the extent that the Debtor is presently and will be

forever insolvent" (the "First Clarification Order") (Bankr. D.I. 100). First Clarification Order at

p. 2. The First Clarification Order goes on to state that "[n]othing in this order shall be construed

as a finding that the Debtors presently are or will forever be insolvent." *Id.*

<u>The Bankruptcy Court Issues The February 6, 2007 Fee Cap Order And
The Final Clarification Order</u>

On or about December 22, 2006, the Equity Committee filed an application with

the Bankruptcy Court for an Order, Pursuant to Section 328 of the Bankruptcy Code and Fed. R.

Bankr. P. 2014, Increasing the Cap on Fees and Expenses Which can be Incurred on Behalf of

the Equity Committee (Bankr. D.I. 194). On or about January 8, 2007, the Debtors filed their

Request for Entry of Final Order in Clarification Motion Contested Matter (the "Final Order

Request") (Bankr. D.I. 196). By Order dated February 6, 2007 (defined above as the "February

6, 2007 Fee Cap Order") (Bankr. D.I. 205), the Bankruptcy Court over the objection of the

Debtors (Bankr. D.I. 199), granted the Equity Committee's application and ordered that the

aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals

were authorized to incur in responding to the Clarification Motion be increased to \$300,000

(with certain restrictions).[4] The Debtors did not file a notice of appeal concerning the February

6, 2007 Fee Cap Order *until July 16, 2007*. (D.I. 1; Bankr. D.I 231). In addition, the Debtors

have never sought an extension of the 10-day appeal period with respect to the February 6, 2007

Fee Cap Order.

On or about June 26, 2007, the Bankruptcy Court entered the Final Clarification

Order, which finds that "the Debtors presently are and will be forever insolvent" and grants the

---

[4] The February 6, 2007 Fee Cap Order Equity Committee also permitted the Equity Committee to hire an additional financial consultant, Traxi, LLC.

Clarification Motion "in its entirety and on a Final basis." Final Clarification Order at p. 2 and p. 3 ¶ 1 (Bankr. D.I. 220).

### The Bankruptcy Court Issues The July 6, 2007 Fee Cap Order

By Order dated July 6, 2007 (the "July 6, 2007 Fee Cap Order") (Bankr. D.I. 225), the Bankruptcy Court over the objection of the Debtors (Bankr. D.I. 216), granted the Equity Committee's application and ordered that the aggregate limit placed on the amount of fees and expenses the Equity Committee's professionals were authorized to incur in responding to the Clarification Motion be increased to $388,000.

On July 16, 2007, the Debtors timely filed a notice of appeal concerning the July 6, 2007 Fee Cap Order, but also included in their notice: the Appointment Order, the December 30, 2005 Fee Cap Order, and the February 6, 2007 Fee Cap Order. As discussed below, the inclusion of the three prior orders was improper since the time in which to appeal said orders had long expired.

## ARGUMENT

### THIS COURT SHOULD DISMISS ANY APPEAL OF: (i) THE APPOINTMENT ORDER; (ii) THE DECEMBER 30, 2005 FEE CAP ORDER; AND (iii) THE FEBRUARY 6, 2007 FEE CAP ORDER

Federal Rule of Bankruptcy Procedure 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within ten days of the entry of the judgment, order, or decree appealed from." This ten-day time limit "has been strictly construed, requiring strict compliance with its terms. Nor can it be doubted that the rule is jurisdictional in effect.... Failure to file a timely notice of appeal thus deprives the district court of jurisdiction to review the bankruptcy court's order or judgment." *In re Universal Minerals, Inc.*, 755 F.2d 309, 311-12 (3d Cir.1985); *see also In re Allegheny Health, Educ. & Research Found.*, 181 F. App'x 289, 291 (3d Cir.

2006) (failure to file a notice of appeal creates a jurisdictional defect and bars the district court from appellate review.); *see also In re Genesis Health Ventures, Inc.*, No. 00-2692 PJW, CIV A 06-397 JJF, 2007 WL 211209, at *1 (D. Del. Jan. 26, 2007) ("the ten-day mandate of Rule 8002 is jurisdictional, and the Court has no authority to waive this time limit.").

### A.    The Appeal Of The Appointment Order Is Untimely

The Bankruptcy Court entered the Appointment Order from which the Debtors are attempting to appeal on June 16, 2005. The Debtors did not file their notice of appeal until July 16, 2007, over 2 years after the entry of the Appointment Order. This is clearly far outside the ten day limit of Bankruptcy Rule 8002(a). In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to the Appointment Order.

In the Third Circuit, an order of the Bankruptcy Court directing the U.S. Trustee to appoint an official committee of equity security holders is appealable immediately and as of a right. *See In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003). While the court in *In re Zenith* was not required to address the issue head-on, a review of the facts set forth in the Third Circuit's decision, as well as the underlying district court decision (*In re Zenith Electronics Corporation*, 2002 WL 226242 (D. Del. 2002)), reveals the following: (i) on August 23, 1999, the Debtor filed its voluntary petition; (ii) on August 27, 1999, the Bankruptcy Court issued an order directing the U.S. Trustee to appoint an official committee of equity security holders; (iii) on August 31, 1999 (months before the plan of reorganization was confirmed by the Bankruptcy Court), the U.S. Trustee filed a notice of appeal with respect to the appointment order; (iv) the merits of the appeal were addressed by both the district court and the Third Circuit (which ended up reversing and remanding).[5]

---

[5] *See also In re Amatex*, 755 F.2d 1034 (3d Cir. 1985) and *In re Marin Motor Oil, Inc.*, 89 F.2d 445 (3d Cir. 1982), cert denied, 459 U.S. 1206 (1983). In both of these cases, the Third Circuit held that

While not all circuits may follow this approach (*see e.g. In re Johns-Manville*, 824 F.2d 176 (2d Cir. 1987), it is well-known that the Third Circuit has a flexible, pragmatic approach to finality. *See In re Armstrong World Indus., Inc.*, No. 05-1881, 2005 WL 3544810, at *3 (3d Cir. Dec. 29, 2005). The relevant factors articulated by this Court in *In re Northwestern Corp.*, 319 B.R. at 72, demonstrate the "final" nature of the Appointment Order. First, the Appointment Order left no additional work to be done by the Bankruptcy Court on the issue of whether or not to appoint the Equity Committee. Second, there could not possibly have been a need for further fact-finding on remand to the Bankruptcy Court on the issue of whether or not the Bankruptcy Court erred in appointing the Equity Committee for the purpose set forth in the Appointment Order.

Third, in objecting to the Equity Committee's appointment, the Debtors argued that "fundamentally, the Clarification Motion will not adversely affect the rights of equity holders because *applicable law* and the *terms of the Plan* prevent distributions to equity holders by this insolvent company." (Bankr. D.I. 39 at ¶ 1) (emphasis added). Thus, in their own words, the Debtors conceded that their appeal of the Appointment Order would have been based on purely legal issues (i.e., applicable law and the terms of the Plan).[6] Fourth, the Debtors also conceded that the Appointment Order had an impact on the Debtor's estate. In their objection to

---

orders resulting from motions to intervene, which are similar in nature to the motion that lead to the Appointment Order in this case, are appealable.

[6] It is well-settled that a "confirmed plan of reorganization is a binding contract...[which] is subject to interpretation pursuant to relevant rules of contract interpretation and construction." *In re Sergi*, 233 B.R. 586, 589 (1st Cir. B.A.P. 1999) (citing *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D. Pa. 1996)); *see also In re NVF Co.*, 309 B.R. 698, 701 (Bankr. D. Del. 2004) (noting that a confirmed plan becomes a legally binding agreement). And, it is equally well-established that "the interpretation of contracts is a matter of law for the court to determine." *Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC*, 302 F. Supp. 2d 329 (D. Del. 2004); *see also Metzker v. Int'l Paper Co.*, 825 F. Supp. 641, 645 (D. Del. 1993) ("Interpretation of language in a contract...is treated as a question of law both in the trial court and on appeal." (internal quotation marks and citations omitted)).

the Bankruptcy Court, the Debtors argued that an equity committee should not be appointed to oppose the Clarification Motion "because doing so would waste assets of the Reorganized Debtors' estates." (Bankr. D.I. 39 at ¶ 1). Finally, it is obvious that the interests of judicial economy would have been served by having a determination back in 2005 as to whether the Bankruptcy Court was correct in issuing the Appointment Order, as opposed to waiting two years to make such an application. Were this Court to entertain an appeal of the Appointment Order at this time and reverse the Appointment Order as requested, such a decision would moot and/or render worthless over two years of efforts by the Equity Committee and its professionals.

For the foregoing reasons, the Debtors' appeal of the Appointment Order should be dismissed as untimely. *See Amer Metrocomm Corp.*, 196 F. App'x 86, 87 (3d Cir. 2006) (dismissing appeal as untimely where notice of appeal was filed five months after entry of bankruptcy court order and no extension was requested).

### B.    The Appeals Of The Fee Cap Orders Are Untimely

As with the Appointment Order, the Debtors failed to appeal either the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order within the ten-day appeal period permitted by Bankruptcy Rule 8002(a). Indeed, the notice of appeal for each order was not filed until July 16, 2007. In addition, the Debtors have never sought an extension of the 10-day appeal period with respect to either the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order.

"The bankruptcy court's order regarding attorney compensation is a final [and therefore] appealable order." *In re Williams*, 357 B.R. 434 (6th Cir. BAP 2007); *see also Novak v. Teitelbaum. Braverman & Borges, P.C. (In re Novak)*, No. 03-5070, 2004 WL 2338126 (2d Cir. Oct. 15, 2004) (holding that joint debtor's were required to appeal bankruptcy court's order awarding attorney fees to appointed counsel within 10-days); *In re Spillane*, 884 F.2d 642 (1st

Cir. 1989) (holding that order awarding attorney fees was final because attorney for trustee was specifically appointed to handle appeal regarding transfer of venue).

Based on the foregoing, the Debtors' appeal of the December 30, 2005 Fee Cap Order or the February 6, 2007 Fee Cap Order should be dismissed as untimely. *See Amer Metrocomm Corp.*, 196 F. App'x 86, 87 (3d Cir. 2006).

### CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Equity Committee respectfully requests that this Court enter an order:  (i) dismissing the Debtors' appeal of the Appointment Order, the December 30, 2005 Fee Cap Order and the February 6, 2007 Fee Cap Order as untimely; and (ii) granting such other and further relief as may be just and proper under the circumstances.

Dated:  September 25, 2007
        Wilmington, Delaware

                      **WILLIAM D. SULLIVAN, LLC**

                      */s/ William D. Sullivan*
                      William D. Sullivan (No. 2820)
                      4 East 8th Street, Suite 400
                      Wilmington, DE  19801
                      Tel:  (302) 428-8191
                      Fax:  (302) 428-8195
                      email:  bill@williamdsullivanllc.com

                          -- and --

                      **ANDERSON KILL & OLICK, P.C.**
                      Mark D. Silverschotz, Esq.
                      James Andriola, Esq.
                      1251 Avenue of the Americas
                      New York, NY  10020-1182
                      Tel:  (212) 278-1000
                      Fax:  (212) 278-1733

# EXHIBIT 2

Westlaw.

Not Reported in B.R.                                                                                    Page 1

Not Reported in B.R., 2004 WL 1077913 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

ℍ

In re Northwestern Corp.
Bkrtcy.D.Del.,2004.
Only the Westlaw citation is currently available.
    United States Bankruptcy Court,D. Delaware.
        In re: NORTHWESTERN CORPORATION,
                        Debtor.
                **No. 03-12872 (CGC).**

                    May 13, 2004.

Scott D. Cousins, William E. Chipman, Jr., Charles
Michael Terribile, Greenberg Traurig, LLP,
Wilmington, DE, and Jess H. Austin, III, Karol K.
Denniston, Paul, Hastings, Janofsky & Walker LLP,
Atlanta, GA, for Debtors and Debtors-in-Possession.
Richard S. Cobb, Megan N. Harper, Landis Rath &
Cobb LLP, Wilmington, DE, and Lawrence C.
Gottlieb, Eric Haber, John Morris, Kronish Lieb
Weiner & Hellman LLP, New York, NY, for RCG
Carpathia Master Fund, Ltd., Performance Capital
and Smith Management LLC.
Neil B. Glassman, Charlene D. Davis, Erie M.
Sutty, The Bayard Firm, Wilmington, DE, and Alan
W. Kornberg, Ephraim I. Diamond, Talia Dil, Paul,
Weiss, Rifkind, Wharton & Garrison LLP, New
York, NY, for the Official Committee of Unsecured
Creditors Committee.
Mark S. Kenney, United States Office of the United
States Trustee, District of Delaware, Wilmington,
DE, Stephen E. Hermann, Richards, Layton &
Finger, PA, Wilmington, DE, and Thomas Moers
Mayer, Philip Bentley, Matthew J. Williams,
Kramer Levin Naftalis & Frankel LLP, New York,
NY, for Wilmington Trust Company as Indenture
Trustee.

            *MEMORANDUM OPINION*
CASE, Bankruptcy J.
**\*1** The two motions before the Court are (I) the
Motion of RCG Carpathia Master Fund, Ltd. and
Kellogg Capital Group LLC f/k/a Performance
Capital (1) for Permission to Present Testimony and

Submit Pre-Trial Statements in Connection With
Their Motion for Appointment of Official Equity
Security Holders Committee and (2) Requesting
That the Court Schedule a Hearing (the "Evidence
Motion") (Docket No. 1231); and (II) the Motion of
RCG Carpathia Master Fund, Ltd., Performance
Capital and Smith Management LLC (collectively
the "Movants") for Appointment of Official Equity
Security Holders Committee (the "Committee
Motion") (Docket No. 986). Upon consideration
and review of all relevant pleadings; oral argument;
and for the reasons set forth below, the Court denies
both motions.

                        *FACTS*

On September 14, 2003 (the "Petition Date"), the
Debtor filed a voluntary petition for relief under
chapter 11 of the Bankruptcy Code. The Debtor
continues to operate its business and manage its
properties as debtor-in-possession pursuant to
Sections 1107 and 1108 of the Bankruptcy Code.

An Official Committee of Unsecured Creditors (the
"Unsecured Creditors Committee") was appointed
by the Office of the United States Trustee, District
of Delaware, on September 30, 2003.

On March 11, 2004, the Debtor filed its disclosure
statement and plan of reorganization. A hearing on
the adequacy of the disclosure statement is
scheduled for May 17, 2004.

On March 24, 2004, RCG Carpathia Master Fund,
Ltd., Kellogg Capital Group LLC f/k/a/
Performance Capital and Smith Management LLC
filed a Motion to Appoint an Equity Security
Holders Committee. Responses were filed by the
Debtor, the Unsecured Creditors Committee, The
United States Trustee, and Wilmington Trust
Company as indenture trustee. The motion was
originally scheduled to be heard at the regular
omnibus hearing on April 8, 2004; it was continued

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                                  Page 2

Not Reported in B.R., 2004 WL 1077913 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

by consent to May 17, 2004.

The Committee Motion was filed several months after the United States Trustee, on December 4, 2003, refused Movants' November 18, 2003 request to form a committee of equity security holders.

Two of the Movants [FN1] recently filed a Motion for Permission to Present Testimony and Submit Pre-Trial Statements in Connection With Their Motion for Appointment of Official Equity Security Holders Committee. The Evidence Motion was scheduled on special notice and a hearing was held on May 12, 2004.

> FN1. Smith Capital LLC has not joined in the request for an evidentiary hearing.

### DISCUSSION

The Movants' Committee Motion seeks an order appointing an equity security holders committee to represent the holders of common stock pursuant to Section 1102(a)(2) of the Bankruptcy Code. Section 1102(a)(2) states that
On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

**\*2** 11 U.S.C. § 1102(a)(2). Such a determination is made on a case-by-case basis. *See In re Williams Communications Group, Inc.,* 281 B.R. 216, 220 (Bankr.S.D.N.Y.2002). Among the facts the court should consider when making this determination are; the solvency of the debtors, timing, the number of shareholders, the complexity of the chapter 11 case, and whether the cost of an additional equity committee significantly outweighs the concern for adequate representation. *Id.* at 219.In addition, appointing an official equity committee "should be the rare exception" and an equity committee should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and

(ii) they are unable to represent their interests in the bankruptcy case without an official committee.

*Id.* at 223.

At the heart of the parties' dispute is the value of the Debtor's enterprise. Debtor, through its experts and with the support of the Unsecured Creditors Committee, asserts that the estate is hopelessly insolvent and that equity is approximately $700 million out of the money. Therefore, it urges, supported by the Unsecured Creditors Committee and the United States Trustee, that the Committee Motion be denied but agrees that if the Court is to consider it further, an evidentiary hearing is required. The Movants assert that the Debtor's valuation fails even a minimal test of reasonableness and state that their expert is of the view that there is at least $200 million in value for equity.

The real issue here is which party should bear the cost of a valuation battle-the estate or the Movants. The Movants argue that it is appropriate for the estate to fund the costs of protecting the interests of equity given the size and complexity of the case and the possibility that value exists for equity. The objectors point out that the Movants have every right to raise their arguments in the context of plan confirmation but that the estate should bear the upfront cost where a favorable outcome is so dubious. Further, if they are successful, the Movants may assert a claim for reimbursement of their fees and costs under Section 503(b)(3)(D) of the Bankruptcy Code.

Against this background, the initial question is whether an evidentiary hearing is appropriate. The Courts concludes not. Let us assume the best outcome for the Movants-that the testimony of Mr. Harris (their expert) is sufficiently compelling to create a credible argument that a higher value may be appropriate and the testimony of Lazard Freres, Debtor's expert, is sufficiently suspect to put the Debtor's valuation in doubt. Does that justify the appointment of a committee? The Court thinks not. All that would do is put the issue of value in play, not tip the scale to the extent that the valuation battle should be funded by the estate. Remember

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 3

Not Reported in B.R., 2004 WL 1077913 (Bkrtcy.D.Del.)
**(Cite as: Not Reported in B.R.)**

that there is a $700 million shortfall that needs to be overcome before there is any value for equity.[FN2] While not impossible, that is a steep hill to climb; indeed, the Court could eventually accept nearly 80% of the additional value urged by the Movants and equity would still be out of the money. This does not satisfy the "substantial likelihood that [equity] will receive a meaningful distribution" test set forth in *In re Williams.*

> FN2. Roughly speaking, Mr. Harris' valuation indicates another $200 million for equity in value beyond the $700 million gap.

**\*3** Under these circumstances, it is not in the best interests of the estate or its constituents to shift the cost of this valuation dispute from the Movants to the estate. As pointed out by Debtor's counsel, the Movants acquired their equity position post-petition, [FN3] understanding the risk they undertook. They can decrease the risk by recruiting other equity holders to be part of an unofficial committee, thereby spreading the upfront costs. In any event, if they are correct, they are protected by Section 503(b)(3)(D) of the Bankruptcy Code. Given the admittedly speculative nature of their position, this is a fair allocation of risk.

> FN3. Movants' counsel did not take issue with this statement at the hearing.

### *CONCLUSION*

For the foregoing reasons, the Evidence Motion (Docket No. 1231) is denied. Further, given the Court's conclusions on the Evidence Motion, the Committee Motion (Docket No. 986) is also denied. The May 17, 2004 hearing on the Committee Motion is vacated and the Debtor is directed to delete that item from the Notice of Agenda.

It is so ordered.

Bkrtcy.D.Del.,2004.
In re Northwestern Corp.
Not Reported in B.R., 2004 WL 1077913

(Bkrtcy.D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d                                                Page 1

Not Reported in F.Supp.2d, 2002 WL 32332000 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Exide Technologies v. State of Wisconsin Invest.
Bd.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
EXIDE TECHNOLOGIES, et al., and Credit Suisse
First Boston, Appellants,
v.
STATE OF WISCONSIN INVESTMENT
BOARD, Appellee,
andOFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF EXIDE
TECHNOLOGIES, et al., Intervenor.
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF EXIDE TECHNOLOGIES, et al.,
Appellant,
v.
STATE OF WISCONSIN INVESTMENT
BOARD, Appellee,
andOFFICIAL COMMITTEE OF EQUITY
SECURITY HOLDERS OF EXIDE
TECHNOLOGIES, et al.
**No. 02-1572-SLR, 02-11125-KJC, 02-1610-SLR.**

Dec. 23, 2002.

James E. O'Neill, III, Christopher James Lhulier,
Pachulski, Stang, Ziehl, Young & Jones, P.C.,
Wilmington, DE, for Debtor.
Etta R. Wolfe, Richards, Layton & Finger, Adam
Hiller, Pepper Hamilton LLP, William Anthony
Hazeltine, Potter Anderson & Corroon, LLP, Stuart
M. Grant, Grant & Eisenhofer, P.A., Wilmington,
DE, for Appellee.
Mark S. Kenney, pro se, Wilmington, DE, for
Trustee.
Adam Hiller, Pepper Hamilton LLP, Etta R. Wolfe,
Richards, Layton & Finger, Wilmington, DE, for
Appellant.

MEMORANDUM ORDER
ROBINSON, J.

*1 At Wilmington this 23rd day of December,
2002, having reviewed the papers and heard oral
argument;

IT IS ORDERED that the bankruptcy court's
September 23, 2002 decision in the above captioned
matter is affirmed and the appeal denied, for the
reasons that follow:

1. This court has jurisdiction to hear an appeal from
the bankruptcy court pursuant to 28 U.S.C. §
158(a). In undertaking a review of the issues on
appeal, the court applies a clearly erroneous
standard to the bankruptcy court's findings of fact
and a plenary standard to that court's legal
conclusions. *SeeAm. Flint Glass Workers Union v.
Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d
Cir.1999). With mixed questions of law and fact,
the court must accept the bankruptcy court's "
finding of historical or narrative facts unless clearly
erroneous, but exercise[s] 'plenary review of the
[bankruptcy] court's choice and interpretation of
legal precepts and its application of those precepts
to the historical facts." ' *Mellon Bank, N.A. v.
Metro Communications, Inc.,* 945 F.2d 635, 642
(3d Cir.1991) (citing *Universal Minerals, Inc. v.
C.A. Hughes & Co.,* 669 F.2d 98, 101-02 (3d
Cir.1981)). The district court's appellate
responsibilities are further informed by the directive
of the United States Court of Appeals for the Third
Circuit, which effectively reviews on a *denovo* basis
bankruptcy court opinions. *In re Hechinger,* 298
F.3d 219, 224 (3d Cir.2002); *In re Telegroup,* 281
F.3d 133, 136 (3d Cir.2002).

2. The bankruptcy court decision which is the
subject of this appeal involves the appointment of
an equity committee [FN1] pursuant to 11 U.S.C. §
1102(a)(2), which provides in relevant part that,

FN1. See the September 23, 2002 decision
of the court at D.I. 24, Ex. B at 4-15.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 32332000 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

[o]n request of a party in interest, the court may order the appointment of ... committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

The statute does not define the term "adequate representation;" therefore, the bankruptcy court " retains the discretion to appoint an equity committee based on the facts of each case."*In re Williams Communications Group, Inc.,* 281 B.R. 216, 220 (Bankr.S.D.N.Y.2002). Generally, however, the appointment of an official equity committee "should be the rare exception" and should not be appointed unless equity holders establish [FN2] that

> FN2. The parties agree that the burden of proof is by a preponderance of the evidence.

(i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee. *Id.* at 223.In determining whether equity holders are likely to receive a distribution, courts review the costs associated with appointing an official committee as compared to the debtor's solvency. If a debtor appears to be "hopelessly insolvent," the appointment of an official equity committee is generally regarded as unjustified. If a debtor does not appear to be "hopelessly insolvent," courts consider the following additional factors in determining whether the equity holders are adequately represented without the appointment of an official committee:

**\*2** Whether the shares are widely held and publicly traded;

The size and complexity of the Chapter 11 case; and

The timing of the motion relative to the status of the Chapter 11 case.

*SeeMatter of Kalvar Microfilm, Inc.,* 195 B.R. 599, 600 (Bankr.D.Del.1996).

3. The bankruptcy court employed the correct legal standard in its decision to appoint an equity committee. (D.I. 24, Ex. B at 4-11) Keeping in mind that the decision to appoint an equity committee rests within the sound discretion of the bankruptcy court, this court finds as well that the bankruptcy court's decision is based on facts of record that are not clearly erroneous.

a. First, the motion for appointment of the equity committee came early in this complex Chapter 11 proceeding. Consequently, in balancing the costs of supporting an equity committee with the admittedly speculative prospects for a recovery for equity, the bankruptcy court did not err by finding that debtors were not hopelessly insolvent. More specifically, the bankruptcy court found that the appellee " presented credible evidence of equity value of the Debtors on a cash flow basis."(D.I. 24, Ex. B at 11) Although appellants argue that such evidence is comprised of little more than assumptions and economic speculation, nevertheless, appellee presented expert evidence consistent with the expectation that debtors intend to reorganize and not liquidate. (See D.I. 24, Ex. B at 13) Thus, although some of the bankruptcy court's apparent findings of fact may not be supported by the record, [FN3] there is evidence of record that the debtor is not hopelessly insolvent.

> FN3. For instance, there is no evidence of hidden assets by way of debtors' foreign subsidiaries.

b. Second, although appellee is a substantial equity holder capable of representing itself in the bankruptcy proceeding, the bankruptcy court concluded that the Chapter 11 process would benefit from having an official committee of equity holders. Although different judges would employ their discretion differently when faced with the facts of record, this court sees no clear error in the bankruptcy court's decision to be more inclusive in this complex Chapter 11 case.

4. For the reasons stated above, the September 23, 2002 decision of the bankruptcy court is affirmed and the appeal denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2002 WL 32332000 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**


D.Del.,2002.
Exide Technologies v. State of Wisconsin Invest.
Bd.
Not Reported in F.Supp.2d, 2002 WL 32332000
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

      I, William D. Sullivan, do hereby certify I am not less than 18 years of age and that on this 14th day of December 2007, I caused a copy of the foregoing *Motion to Strike* to be served upon the parties listed below in the manner indicated.

**HAND DELIVERY**
Mark D. Collins, Esq
Richards Layton & Finger
One Rodney Square
Wilmington, DE 19801

**HAND DELIVERY**
David L. Buchbinder, Esq.
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801

**FIRST CLASS MAIL**
Jonathan M. Landers, Esq.
Paul Guillotte, Esq.
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

**FIRST CLASS MAIL**
James Gadsden, Esq.
Carter Ledyard & Milburn, LLP
2 Wall Street
New York, NY 10005

      Under penalty of perjury, I declare that the foregoing is true and correct.

*December 14, 2007*
Date

*/s/ William D. Sullivan*
William D. Sullivan