**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE FINOVA GROUP, INC. and | ) | Case No. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, | ) | |
| | ) | |
| Reorganized Debtors. | ) | |
| | ) | |
| | ) | |
| OFFICIAL COMMITTEE OF EQUITY | ) | |
| SECURITIES HOLDERS of FINOVA GROUP, | ) | |
| INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-480 (JJF) |
| | ) | |
| THE FINOVA GROUP INC. and | ) | Bankruptcy Case No. 01-698 |
| FINOVA CAPITAL CORPORATION, | ) | AP 07-70 |
| | ) | |
| Appellees. | ) | |

## RESPONSE TO APPELLANT'S MOTION TO STRIKE

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 658-6541
Telecopy: (302) 658-6548

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

*Attorneys for Appellees The FINOVA Group*
*Inc. and FINOVA Capital Corporation*

Dated: December 21, 2007
       Wilmington, Delaware

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

THE NATURE AND STAGE OF THE PROCEEDINGS........................................... 1

ARGUMENT............................................................................................................. 3

   A.   The Debtors Properly Filed a Cross-Appeal ................................................. 3

   B.   The Equity Committee's Arguments Misconstrue Applicable Law Regarding Cross-Appeals ....................................................................................................... 5

   C.   The Motion to Strike Should be Dismissed to the Extent it Seeks to Introduce the Equity Committee's Substantive Response to the Cross-Appeal ..................... 8

CONCLUSION.......................................................................................................... 9

## TABLE OF AUTHORITIES

### CASES

Page(s)

Cluck v. Osherow (In re Cluck),
101 F.3d 1081 (5th Cir. 1996) ............................................................................7

In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine) Products Liability
Litigation, 418 F.3d 372 (3d Cir. 2005)...........................................................5, 6

Florida Windstorm Underwriting v. Gajwani,
934 So. 2d 501 (Fla. Dist. Ct. App. 2005) ...........................................................6

In re Johns-Manville Corp.,
824 F.2d 176 (2d Cir. 1987)................................................................................7

### RULES

Fed. R. Bankr. P. 2017....................................................................................2

Fed. R. Bankr. P. 8002....................................................................................4

Fed. R. Bankr. P. 8009.............................................................................3, 4, 8

### OTHER

4 C.J.S. Appeal & Error § 21...........................................................................5

RLF1-3237603-1

## INTRODUCTION

Appellees, and cross-appellants, The FINOVA Group Inc. ("FNV Group") and FINOVA Capital Corporation (together, the "Debtors") respond to the Motion to Strike of the Official Committee of Equity Security Holders (the "Equity Committee"). For the reasons set forth below, the Court should (1) deny the Motion to Strike because the Debtors have correctly filed a cross-appeal of four non-final orders, each of which merged with the Clarification Orders, and (2) disregard the Equity Committee's improper and untimely affirmative response to the Debtors' cross-appeal, which is attached as an exhibit to the Motion to Strike.

## THE NATURE AND STAGE OF THE PROCEEDINGS

The Motion to Strike has its genesis in the Motion of The Reorganized Debtors' For an Order Under Bankruptcy Code Section 1141 Clarifying Provision of Confirmed Plan, dated April 1, 2005 (the "Clarification Motion"). The Debtors filed the Clarification Motion seeking an order clarifying that, pursuant to the confirmed plan of reorganization, the Debtors were no longer required to set aside funds for distributions to equity, and that, given the fact that the Debtors would be forever insolvent, the retained funds should be returned to the Debtors for general corporate purposes, including payments on the New Senior Notes.

A group of the Debtors' shareholders contested the Clarification Motion and requested that the Bankruptcy Court enter an order either (i) recognizing the continued existence of a pre-confirmation official committee of equity security holders or (ii) reconstituting the equity committee. On June 16, 2005, the Bankruptcy Court entered an order (Bankr. D.I. 48) (the "Equity Committee Order") directing the United States Trustee to reconstitute the equity committee "for the limited and exclusive purpose of reviewing and, if it deems appropriate, objecting to the [Clarification Motion]." The Bankruptcy Court capped the Equity Committee's fees and expenses at $100,000. Subsequently, the Bankruptcy Court entered three orders

1

increase the fee cap; the final fee cap was $388,393. Each of the Equity Committee Order and the three orders increasing the fee cap were directly for purposes, proceedings, and fees incurred in connection with the Clarification Motion.

On February 11, 2006 the Bankruptcy Court entered an order (the "First Clarification Order") granting the Clarification Motion but reserving decision on the Debtors' financial condition. On June 26, 2007, the Bankruptcy Court entered an order (the "Second Clarification Order" and, together with the First Clarification Order, the "Clarification Orders") finding that the Debtors were hopelessly insolvent and that the funds should revert to the Debtors for general corporate purposes including payment on the New Senior Notes. The Equity Committee filed a Notice of Appeal of the Clarification Orders on July 6, 2007.

The Debtors filed a Notice of Cross Appeal on July 16, 2007. The Debtors cross-appeal (the "Cross-Appeal") involves: (i) the Equity Committee Order; (ii) the Order Increasing the Cap Previously Imposed on Fees and Expenses Which Can be Incurred on Behalf of the Equity Committee, entered by the Bankruptcy Court on January 3, 2006 (the "First Fee Cap Order") (Bankr. D.I. 93); (iii) the Order Regarding Application for an Order, Pursuant to Section 327(e) of the Bankruptcy Code and Fed. R. Bankr. P. 2017, Increasing the Cap on Fees and Expenses Which Can Be Incurred on Behalf of the Equity Committee and the Final Order Request, entered by the Bankruptcy Court on February 6, 2007 (the "Second Fee Cap Order") (Bankr. D.I. 205); and (iv) the Order Increasing the Cap Previously Imposed on Fees and Expenses Which Can Be Incurred on Behalf of the Equity Committee, entered by the Bankruptcy Court on July 26, 2007 (the "Third Fee Cap Order," and together with the First Fee Cap Order and the Second Fee Cap Order, the "Fee Cap Orders") (Bankr. D.I. 225).

2

The Equity Committee filed a motion to dismiss (the "Motion to Dismiss") the cross-appeal (other than the Third Fee Cap Order) as untimely.[1]  The Motion to Dismiss has been fully briefed and is presently *sub judice*.

On October 22, 2007, the Equity Committee filed its Opening Brief on the Equity Committee's appeal of the Clarification Orders.  On November 21, 2007, the Debtors' filed their responsive brief and, as required by Bankruptcy Rule 8009(a)(2), included their opening argument in support of the Cross-Appeal.  On December 5, 2007, the Equity Committee filed its reply brief, which is the final brief the Equity Committee is permitted to file as of right under the Bankruptcy Rules, and failed to respond to the Debtors' arguments in support of the Cross-Appeal.  In its reply brief, the Equity Committee stated its view that the Debtors' cross-appeal was not properly interposed as a cross-appeal and, therefore, no response was required. Subsequently, the Equity Committee filed the Motion to Strike the portion of the Debtors' brief dealing with the Debtors' cross-appeal.  The Debtors are responding to the Motion to Strike.[2]

## ARGUMENT

### A.  The Debtors Properly Filed a Cross-Appeal

The Equity Committee's principal argument is that the Cross-Appeal is, really, a stand alone appeal and, therefore, the Debtors prematurely set forth their arguments in support of the

---

[1]  The Equity Committee essentially argued that the Equity Committee Order, and the First and Second Fee Cap Orders, were each final orders which had to be appealed when rendered.  The Debtors argued that they were all interlocutory orders in proceedings on the Clarification Motion and could be appealed when the Second Clarification Order was entered.

[2]  In the Motion to Strike, the Equity Committee attached a belated response to that portion of the Debtors' brief that dealt with the Cross-Appeal.  (Motion to Strike, Exhibit B)  The Equity Committee made a calculated mistake at law and is attempting to rectify that with this filing.  This belated response, however, is not timely and if these arguments were included to the Equity Committee's timely-filed reply brief, would cause said reply brief to exceed the 20 page limit under Local Rule 7.1.3(a)(4).  The Debtors will respond to this belated brief separately, as is required by Bankruptcy Rule 8009.

3

Cross-Appeal. This is simply inaccurate. Bankruptcy Rule 8002(a) provides that "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed." Fed. R. Bankr. P. 8002(a). The Advisory Committee's notes to Rule 8002 clarify that a "notice of appeal filed within the additional ten day period by an appellee is a cross appeal . . . ." Fed. R. Bankr. P. 8002 advisory committee's note. The Advisory Committee's notes to Rule 8002 comports with the common understanding that a cross-appeal is simply an appeal by the appellee. *See*, *e.g*, Black's Law Dictionary at 106 (8th Ed. 2004).

As noted above, each of the orders which are involved in the cross-appeal was rendered during the proceedings on the Clarification Motion and was directly related to the Clarification Motion. The Debtors filed their notice of cross-appeal of the Equity Committee Orders and the Fee Cap Orders after the Equity Committee had filed its notice of appeal of the Clarification Orders. There is no dispute that the Debtors are appellees and that their notice of cross-appeal was filed during the ten-day period following the Equity Committee's notice of appeal. Therefore, under the Bankruptcy Rules, the Debtors' appeal is a cross-appeal.

The Bankruptcy Rules plainly require that an appellee who has filed a cross-appeal to make its affirmative argument on cross appeal in its responsive brief. Bankruptcy Rule 8009(a)(2) provides, in pertinent part that:

> If appellee has filed a cross appeal, the brief of the appellee shall contain the issues and argument pertinent to the cross appeal, denominated as such, and the response to the brief of the appellant.

Fed. R. Bankr. P. 8009(a)(2). The Debtors complied with Rule 8009(a)(2) by including their opening argument on cross-appeal in their responsive brief. The Equity Committee has failed to point to any authority modifying the clear language of Bankruptcy Rules 8002 and 8009, and therefore the Motion to Strike must be denied.

4

**B.**    **The Equity Committee's Arguments Misconstrue Applicable Law Regarding Cross-Appeals.**

Rather than attempt to fashion any argument that the Debtors failed to comport with the Bankruptcy Rules, the Equity Committee, instead, argues that the Debtors' inclusion of their affirmative argument on cross appeal was either premature or untimely as the Fee Cap Orders were "separate and distinct" from the Clarification Order, relying largely on several cases from state courts. The Equity Committee, however, misconstrues applicable authority in an attempt to impermissibly restrict the scope of a cross-appeal.

As the Equity Committee's own authority provides, a cross-appeal is appropriate where it addresses "those trial court orders or rulings adverse to the appellee which either merge into or are an inherent part of the order or orders which are properly under review by the main appeal." 4 *C.J.S. Appeal & Error* § 21.[3]    Generally, all interlocutory orders entered by the trial court merge into the final judgment, and thus become appealable upon entry of the final judgment. *See, e.g., In re Diet Drugs (Phentermmine/Fenfluramine/Dexfenfluramine) Products Liability*

---

[3] The Equity Committee selectively quotes from *C.J.S. Appeal & Error* in an attempt to obfuscate the authority regarding cross-appeals. The Equity Committee only quotes one sentence from one paragraph of the entry: "A cross appeal is not appropriate if it seeks to review an order or judgment that is separate and distinct from the order or judgment under review by the main appeal." Both the preceding and following parts of the paragraph, however, demonstrate that a cross-appeal is not so limited and instead properly lies where the appellee seeks review of distinct issues arising out of the same controversy or orders entered in the main appeal:

> A cross appeal can only be brought where a valid appeal exists. Ordinarily a cross appeal must relate to the same judgment or controversy. A cross appeal is confined to those trial court orders or rulings adverse to the appellee which either merge into or are an inherent part of the order or orders which are properly under review by the main appeal. A cross appeal is not appropriate if it seeks to review an order or judgment that is separate and distinct from the order or judgment under review by the main appeal. However, there is authority that a cross appeal is a separate appeal raising distinct issues for review, and thus, the cross appeal must be able to stand on its own, independent of the original appeal, because the original appeal may become irrelevant through mootness or voluntary dismissal.

4 *C.J.S. Appeal & Error* § 21

*Litigation*, 418 F.3d 372, 377 (3d Cir. 2005) (holding that question regarding payment of filing fee by members of plaintiff's class who opted out of class action was interlocutory and would merge into any final judgment on the merits).

In the *Diet Drugs Litigation* case, thousands of members of a plaintiffs' class action opted out of the class action and proceeded together in a number of large individual lawsuits. Each lawsuit only paid one filing fee, notwithstanding the fact that there were thousands of plaintiffs. The cases were subsequently consolidated in the Eastern District of Pennsylvania, which entered an order severing the large cases and requiring each plaintiff to file a severed and amended complaint. *Id.* at 375. The plaintiffs immediately appealed the severance order insofar as the order required payment of the separate filing fees. The Third Circuit held that the appeal was premature and that the severance order would be appealable upon a determination of the merits in part because the orders requiring the filing fees would merge into a final decision on the merits. *Id.* at 377. Clearly, the severance order at issue would be "separate and distinct" from any order on the merits; however, there is little question that a cross-appeal of the severance order would be proper upon a determination of the merits as a result of the merger rule.

The Equity Committee relies almost exclusively on the Florida state court case of *Florida Windstorm Underwriting v. Gajwani* for the proposition that an appeal is not proper from a "separate and distinct" order of a trial court; however, that case is readily distinguishable. *Gajwani* concerns a homeowner who filed an action against two insurance companies, Florida Windstorm Underwriting and Lexington Insurance Company, seeking to recover amounts expended to repair damage to their home caused by wind. *Florida Windstorm Underwriting v Gajwani*, 934 So. 2d 501, 502 (Fla. Dist. Ct. App. 2005). The court later entered an order

6

granting summary judgment in favor of the homeowner against Florida Windstorm and concurrently therewith entered a second separate order granting summary judgment in favor of Lexington against the homeowner. Florida Windstorm filed a notice of appeal of the first summary judgment order and the homeowner subsequently filed a cross appeal of the second summary judgment order. The Florida Court of Appeals dismissed the cross-appeal noting that two summary judgment orders were separate and distinct and, therefore, the homeowner should have filed a standalone appeal of the order in favor or Lexington. *Gajwani* does not discuss whether interlocutory orders entered through the course of a proceeding are properly cross-appealed at the time of an appeal on the merits, and therefore is of little application to the case at bar. But, in any event, it appears that the two orders in question in *Florida Windstorm* involved different insurance companies and most likely different policies. That case has nothing to do with the present situation where the order appointing the Equity Committee and proceeding fee caps, involved the same parties and were for the specific purpose of litigating the Clarification Motion.

Moreover, it is readily apparent that the Equity Committee Order and the Fee Cap Orders were interlocutory and, as a result, not appealable until entry of the Clarification Order.[4] *See, e.g., See In re Johns-Manville Corp.*, 824 F.2d 176, 179 (2d Cir. 1987) ("a bankruptcy court's denial of a request to appoint an official committee for shareholders is [non-]final even under the more flexible standard of finality applied in bankruptcy cases"); *Cluck v. Osherow (In re Cluck)*, 101 F.3d 1081, 1082 (5th Cir. 1996) ("Every circuit which has addressed this issue has concluded that an interim award of compensation granted by a bankruptcy court in an ongoing

---

[4] The Debtors have more fully briefed this argument in their response to the Motion to Dismiss, which is attached hereto as Exhibit A.

7

bankruptcy proceeding generally is an interlocutory order which is not subject to review"). Since, the general rule is that interlocutory orders merge into the final judgment, the Equity Committee's argument that the Cross-Appeal improperly concerns separate orders must fail.

**C.**     **The Motion to Strike Should be Dismissed to the Extent it Seeks to Introduce the Equity Committee's Substantive Response to the Cross-Appeal.**

Bankruptcy Rule 8009(a)(3) clearly provides that:

> The appellant may serve and file a reply brief within 10 days after service of the brief of the appellee, and if the appellee has cross-appealed, the appellee may file and serve a reply brief to the response of the appellant to the issues presented in the cross appeal within 10 days after service of the reply brief of the appellant. No further briefs may be filed except with leave of the district court . . . .

Fed. R. Bankr. P. 8009(a)(3). Moreover, Delaware Local Rule 7.1.3(a)(4) provides that no reply brief shall exceed 20 pages. On December 5, 2007, the Equity Committee filed a 20 page reply brief that failed to respond to the Debtors' affirmative argument on cross appeal. Now, in complete contravention of both the Bankruptcy Rules and Local Delaware Rules, the Equity Committee, out of an abundance of caution, has filed its substantive response as an exhibit to the motion to strike. The Equity Committee has neither asked, nor received, leave to file any additional briefing. Moreover the Equity Committee's additional brief, when combined with their reply brief, exceeds the page limit for reply briefs. The Equity Committee's attempt to circumvent the rules should not be countenanced and the self-styled exhibit should be disregarded. The bottom line here is that the Equity Committee made a calculated mistake at law in not filing a response to the Cross Appeal and should not be permitted a second chance.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the Debtors respectfully request the Court enter an order (i) dismissing the Motion to Strike, (ii) disregarding the Equity Committee's affirmative response on cross appeal and (iii) granting such other relief as may be just and necessary.

Dated: December 21, 2007
      Wilmington, Delaware

                Mark D. Collins (No. 2981)
                Jason M. Madron (No. 4431)
                RICHARDS, LAYTON & FINGER, P.A.
                One Rodney Square
                920 North King Street
                Wilmington, Delaware 19801
                Telephone: (302) 658-6541
                Telecopy: (302) 658-6548

                -and-

                Jonathan M. Landers
                Robert K. Dakis
                GIBSON, DUNN & CRUTCHER LLP
                200 Park Avenue
                New York, New York 10166
                Telephone: (212) 351-4000
                Telecopy: (212) 351-4035

                *Attorneys for Appellees The FINOVA Group Inc.*
                *and FINOVA Capital Corporation*

9

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| THE FINOVA GROUP INC., | ) | Case No. 01-00698 (PJW) |
| FINOVA CAPITAL CORPORATION, | ) | |
| | ) | Jointly Administered |
| Reorganized Debtors | ) | |
| _____ | ) | |
| Finova Group Inc. and | ) | |
| Finova Capital Corporation, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-487 (JJF) |
| | ) | |
| Official Committee of Equity Security | ) | |
| Holders, | ) | Bankruptcy Case No. 01-00698 |
| | ) | AP 07-74 |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

OBJECTION OF FINOVA GROUP, INC. AND FINOVA
CAPITAL CORP. TO MOTION TO DISMISS APPEAL

Dated: October 4, 2007
    Wilmington, Delaware

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166

*Co-Counsel to the Reorganized Debtors, Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ..................................................................................... ii

    I.     Preliminary Statement ................................................................................ 1

    II.    The Debtors Timely Appealed the Equity Committee Order Because
         It Was Not a Final Order .......................................................................... 2

    III.   The Debtors' Properly Appealed the Fee Cap Orders ............................. 5

CONCLUSION ....................................................................................................... 7

i

## TABLE OF AUTHORITIES

### CASES

*In re Armstrong World Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005) ........................................2,3

*Brouwer v. Ancel & Dunlap (In re Firstmark Corp. & Capitol Sec.)*,
46 F.3d 653 (7th Cir. 1995) ........................................................................................6

*Cluck v. Osherow (In re Cluck)*, 101 F.3d 1081 (5th Cir. 1996) ......................................6

*In re Johns-Manville Corp.*, 824 F.2d 176 (2d Cir. 1987) .............................................3

*Natale v. French & Pickering Creeks Conservation Trust, Inc. (In re Natale)*, 295 F.3d
375 (3d Cir. 2002) ................................................................................................2, 7

*In re Northwestern Corp.*, 319 B.R. 68 (D. Del. 2005) .................................................3

*Novak v. Teitlebaum, Braverman & Borges, P.C. (In re Novak)*, 2004 WL. 2338126 (2d
Cir. Oct. 15, 2004) .................................................................................................5

*In re Spillane*, 884 F.2d 642 (1st Cir. 1989) ............................................................5, 6

*Victor v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*, 1996 WL. 363806
(D. Del. June 27, 1996) ...........................................................................................3

*In re Victory Markets, Inc.*, 195 B.R. 9 (N.D.N.Y. 1996) ..............................................3

*In re White Beauty View, Inc.*, 841 F.2d 524 (3d Cir. 1988) ..........................................7

*In re Williams*, 357 B.R. 434 (6th Cir. BAP 2007) ......................................................5

*In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003) .................................4

### STATUTES

28 U.S.C. § 158(a) ................................................................................................2

ii

The FINOVA Group, Inc. ("FNV Group") and FINOVA Capital Corporation (together "FINOVA" or the "Debtors"), hereby submit the following opposition to the *Motion to Dismiss Appeal* [Docket No. 5] (the "Motion") of the Equity Security Holders (the "Equity Committee"). For the reasons stated below, the Motion should be denied as Debtors' appeal is timely.

## I.    Preliminary Statement

1    On or about April 1, 2005, the Debtors filed their *Motion of the Reorganized Debtor for an Order Under Bankruptcy Code 1141 Clarifying Provision of Confirmed Plan of Reorganization* (the "Clarification Motion") [Bankr. Docket No. 22]. The Clarification Motion sought a determination that the Debtors were not required to set aside 5% of Available Cash on account of equity interests so long as the Debtors were insolvent or in financial distress and, since the Debtors would be "forever insolvent," funds previously placed in a segregated fund should be returned to the Debtors for payment of operating expenses, distributions to creditors or other corporate purposes. On or about June 17, 2005, the Bankruptcy Court entered an *Order Directing the United States Trustee to Appoint an Official Committee of Equity Security Holders for a Limited Purpose and Granting Related Relief* (the "Equity Committee Order") [Bankr. Docket No. 48]. Pursuant to the Equity Committee Order, the Equity Committee was appointed for the "limited and exclusive purpose of reviewing and, if it deems appropriate, objecting to" the Clarification Motion. The Equity Committee Order capped the expenses of the Equity Committee at $100,000 (the "Equity Committee Fee Cap"), which was subsequently increased first to $200,000, then to $300,000 and finally to $388,000 (the "Fee Cap Orders"). On June 26, 2007, the Bankruptcy Court entered a final order approving, in full, the Clarification Motion, which effectively ended the Equity Committee's representation. The Equity Committee appealed the Bankruptcy Court's June 26 order and, on July 16, 2007, the Debtors filed a Notice of Cross-Appeal contesting both the Equity Committee Order and the three Fee Cap Orders.

1

2.       The Equity Committee is now seeking to dismiss the appeal of the Equity Committee Order and two of the orders increasing the Fee Cap as untimely filed. The Equity Committee asserts that pragmatic considerations dictate a more flexible approach to finality in bankruptcy cases, pursuant to which the Equity Committee Order should be considered a final order. However, the Clarification Motion and the Fee Cap Orders reflect a plain vanilla two party dispute and is similar to an individual adversary proceeding in a bankruptcy case, to which normal standards apply. *See, e g, Natale v. French & Pickering Creeks Conservation Trust, Inc (In i e Natale)*, 295 F.3d 375, 379 (3d Cir. 2002) ("In assessing the finality of a bankruptcy court order adjudicating a specific adversary proceeding, we apply the same concepts of appealability as those used in general civil litigation."). Moreover, the majority of cases dealing squarely with the issue of the finality of an order granting or denying the appointment of an equity committee have held that the order is interlocutory.

3.       The Equity Committee further argues that the Debtors should have appealed each Fee Cap Order separately. Again, the cases cited by the Equity Committee demonstrate that an interim order approving professional fees is not final; however, once the professional's representation has concluded, the order becomes final. Thus, an appeal of an attorney's fee award is proper where, as here, the appeal is launched at the conclusion of the matter. Moreover, the Fee Cap Orders were not measurably akin to order approving professional fees since the Fee Cap Orders were directly related to a particular dispute rather than the overall case.

## II.     The Debtors Timely Appealed the Equity Committee Order Because It Was Not a Final Order.

4.       The district court has jurisdiction to hear appeals "as of right" from final judgments, orders and decrees and, with leave of the Court, from other interlocutory orders and decrees. 28 U.S.C. § 158(a). The Equity Committee, relying heavily on *In re Armstrong World*

2

*Indus., Inc.*, 432 F.3d 507 (3d Cir. 2005) and *In re Northwestern Corp.*, 319 B.R. 68 (D. Del. 2005) argues that this Court should apply a flexible standard of finality and find that the Equity Committee Order was a final order and should have been appealed in June, 2005. Even assuming that this principle applies, given the fact that the Equity Committee and Fee Cap Orders were part and parcel with the Clarification Motion, such flexible standards, as well as ordinary principles of guarding against piecemeal appeals, would dictate that all four orders be considered at the conclusion of the matter.

5.    Moreover, the Equity Committee's argument ignores the fact that the only reported Circuit Court opinion, and the few lower court opinions, dealing squarely with this issue have consistently held that an order appointing an equity committee is not a final order for the purposes of appeal. *See In re Johns-Manville Corp.*, 824 F.2d 176, 179 (2d Cir. 1987) ("a bankruptcy court's denial of a request to appoint an official committee for shareholders is [non-]final even under the more flexible standard of finality applied in bankruptcy cases"); *In re Victory Markets, Inc.*, 195 B.R. 9, 12 (N.D.N.Y. 1996); *Victor v. Edison Bros. Stores, Inc. ("In re Edison Bros. Stores, Inc.)*, 1996 WL 363806 at *2 (D. Del. June 27, 1996) [1] As the Second Circuit explained:

> Orders denying shareholder requests for official committee status do not resolve particular disputes within the overall bankruptcy case; they simply affect the committee structure within which various disputes in the reorganization proceeding will be considered. We conclude that such orders are not appealable to the courts of appeals. Such orders remain reviewable upon appeal from any final order resolving a dispute concerning the group denied appointment of a committee.

*In re Johns-Manville Corp.*, 124 F.2d at 180.

---

[1]   The District Court in *Edison Bros.* granted leave to appeal the order appointing the equity committee as a collateral order. *See In re Edison Bros. Stores, Inc.*, 1996 WL 363806 at *3.

6.    The policy set forth by the Second Circuit is even more pertinent in this case given the limited scope of the Equity Committee's appointment.  The Bankruptcy Court reinstated the Equity Committee "for the limited and exclusive purpose of reviewing and, if it deems appropriate, objecting to" the Clarification Motion.  *See* Equity Committee Order at 2. Thus, much like in a traditional litigation where administrative orders such as the Equity Committee Order would certainly not be final, the Equity Committee's representation was directly tied to the Clarification Motion, and it makes little sense to go forward with piecemeal appeals regarding administrative issues such the appointment itself.

7.    The Equity Committee further relies on the procedural underpinnings in the Third Circuit's opinion in *In re Zenith Electronics Corporation*, 329 F.3d 338 (3d Cir. 2003), to suggest that the Third Circuit has reached the opposite conclusion. While *Zenith* is superficially similar, there are a number of differences between the underlying procedures in *Zenith* and this case. First, the equity committee appointment order in *Zenith* was entered at the outset of the case and appointed a committee for the entire case; whereas here, the Equity Committee was appointed for a limited duration and a limited purpose.[2]  Further, as is apparent from the Third Circuit's opinion, the Court of Appeals in *Zenith* did not hear the merits of the appeal of the order appointing an equity committee until after the conclusion of the case. Thus, *Zenith* simply does not stand for the proposition that the appeal of the Equity Committee Order was not timely made.

---

[2] The Equity Committee suggests that the Equity Committee Order is akin to an order granting intervention  That is not entirely accurate as the Committee itself has no right or interest in the subject of the action, rather its members do.

4

**III.    The Debtors' Properly Appealed the Fee Cap Orders.[3]**

8.      The Equity Committee further argues that this appeal should be dismissed because the Debtors did not timely appeal each order increasing the Equity Committee Fee Cap. The Equity Committee relies on a three cases that are readily distinguishable. In each case cited by the Equity Committee, the order approving fees was for all amounts owing to the professional. See *In re Williams*, 357 B.R. 434 (6th Cir. BAP 2007) (appealing order denying fee enhancement of chapter 7 debtor's attorney); *Novak v. Teitlebaum, Braverman & Borges, P.C. (In re Novak)*, 2004 WL 2338126 (2d Cir. Oct. 15, 2004) (appealing order awarding fees to chapter 11 debtors' counsel following confirmation of a plan of reorganization).

9.      One of the cases cited by the Equity Committee supports the Debtors' position. See *In re Spillane*, 884 F.2d 642 (1st Cir. 1989). In *Spillane*, a district court in Rhode Island transferred a chapter 13 bankruptcy case to California on the recommendation of the bankruptcy court. The debtor appealed the decision and the district court appointed a trustee solely for the purpose of considering the venue issue. *Id.* at 645. Following the conclusion of the appeal, the district court granted the trustee's application for fees. The debtor appealed the fee award. The First Circuit first considered its jurisdiction. The Court noted that the fee applications were interim, and, thus under traditional considerations of finality were not final orders. *Id.* ("It is generally held that an interim award of attorney's fees . . . is not final."). However, the Court found that the awards should be treated as final because (i) the trustee was appointed solely in

---

[3] It should be noted that the Equity Committee Order, which set the first cap, and the first two Fee Cap Orders did not approve feesbut only set caps. The only order that dealt with the fees themselves was the third Fee Cap Order, which has been appealed and the Equity Committee conceded is a timely appeal. In connection with the third Fee Cap Order, the Debtors raised objections to the fees themselves. The Court ruled in favor of the Debtors on some of these objection. At no time did the Equity Committee suggest that some of the objections were not timely because of the first and second Fee Cap Orders. The Committee thus implicitly recognized that those orders were not final.

respect of the venue issue, which had ended, and (ii) the case had moved to California, which terminated the trustee's services. *Id.* at 650. Here, the equivalent point in the case was the order granting the Clarification Motion.

10. In a typical case, an immediate appeal of an interim fee request does not lie as of right. See *Cluck v. Osherow (In re Cluck)*, 101 F.3d 1081, 1082 (5th Cir. 1996) ("Every circuit which has addressed this issue has concluded that an interim award of compensation granted by a bankruptcy court in an ongoing bankruptcy proceeding generally is an interlocutory order which is not subject to review"). Here, the Fee Cap Orders were akin to interim fee requests. At no point did the Fee Cap Orders "conclusively determine the total compensation due to counsel, so such decisions are generally not considered final." *Brouwer v. Ancel & Dunlap (In re Firstmark Corp. & Capitol Sec.)*, 46 F.3d 653 (7th Cir. 1995). This is clearly evidenced by the Bankruptcy Court treating the Equity Committee Fee Cap as rolling and continually approving increases.

11. In contrast, where the case is concluded, or the particular matter for which counsel was retained is finished, fee orders become final and appealable. *See In re Spillane*, 884 F.2d at 650. Here, the Equity Committee Order and the Fee Cap Orders are inextricably intertwined with the Clarification Motion. Indeed, the Equity Committee continued to request increases in the Fee Cap through the two years the Clarification Motion was pending. Thus, it is only now that the Clarification Motion has been fully decided and there are no more opportunities for an enhancement of the Equity Committee Fee Cap, that the orders increasing the cap have become ripe for appeal.[4]

---

[4] Furthermore, the Equity Committee Fee Cap was contained in the Equity Committee Order. As set forth above, the Equity Committee Order was not ripe for appeal until the Clarification Motion was fully decided. Because it would be a waste of judicial resources to allow an appeal of a part of an order to proceed while the remainder of the order was considered executory, the Equity Committee's argument, if
(Continued)

12.    Moreover, for this Court to consider the appeals of the Fee Cap Orders together with the appeal of the Clarification Order at the end of the case is entirely consistent with the Third Circuit's position on piecemeal appeals in bankruptcy cases. *See, e.g., In re Natale*, 295 F.3d at 378-379 ("Despite that relaxed view of finality in the bankruptcy setting as a whole, the general antipathy toward piecemeal appeals still prevails in individual adversary actions." *citing In re White Beauty View, Inc*, 841 F.2d 524, 526 (3d Cir. 1988)).

## CONCLUSION

For the reasons stated, the Motion should be denied.

Dated: October 4, 2007
       Wilmington, Delaware

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Telecopy:  (302) 651-7701

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

*Co-Counsel to the Reorganized Debtors, Appellants*

---

accepted, would lead to the absurd result of the orders increasing the fee cap being final and immediately appealable while the order setting the cap in the first place was not.

7

## CERTIFICATE OF SERVICE

I, Jason M. Madron, do hereby certify that on December 21, 2007 a copy of the foregoing **Response to Appellant's Motion to Strike** was served on the parties on the attached list and in the manner indicated thereon.

Jason M. Madron (Bar No. 4431)

**FINOVA Capital Corporation - Service List**
**Local via Hand Delivery / Non-Local via First Class Mail**

David Buchbinder, Esq.
OFFICE OF THE UNITED STATES
TRUSTEE
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801

William D. Sullivan, Esq.
WILLIAM D. SULLIVAN, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801

Jonathan M. Landers, Esq.
Robert J. Dakis, Esq.
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

Mark D. Silverschotz, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020