IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| THE FINOVA GROUP, INC. and ) | Case No. 01-0698 (PJW) |
| FINOVA CAPITAL CORPORATION, ) | |
| ) | |
| Reorganized Debtors. ) | |
| ) | |
| ) | |
| OFFICIAL COMMITTEE OF EQUITY ) | |
| SECURITIES HOLDERS of FINOVA GROUP, ) | |
| INC., ) | |
| ) | |
| Appellant, ) | |
| ) | Civil Action No. 07-480 (JJF) |
| v. ) | |
| ) | |
| THE FINOVA GROUP INC. and ) | |
| FINOVA CAPITAL CORPORATION, ) | Bankruptcy Case No. 01-698 |
| ) | AP 07-70 |
| Appellees. ) | |

## CROSS-APPELLANT'S REPLY TO CROSS-APPELLEE'S
## RESPONSE TO OPENING BRIEF ON CROSS-APPEAL

Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 658-6541
Telecopy: (302) 658-6548

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

Dated: December 26, 2007
Wilmington, Delaware

*Attorneys for Appellees The FINOVA Group
Inc. and FINOVA Capital Corporation*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

I. SUMMARY OF THE ARGUMENT ............................................................................ 1

II. ARGUMENT .................................................................................................................. 3

    A.   Reconstituting the Equity Committee Was an Abuse of Discretion ..................... 3

    B.   The Equity Committee Failed to Refute the Bankruptcy Court's Abuse of Discretion in Entering the Fee Cap Orders ............................................................ 7

    C.   The Absolute Priority Rule is Not Limited to Plan Confirmation ....................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

In re Emons Industries Inc.,
50 B.R. 692 (Bankr. S.D.N.Y. 1985)..................................................................................6

Exide Techs. v. Wis. Inv. Bd.,
2002 U.S. Dist. LEXIS 27210 (D. Del. Dec. 23, 2002)................................................3, 4, 7

In re Leap Wireless Intern., Inc.,
295 B.R. 135 (Bankr. S.D. Cal. 2003)................................................................................6

In re Mansfield Ferrous Castings, Inc.,
96 B.R. 779 (Bankr. N.D. Ohio 1988)................................................................................5

Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),
478 F.3d 452 (2d Cir. 2007)................................................................................................9

In re Wang Laboratories Inc.,
149 B.R. 1 (Bankr. D. Mass. 1992)....................................................................................6

In re Williams Communications Group, Inc.,
281 B.R. 216 (Bankr. S.D.N.Y. 2002)....................................................................3, 5, 6, 9

## MISCELLANEOUS

7 *Collier on Bankruptcy* ¶ 1102.03[2][a] (15th ed. rev. 2005).........................................4

Neil B. Glassman, *et al.*, *Equity Committees: A Consequence of the "Zone of Insolvency,"*
24-10 Am. Bankr. Inst. L.J. 28, n.1 (2006)........................................................................6

# I.
# SUMMARY OF THE ARGUMENT

1.      The Debtors cross-appeal four related orders entered during the proceedings on the Clarification Motion:[1] (i) the order reconstituting the Equity Committee (the "Equity Committee Order") and (ii) three orders increasing a cap on the Equity Committee's fees (the "Fee Cap Orders"). The Debtors filed the Clarification Motion seeking an order clarifying that, pursuant to the Plan, the Debtors were no longer required to set aside funds for distributions to equity, and that, given the fact that the Debtors would be forever insolvent, any funds retained should be returned to the Debtors for general corporate purposes, including payments on the New Senior Notes. In connection with the Clarification Motion, the Bankruptcy Court directed the United States Trustee to reconstitute an equity committee "for the limited and exclusive purpose of reviewing and, if it deems appropriate, objecting to the [Clarification Motion]." Equity Committee Order at 2. The Bankruptcy Court capped the Equity Committee's fees and expenses at $100,000. Subsequently, the Bankruptcy Court entered the Fee Cap Orders increasing the cap to $388,393. The Bankruptcy Court ultimately agreed with the Debtors' interpretation of the Plan and Indenture and found that the Debtors were, in fact, hopelessly insolvent. The Equity Committee has appealed these rulings and the Debtors cross-appealed the Equity Committee Order and Fee Cap Orders.

2.      The Equity Committee failed to properly contest the Debtors' arguments on cross appeal, instead following manifestly improper procedure:

---

[1] Capitalized Terms not defined herein have the meanings ascribed to them in the Appellee's Response to Appellant's Opening Brief and Opening Brief on Cross Appeal (the "Cross-Appeal Brief"), filed November 21, 2007 [Docket No. 23].

1

RLF1-3238352-1

As required by the Bankruptcy Rules, the Debtors included their opening arguments on cross-appeal in the Cross Appeal Brief;

- On December 5, 2007, the Equity Committee filed a reply brief that expressly declined to respond to the Debtors' arguments on cross-appeal;

- On December 15, 2007, the Equity Committee attached a belated response (the "Response") to the Debtors' arguments on cross-appeal as an exhibit to a motion to strike (the "Motion to Strike") portions of the Cross-Appeal Brief.

As set forth more fully in the Debtors' objection to the Motion to Strike, the Debtors properly followed the Bankruptcy Rules in including their opening arguments on cross-appeal in the answering brief to the Equity Committee's appeal of the Confirmation Orders. The Equity Committee made a calculated mistake at law in failing to include the Response in their reply brief and have attempted to make an end run around the clear provisions of the Bankruptcy Rules in attaching their response to the Motion to Strike. The Debtors object to consideration of the Response; however, out of an abundance of caution are filing this reply brief so as to comply with the Bankruptcy Rules and Local Delaware Rules.

3.   The Bankruptcy Court erred in entering the Equity Committee Order even though the Debtors were hopelessly insolvent and the shareholders were being adequately represented by individual shareholders who demonstrated that they had the incentive and resources to represent shareholders during proceedings on the Clarification Motion. The Equity Committee does not contest either that the Debtors were hopelessly insolvent or that certain shareholders were willing and able to represent their own interests. Instead, the Equity Committee argues that these facts are not dispositive and that the Bankruptcy Court's finding of "good and sufficient cause" satisfies the test for appointing an equity committee. Under the uncontested facts of this case, however, the Bankruptcy Court abused its discretion in reconstituting the Equity

2

Committee without any specific findings of fact which would justify the Equity Committee Order.

4.  The Bankruptcy Court also erred in entering the Fee Cap Orders without any findings that the fee cap was otherwise unreasonable. Again, the Equity Committee does not challenge the Debtors' argument that the Bankruptcy Court failed to make any findings, but instead argues that the Court's general assertion of "cause" sufficiently demonstrates the reasonableness of the Equity Committee's fees. Given the particular facts of this case, and the fact that any money paid to the Equity Committee comes directly from creditor recoveries, this is plainly insufficient. Moreover, any argument that the absolute priority rule is limited to plan confirmation is simply not supportable by the case law.

5.  For the reasons set forth herein, the Court should either (i) reverse the Equity Committee Order and Fee Cap Orders or, in the alternative, (ii) remand the orders for appropriate factual findings.

## II.
## ARGUMENT

**A.  Reconstituting the Equity Committee Was an Abuse of Discretion.**

6.  As the Debtors set forth in the Cross-Appeal Brief, in order to appoint an equity committee, a bankruptcy court must find:

> (i) there is a substantial likelihood that [shareholders] will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and
> (ii) they are unable to represent their interests in the bankruptcy case without an official committee.

*Exide Techs. v. Wis. Inv. Bd.*, 2002 U.S. Dist. LEXIS 27210 *4 (D. Del. Dec. 23, 2002) (citing *In re Williams Communications Group, Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002)). Neither of these factors were satisfied in this case and, on the record, the Bankruptcy Court could not have made either finding. In connection with the Clarification Motion, the Debtors showed that

3

they were insolvent by more that $1 billion and that remaining assets would have to increase by more than 300%, which was not realistically possible since most of the assets consisted of financial contracts of fixed amounts and older model airplanes (at a time of surplus of available airplanes).[2] The Equity Committee has never contested that the Debtors were demonstrably insolvent at the time the Clarification Motion was filed and that there was no realistic chance for recovery by shareholders. The Equity Committee further does not contest that First Carolina Investors Inc., a large shareholder with resources to litigate any issues arising in connection with the Clarification Motion, filed a substantive objection to the Clarification Motion prior to the Bankruptcy Court's decision to reconstitute the Equity Committee.[3] Thus, neither *Exide* factor could have been satisfied. In fact, the Bankruptcy Court never addressed the test for appointment of an equity committee and only made a general finding of "cause." Under these circumstances, the Bankruptcy Court abused its discretion in reconstituting the Equity Committee.

7.  The Equity Committee's principal argument in response is that the likelihood of recovery is not at issue because insolvency, alone, does not stand as a bar to the appointment of an equity committee. However, the case law makes clear that a debtors' solvency is the principal factor in the decision to appoint an official committee. *See, e.g.,* 7 *Collier on Bankruptcy* ¶ 1102.03[2][a] (15th ed. rev. 2005) ("The threshold consideration . . . in determining whether to

---

[2] *See* Declaration of Richard A. Ross in Support of Reply to Objection of First Carolina Investors, Inc. to Motion of Reorganized Debtor for an Order Under Bankruptcy Code Section 1141 Clarifying Provision of Confirmed Plan, *In re Finova Group, Inc.,* 01-0698 at ¶¶ 3-4 (Bankr. D. Del. September 15, 2005) [App. at 399, Ex. J].

[3] Objection of First Carolina Investors, Inc. to Motion of Reorganized Debtor for an Order Under Bankruptcy Code Section 1141 Clarifying Provision of Confirmed Plan, *In re Finova Group, Inc.,* 01-0698 (Bankr. D. Del. June 3, 2005) [App. at 287, Ex. H].

appoint a committee of equity security holders is whether there is sufficient equity in the estate to justify the cost and expense of a separate committee"); *In re Williams Communications Group, Inc.*, 281 B.R. at 220 (stating that "the debtor's solvency is a major factor when considering the cost of appointing an equity committee.").

8.  Moreover, the case cited by the Equity Committee for the proposition that solvency does not stand as a bar to the appointment of an equity committee is readily distinguishable as the case discusses the appointment of an equity committee in the context of an ongoing chapter 11 case. *See, e.g., In re Mansfield Ferrous Castings, Inc.*, 96 B.R. 779, 781 (Bankr. N.D. Ohio 1988). In *Mansfield Ferrous Castings*, a group of employees who were both shareholders by virtue of participation in their employee stock option plan and potentially creditors by virtue of a loan made from the stock option plan to the debtors, sought appointment of an employee committee. *Id.* The creditors' committee opposed the motion arguing only that the debtor was insolvent. The bankruptcy court, however, appointed the committee finding that the creditors' committee was not able to adequately represent the employees given their unique position as both creditor and equity holder and that the case was large and complex so as to warrant an additional committee. *Id.* This is simply not the case here. First Carolina clearly could have represented the interests of all shareholders, and was apparently prepared to do so. Moreover, as the Bankruptcy Court noted on multiple occasions, the issues here are relatively straightforward. Thus, even under the Equity Committee's authority, reconstituting the Equity Committee was not proper.[4] Moreover, where it is not clear at the beginning of a case whether

---

[4] The Equity Committee further argues that the Debtors' failure to cite any cases either reversing a court's decision appointing an equity committee or denying appointment of an equity committee where, as here, the shareholders were adequately represented is somehow dispositive on the question of the Bankruptcy Court's decision in this case. This argument is little more than a red herring and bears little weight.

there might be a distribution to shareholders, courts sometimes may appoint an equity committee. *See, e.g., In re Wang Laboratories Inc.*, 149 B.R. 1, 4 (Bankr. D. Mass. 1992) (appointing equity committee where there was no evidence that the Debtor was solvent but court could not find debtor hopelessly insolvent); *In re Emons Industries Inc.*, 50 B.R. 692 (Bankr. S.D.N.Y. 1985) (same). However, these cases have nothing to do with this situation because the case was over, the plan was confirmed, the treatment of equity was specifically provided by the plan, and as a result of economic circumstances, the Debtors were clearly hopeless insolvent and there would never be any funds for distribution to equity. In cases such as this, courts do not appoint equity committees. *See, e.g., In re Williams Communications Group, Inc.*, 281 B.R. at 223 (denying request to appoint equity committee where debtors appeared hopelessly insolvent); *accord In re Leap Wireless Intern., Inc.*, 295 B.R. 135, 139 (Bankr. S.D. Cal. 2003).

9. The Equity Committee further suggests that the proliferation of equity committees in recent chapter 11 cases somehow supports the propriety of the Equity Committee Order here. However, the Equity Committee's only support for this proposition comes from a recent journal article. *See* Response at 4, n.3 (citing Neil B. Glassman, *et al., Equity Committees: A Consequence of the "Zone of Insolvency,"* 24-10 Am. Bankr. Inst. L.J. 28, n.1 (2006)). While the Debtors have not reviewed each of the 30 cases cited in this article, the Debtors understanding, based on the arguments therein, is that each case concerned the appointment of an equity committee early in a chapter 11 proceeding and in a case where it did not appear that the debtor was hopelessly insolvent. The fact is that the Equity Committee has failed to cite to any case discussing the situation where an equity committee was appointed following the confirmation of a plan of reorganization in a hopelessly insolvent case solely to assert a contingent claim for funds held by a reorganized debtor that is demonstrably insolvent at the

time the equity committee is appointed. Equity committees are not ordinarily appointed to litigate disputes of this type and the Equity Committee has not cited any instance where it was.

10. In short, the Bankruptcy Court's general finding of "cause" does not adequately address the clear weight of facts against the appointment of the Equity Committee. Given that the Bankruptcy Court failed to make findings sufficient to satisfy the two-part *Exide* test, this Court should reverse the Equity Committee Order, or at the least, remand for proper factual findings.

B. **The Equity Committee Failed to Refute the Bankruptcy Court's Abuse of Discretion in Entering The Fee Cap Orders.**

11. The Bankruptcy Court further erred by granting the Fee Cap Orders without any factual findings showing the increases were reasonable or justified expenses. Again, the Equity Committee does not contest the fact that the Bankruptcy Court entered the Fee Cap Orders without making any factual findings to justify the fee increases. Indeed, the Bankruptcy Courts' statements with regard to the Equity Committee's arguments are entirely inconsistent with its granting the increases of the fee cap. Specifically the Court concluded:

> It seems to me that the factual issue that we talked about [at] the outset of this hearing is not going to require a significant amount of professional help. Point number one. Point number two, I think it's really a legal issue and the objection that's already on file here by First Carolina I thought did a pretty effective job in raising some interesting issues. So I don't even think that the legal issues are going to require a lot of work by whatever counsel is retained by the Committee. So I don't view this as a complicated matter that's going to take a lot of time. And therefore, I'm going to put a cap on the professional fees.

*See* Transcript, *In re Finova Group, Inc.*, 01-0698 at 38:8-19 (Bankr. D. Del. June 10, 2005). Indeed, the Bankruptcy Court later expressed its opinion of the Equity Committee's arguments as "either irrelevant or off the wall." Transcript, *In re Finova Group, Inc.*, 01 0698 at 52:16 (Bankr. D. Del. November 29, 2005). While the Court granted an initial increase of the fee cap, it

7

strongly suggested that given its determination of the merits of the Equity Committee's positions, that it would refrain from granting any enhancements of the fee cap:

> The Court: Okay. Well, I'm going to authorize—I'm going to increase it to 200 and you can file your notice of appeal after the order is entered. And if you want further financing, you're going to have to come back and apply for it.
>
> Mr. Silverschotz [Counsel to the Equity Committee]: I will do that, Your Honor.
>
> The Court: And given my view of the merits of your case, it will be an interesting discussion.
>
> Mr. Silverschotz: Message received, Your Honor.

Transcript, November 29, 2005, at 68:20-27. In direct contravention of its own statements, the Bankruptcy Court proceeded to increase the fee cap by an additional $177,000. The Court never made any factual findings as to the reasonableness or propriety of the increases, and given its statements regarding the Equity Committee's positions in the case likely could not make any such findings.

12. The Equity Committee does not contend that the Bankruptcy Court ever made the proper factual findings. Instead, the Equity Committee argues that the fees paid are a relatively small percentage of the $81 million reserved funds sought by the Equity Committee, and therefore the Bankruptcy Court did not abuse its discretion in entering the Fee Cap Orders. The Bankruptcy Court, however, repeatedly found that the shareholders had absolutely no right to the $81 million and that their claims to the funds were "off the wall," and therefore to look to the ratio of the fees to the amount sought as somehow determinative of their reasonableness makes absolutely no sense. The Debtors are unaware of any case where an attorney was awarded a contingency fee after losing on the merits, which is apparently what the Equity Committee is suggesting is proper here.

8

C.     **The Absolute Priority Rule is Not Limited to Plan Confirmation.**

13.    Finally, the Fee Cap Orders clearly violate the conceptual underpinnings of the absolute priority rule by shifting a significant portion of the creditors' recovery to benefit equity. Again, the Equity Committee does not respond to the Debtors' arguments, instead arguing only that the Debtors failed to cite to any cases for the proposition that the absolute priority rule applies to attorneys' fees. First, this argument is disingenuous, at best, because the Equity Committee has not cited to any cases for the proposition that the absolute priority rule is somehow limited in its application in a reorganization case. Moreover, recent case law clearly demonstrates that the absolute priority rule operates outside of confirmation of a plan of reorganization. *See, e.g., Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 464 (2d Cir. 2007) (holding that the absolute priority rule is applicable to settlements between parties and reversing settlement where junior claimholders were paid prior to senior claimholders being paid in full). Indeed, the Equity Committee's argument is specifically contradicted by the general rule that an equity committee is not ordinarily appointed in an insolvent case, which is itself a specific application of the absolute priority rule. *In re Williams Communications Group, Inc.*, 281 B.R. at 220-21 (noting absolute priority rule as part of reasoning behind denying appointment of an equity committee where the debtor is hopelessly insolvent). Thus, there is little merit to the argument that the absolute priority rule does not apply where, as here, the Bankruptcy Court authorized a dollar for dollar reduction in creditor recoveries for the benefit of equity holders over the objection of the Debtors.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, the Debtors respectfully request the Court enter an order (i) reversing or remanding the order reconstituting the Equity Committee and the Fee Cap Orders and (ii) granting such other relief as may be just and necessary.

Dated: December 26, 2007
      Wilmington, Delaware

/s/
Mark D. Collins (No. 2981)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 658-6541
Telecopy: (302) 658-6548

-and-

Jonathan M. Landers
Robert K. Dakis
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
Telecopy: (212) 351-4035

*Attorneys for Appellees The FINOVA Group Inc. and FINOVA Capital Corporation*

## CERTIFICATE OF SERVICE

I, Jason M. Madron, do hereby certify that on December 26, 2007 a copy of the foregoing **Cross-Appellant's Reply to Cross-Appellee's Response to Opening Brief on Cross-Appeal** was served on the parties on the attached list and in the manner indicated thereon.

Jason M. Madron (Bar No. 4431)

RLF1-3238359-1

## FINOVA Capital Corporation - Service List
## Local via Hand Delivery / Non-Local via First Class Mail

David Buchbinder, Esq.
OFFICE OF THE UNITED STATES
TRUSTEE
844 King Street, Suite 2313
Lockbox 35
Wilmington, DE 19801

William D. Sullivan, Esq.
WILLIAM D. SULLIVAN, LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801

Jonathan M. Landers, Esq.
Robert J. Dakis, Esq.
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166

Mark D. Silverschotz, Esq.
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020